**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
355 S. Grand Ave., 44th Floor
Los Angeles, California 90071
Tel: (213) 262-9333
bdunne@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**
Theodore J. Folkman (*pro hac vice* pending)
One Liberty Square
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**
Minyao Wang (*pro hac vice* pending)
277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

**Weil, Gotshal & Manges LLP**
Edward R. Reines (SBN 135960)
edward.reines@weil.com
Derek C. Walter (SBN 246322)
derek.walter@weil.com
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Attorneys for Applicant ILLUMINA CAMBRIDGE LTD.*

FILED

SEP 06 2019

JSC

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CV 19 80 215MISC

| | |
|---|---|
| In re APPLICATION OF ILLUMINA CAMBRIDGE LTD. for issuance of subpoenas under 28 U.S.C. § 1782 | Civ. A. No. _____<br><br>**MEMORANDUM OF LAW IN SUPPORT OF EX PARTE APPLICATION OF ILLUMINA CAMBRIDGE LTD. FOR LEAVE TO SERVE SUBPOENAS** |

By Fax

**TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    TECHNOLOGY BACKGROUND ............................................................. 3

III.   ILLUMINA CAMBRIDGE'S PATENTS .................................................. 5

    A.     THE '578 PATENT ...................................................................... 5

    B.     THE '289 PATENT AND THE '4580 PATENT ................................... 6

    C.     THE '412 PATENT ...................................................................... 6

IV.    THE FOREIGN ACTIONS. ..................................................................... 6

    A.     THE INFRINGEMENT ................................................................... 6

    B.     THE GERMAN ACTION ............................................................... 7

    C.     THE SWISS ACTION ................................................................... 8

    D.     THE TURKISH ACTION ............................................................... 9

    E.     THE DANISH ACTION ............................................................... 10

    F.     THE DISCOVERY SOUGHT FOR THE FOREIGN ACTIONS. ............... 10

V.     ARGUMENT ....................................................................................... 13

    A.     ILLUMINA CAMBRIDGE SATISFIES THE STATUTORY REQUIREMENTS UNDER § 1782. ........................................................... 13

        1.     Complete Genomics, BGI Americas and MGI Americas Are Found In This District. ................................................ 13

        2.     The Discovery Sought Is For Use In A Proceeding In A Foreign Tribunal. ........................................................ 13

        3.     Illumina Cambridge Is An "Interested Person." ................... 14

    B.     THE DISCRETIONARY FACTORS FAVOR THE APPLICATION. ............... 14

        1.     Neither Complete Genomics, BGI Americas Nor MGI Americas Is A Participant In The Foreign Actions. ................... 14

        2.     The Foreign Courts Here Are Receptive To U.S. Judicial Assistance. .......................................................... 16

        3.     There Is No Circumvention Of Foreign Discovery Procedure ........... 19

        4.     The Requests Are Not Unduly Burdensome. ......................... 20

VI.    CONCLUSION ..................................................................................... 23

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Accent Delight Int'l Ltd.*,
  2018 WL 2849724 (S.D.N.Y. June 11, 2018), *Appeal filed* (No. 18-1755, 2d
  Cir. June 13, 2018) ..................................................................................................19

*AIS GmbH Aachen Innovative Sols. v. Thoratec LLC*,
  762 F. App'x 447 (9th Cir. 2019) ..........................................................................14

*Application of Gianoli Aldunate*,
  3 F.3d 54 (2d Cir. 1993) .........................................................................................19

*In re Ex Parte Application of Jommi*,
  2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) .............................................14, 16, 19

*In re Application of JSC Raiffeinsenbank*,
  2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ...................................................16, 19

*In re Ex Parte Application of Ontario Principals' Council*,
  2013 WL 6073517 (N.D. Cal. Nov. 8, 2013) .........................................................13

*In re Ex Parte Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ...................................................................13

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995) ....................................................................................16

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ...................................................................................19

*In re Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v.
  GlobalFoundries U.S., Inc.*,
  2017 WL 4647753 (N.D. Cal. Oct. 16, 2017) ...................................................15, 19

*In re Int'l Judicial Assistance from the Fourth Civil Court for Intellectual and
  Industrial Property Rights In Istanbul*,
  2015 U.S. Dist. LEXIS 81550 (N.D. Cal. June 22, 2015)........................14, 17, 19

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..........................................................................................*passim*

*In re IPCom GmbH & Co. KG*,
  2014 WL 12772090 (N.D. Cal. Apr. 10, 2014)....................................................15, 19

*IPCom GmbH v. Apple, Inc.*,
  61 F. Supp. 3d 919 (N.D. Cal. 2014).......................................................................14

ii

*In re NanoPyxis Co., Ltd.*,
  2018 WL 1156838 (N.D. Cal. Mar. 5, 2018) .........................................................20

*In re Qualcomm Inc.*,
  2018 WL 3845882 (N.D. Cal. Aug. 13, 2018) ...........................................14, 15, 16

*In re Request for International Judicial Assistance from the District Court of
  Kolding, Denmark*,
  2015 WL 13827074 (W.D.N.C. May 4, 2015)..............................................14, 17

*In re Super Vitaminas, S. A.*,
  2017 WL 5571037 (N.D. Cal. Nov. 20, 2017) ....................................................13

**Statutes**

28 U.S.C. § 1782 .........................................................................................*passim*

**Federal Rules**

Fed. R. Civ. P. 26...........................................................................................20

Fed. R. Civ. P. 30(b)(6) ..................................................................................20

Fed. R. Civ. P. 45...........................................................................................20

**Other Authorities**

Burgerliches Gesetzbuch §§ 809-810 ...............................................................17

GVG Const. L. §169........................................................................................21

PatG § 140 ....................................................................................................17

Swiss C.C.P. § 156 .........................................................................................21

Swiss C.C.P. § 53 ...........................................................................................21

ZPO C.C.P. § 142 ....................................................................................17, 21

ZPO C.C.P. § 299 ...........................................................................................21

iii

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

## I.   PRELIMINARY STATEMENT

This is an *ex parte* application (the "Application") under 28 U.S.C. § 1782 for leave to serve subpoenas on Complete Genomics, Inc., ("Complete Genomics"), BGI Americas Corp. ("BGI Americas") and MGI Americas, Inc. ("MGI Americas" and together with Complete Genomics and BGI Americas, "Respondents"). The applicant is Illumina Cambridge Ltd. ("Illumina Cambridge"), a United Kingdom subsidiary of Illumina Inc. ("Illumina"), which is a California based, NASDAQ listed company that was founded in April 1998. Illumina is a leading developer, manufacturer, and marketer of DNA sequencing devices and widely acknowledged to have revolutionized DNA sequencing with the launch in 2014 of sequencing technology that has enabled sequencing of the human genome for under $1,000. This was a landmark achievement for the fields of scientific research and medicine. Illumina's proprietary DNA sequencing technology involves the use of modified nucleotides with an azidomethyl blocking group and a detection buffer containing ascorbic acid. Both of these aspects are the subject of the following patents that are owned by Illumina Cambridge:

  i. European Patent No. EP 1 530 578 B1, (the "'578 Patent"), Danish Patent DK/EP 3 002 289 T3, which is the Danish designation of a divisional of the '578 Patent, (the "'289 Patent"), and Turkish Patent Number TR 2018 04580 (the "'4580 Patent"), which is the Turkish validation of the '289 Patent, all of which are entitled "Modified nucleotides for polynucleotide sequencing." These patents cover modified nucleotides with an azidomethyl blocking group, which are used in a method of DNA sequencing known as "sequencing-by-synthesis" or "SBS."

  ii. European Patent No. EP 1 828 412 B2 (the "'412 Patent"), which is entitled "Improved method of nucleotide detection." This patent covers the use of a detection buffer containing ascorbic acid that may be used in SBS.

1

1     Illumina Cambridge has brought a number of actions outside the United States that are

2 relevant to this Application.[1] In those actions, Illumina Cambridge asserts that companies of the

3 BGI Group ("BGI"), a Chinese conglomerate headquartered in Shenzhen, the People's Republic

4 of China, infringe Illumina Cambridge's patent rights. Illumina Cambridge engaged an

5 independent laboratory to conduct testing demonstrating that modified nucleotides with an

6 azidomethyl blocking group and a detection buffer that contains ascorbic acid are used in DNA

7 sequencing devices of BGI.

8     By way of this Application, Illumina Cambridge now seeks leave to serve subpoenas on

9 the Respondents to obtain documents and testimony for use in the following foreign patent

10 infringement actions:

11   1. An action asserting infringement of the '578 Patent in the Düsseldorf (Germany)

12 Regional Court (the "German Action") against Latvia MGI Tech SIA ("Latvia MGI");

13   2. An action asserting infringement of the '578 Patent and the '412 Patent in the Federal

14 Patent Court in Switzerland (the "Swiss Action") against Latvia MGI;

15   3. An action asserting infringement of the '4580 Patent in the Istanbul Civil Court for

16 Intellectual and Industrial Rights (the "Turkish Action") against Genoks Teknoloji Sağlık Bilişim

17 Turizm Hiz. Endüstriyel Makine Elektrik Elektronik İthalat İhracat San. Tic. Ltd. Şti.

18 ("Genoks"); and

19   4. An action asserting infringement of the '289 Patent in the Maritime and Commercial

20 Court of Denmark (the "Danish Action" and together with the "German Action," the "Swiss

21 Action," and the "Turkish Action," the "Foreign Actions") against BGI Europe A/S ("BGI

22 Europe").

23   Latvia MGI, the defendant in the German and Swiss Actions, is a subsidiary of MGI Tech

24 Co, Ltd. ("MGI Tech"), which is in turn another Chinese-based company and a subsidiary of

25 _____

[1] In addition, on June 27, 2019, Illumina Cambridge and Illumina filed suit in this Court
26 against Complete Genomics, BGI Americas, MGI Americas and other affiliated entities for
infringement of United States patents related to patented DNA sequencing technology. The
27 case, numbered 19-cv-03770, is assigned to Judge William H. Orrick.

28

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

1 BGI. Genoks, the defendant in the Turkish Action, is a distributor for BGI in Turkey. BGI
2 Europe, which is located in Copenhagen, Denmark, and is the defendant in the Danish Action,
3 serves as BGI's European headquarters. BGI Europe provides laboratory services in the area of
4 DNA sequencing primarily under the BGI brand. BGI also manufactures its own DNA
5 sequencing devices through MGI Tech. BGI's DNA sequencing devices on which its SBS
6 method is performed include, *inter alia*, the BGISEQ-500 and the MGISEQ-2000 (the
7 "BGI/MGI Sequencing Devices"). BGI also supplies sequencing reagent kits that contain the
8 reagents needed for performing SBS on the BGI/MGI Sequencing Devices ("Sequencing
9 Reagent Kits"). As explained further below, the Sequencing Reagent Kits (also referred to as
10 "Sequencing Sets") include the above-mentioned modified nucleotides with an azidomethyl
11 blocking group and a detection buffer containing ascorbic acid.

12 Each of the three Respondents has evidence that is highly relevant to the Foreign Actions.
13 All Respondents are found in this District. All of the factors that inform a court's discretion under
14 § 1782, *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), favor approval of
15 this Application. This Application is supported by the Declaration of Minyao Wang (the "Wang
16 Decl."), the Declaration of Max Van Rospatt, counsel to Illumina Cambridge in the German
17 Action (the "Van Rospatt Decl."), the Declaration of Anders Valentin, counsel to Illumina
18 Cambridge in the Danish Action (the "Valentin Decl."), the Declaration of Andri Hess, counsel
19 to Illumina Cambridge in the Swiss Action (the "Hess Decl.") and the Declaration of Özge
20 Atılgan Karakulak, counsel to Illumina Cambridge in the Turkish Action (the "Karakulak
21 Decl.").

22 **II. TECHNOLOGY BACKGROUND**

23 Illumina is the world's leading manufacturer of instruments and chemical reagents for DNA
24 sequencing. Illumina's proprietary technology is based on an approach referred to in the field as
25 "sequencing-by-synthesis," or "SBS" for short.

26
27

28
**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

1    As is well-known, DNA exists as two mate strands that are paired up to form a double-
2    helix. In sequencing-by-synthesis, one sequences a DNA molecule by building a single-strand
3    of DNA that pairs up with its mate strand in a step-by-step process. Because the individual
4    building blocks of DNA (*i.e.*, nucleotides) pair up with their mate only in specific ways (*i.e.*,
5    adenine only pairs with thymine and guanine only pairs with cytosine), one can sequence the
6    DNA by keeping track of the individual DNA components that are added as the complementary
7    strand of DNA is built. A single step in the process is summarized in the figure below:

 

**Nucleotide addition**
Fluorophore-labelled, terminally blocked nucleotides hybridize to complementary base. Each cluster on a slide can incorporate a different base.

**Imaging**
Slides are imaged with either two or four laser channels. Each cluster emits a colour corresponding to the base incorporated during this cycle.

**Cleavage**
Fluorophores are cleaved and washed from flow cells and the 3'-OH group is regenerated. A new cycle begins with the addition of new nucleotides.

*Figure 1*

19   To sequence DNA, one repeats the process above over and over.

20          Illumina has pioneered countless innovations that enhance the accuracy and efficiency of
21   the SBS process, including innovations related to instrumentation, software, and chemistry. The
22   patented technology here pertains to two chemistry-related innovations.

23          First, Illumina has pioneered modified DNA nucleotides that include a particular chemical
24   group known as an azidomethyl, as shown below:

4



*Figure 2*

The azidomethyl chemical group in Illumina's technology allows the sequencing process to be carried out under mild chemical conditions that do not cause damage to the structure of the DNA. As such, Illumina's approach allows one to build DNA strands with unparalleled chemical efficiency, enabling Illumina to read the sequence of longer stretches of DNA across millions of molecules simultaneously.

Second, Illumina has developed novel chemistry that prevents damage to DNA during the process of visualizing DNA during the sequencing process. Indeed, during the visualization process in SBS, DNA can experience prolonged exposure to intense illumination. Illumina's patented SBS approach encompasses the use of antioxidants—in particular ascorbic acid—to reduce the loss of signal that can occur over successive rounds of nucleotide detection during SBS. This permits more cycles of sequencing to be achieved and hence increases the length of the DNA sequence information even further.

## III.   ILLUMINA CAMBRIDGE'S PATENTS

### A.   *THE '578 PATENT*

The '578 Patent is asserted to be infringed in the German Action and the Swiss Action. Claim 1 of the '578 Patent claims:

> A modified nucleotide molecule comprising a purine or pyrimidine base and a ribose or deoxyribose sugar moiety having a removable 3'-OH blocking group covalently attached thereto, such that the 3' carbon atom has attached a group of the structure -O-Z wherein Z is any of -C(R')2-N(R")2'C(R')2-N(H)R', and -C(R')2-N3,wherein each R" is or is part

5

of a removable protecting group; each R' is independently a hydrogen atom, an alkyl, substituted alkyl, arylalkyl, alkenyl, alkynyl, aryl, heteroaryl, heterocyclic, acyl, cyano, alkoxy, aryloxy, heteroaryloxy or amido group, or a detectable label attached through a linking group; or (R')2 represents an alkylidene group of formula =C(R''')2 wherein each R''' may be the same or different and is selected from the group comprising hydrogen and halogen atoms and alkyl groups; and wherein said molecule may be reacted to yield an intermediate in which each R'' is exchanged for H, which intermediate dissociates under aqueous conditions to afford a molecule with a free 3'OH.

Claim 4 of the '578 Patent claims "[a] molecule according to any one of claims 1 to 3 wherein Z is an azidomethyl group." In particular, the '578 Patent therefore relates to modified nucleotides that comprise a removable 3' azidomethyl blocking group.

## B.    *THE '289 PATENT AND THE '4580 PATENT*

The '289 Patent is asserted to be infringed in the Danish Action and the '4580 Patent is asserted to be infringed in the Turkish Action. Claim 1 of the '289 Patent and claim 1 of the '4580 Patent claim:

A modified nucleotide triphosphate molecule comprising a purine or pyrimidine base and a deoxyribose sugar moiety having a 3'-azidomethyl group.

The '289 Patent and the '4580 Patent are therefore directed specifically to modified nucleotide triphosphate molecules comprising a 3'-azidomethyl blocking group.

## C.    *THE '412 PATENT*

The '412 Patent is asserted to be infringed in the Swiss Action. Claim 1 of the '412 Patent claims:

A method of sequencing at least two nucleotides of a template nucleic acid comprising repeating the steps of:
(a) incorporating one or more fluorescently labelled nucleotides into a strand of nucleic acid complementary to said template nucleic acid; and
(b) determining the identity of one or more of the incorporated nucleotide(s), wherein the steps of determining the identity of the incorporated nucleotide(s) is carried out in a buffer which comprises ascorbic acid, or a salt thereof.

# IV.    THE FOREIGN ACTIONS

## A.    *THE INFRINGEMENT*

Illumina Cambridge engaged Eurofins EAG Materials Sciences ("Eurofins"), an independent laboratory, to perform testing on reagents from a "BGISEQ-500RS High-

6

throughput Sequencing Set" (the "BGI Kit"). This testing confirmed that the BGI Kit contains (i) labelled nucleotides that have an azido group; (ii) unlabeled nucleotides that have the same structural composition as 3'-azidomethyl-dNTPs; and (iii) a solution containing ascorbic acid. (Eurofins Report). The testing performed by Eurofins on the BGI Kit has been considered by Dr. Floyd Romesberg, an expert in nucleotide chemistry and by Professor Rana Sanyal, an expert in synthetic organic chemistry. Dr. Romesberg and Professor Sanyal concluded that the Eurofins testing supports the allegations of infringement made by Illumina Cambridge (Romesberg Declaration and Sanyal Declaration). The relevant Eurofins reports and expert declarations are appended to the complaints in the Danish, Turkish and Swiss Actions, which are attached as Exhibit A to each of the respective declarations of Illumina Cambridge's foreign counsel.[2]

## B. *THE GERMAN ACTION*

Illumina Cambridge commenced the German Action on or about March 29, 2019. The proceedings are still at a very early stage. The German Action was served on Latvia MGI on June 25, 2019 and Latvia MGI's German legal counsel indicated on July 15, 2019 that it would defend itself against the complaint. The German court has directed that Latvia MGI respond to the complaint in writing on or before September 25, 2019. Illumina Cambridge will have approximately 3 months to file a rebuttal and Latvia MGI will then have approximately 3 months to file a sur-reply. The German court has not set a hearing date, but it is anticipated that oral argument in the German Action will take place in the second half of 2020. (Van Rospatt Decl. ¶¶ 6,7, 11).

Illumina Cambridge has asserted in the German Action that Latvia MGI infringes the '578 Patent in several ways: it sells modified nucleotide molecules in Germany that infringe at least

---

[2] Different expert declarations and different versions of the Eurofins Report were filed in the Danish, Swiss and Turkish Actions, but what we have said about the expert declarations and Eurofins Reports are true for all versions filed in the Foreign Actions. To avoid the need to make a voluminous filing, we have included only the relevant attachments to the complaints in those Foreign Actions. The entire sets of exhibits to the complaints filed in the Foreign Actions are available upon request.

Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas

1    Claim 1; it sells kits in Germany that infringe at least Claim 25[3]; it offers equipment for sale in

2    Germany that is suitable for performing, and intended to perform, the methods of at least Claims

3    12 and 17.[4] (*Id.* ¶8).

4         Latvia MGI has sold or offered for sale BGI/MGI Sequencing Devices in Germany. For

5    example, as set forth on page 30 of the German complaint, Latvia MGI delivered an MGISEQ-

6    2000 sequencer to the University Hospital of Tübingen and a BGISEQ-500 sequencer to the

7    University of Saarland. In response to a tender issued by the German Research Foundation,

8    Latvia MGI has also offered to equip several sequencing centres with MGISEQ-2000

9    sequencers. The German complaint also explains that Latvia MGI distributes Sequencing

10   Reagent Kits in Germany, such as the "MGISEQ-2000RS High-throughput Sequencing Set" and

11   the "BGISEQ-500RS High-throughput Sequencing Set."

12        **C.    *THE SWISS ACTION***

13        Illumina Cambridge commenced the Swiss Action on or about June 28, 2019. The

14   proceedings are still at a very early stage. (Hess Decl. ¶¶ 7-8). Latvia MGI has six weeks after

15   completion of service of process to submit an initial response. (*Id.* ¶11). In the Swiss Action,

16   Illumina Cambridge has asserted that Latvia MGI infringes the '578 Patent and the '412 Patent

17   by selling products that contain infringing features. Latvia MGI has sold BGI/MGI Sequencing

18   Devices and corresponding Sequencing Reagent Kits in Switzerland. (*Id.* ¶¶5, 9). In particular,

19

20   [3] Claim 25 is directed to "a plurality of different nucleotides . . . wherein said plurality of different nucleotides are either as defined in any one of claims 6 to 10; and packaging materials therefor."

21   [4] Claim 12 is directed to a "method of controlling the incorporation of a nucleotide as defined in any one of claims 6 to 10 and complementary to a second nucleotide in a target single-stranded polynucleotide in a synthesis or sequencing reaction, comprising (i) incorporating into the growing complementary polynucleotide said nucleotide, and (ii) the incorporation of said nucleotide preventing or blocking introduction of subsequent nucleoside or nucleotide molecules into said growing complementary polynucleotide."

22

23

24

25   Claim 17 is directed to a "method for determining the sequence of a target single-stranded polynucleotide, comprising monitoring the sequential incorporation of complementary nucleotides, wherein at least one incorporation is of a nucleotide as defined in any one of claims 6 to 10 and wherein the identity of the nucleotide incorporated is determined by detecting the label linked to the base, and the blocking group and said label are removed prior to introduction of the next complementary nucleotide."

26

27

8

28

1     at least one MGISEQ-2000 sequencer has been supplied to the Health 2030 Genome Center at

2     Campus Biotech in Geneva (Declaration of Jennifer Mummery, attached to Swiss complaint).

3         Specifically, Illumina Cambridge asserts that the activities undertaken by Latvia MGI in

4     Switzerland infringe independent claims 1, 12, 17, 25, and dependent claims 4, 6, 7, 9 of the

5     '578 Patent and independent claims 1 and 15 and dependent claims 2, 3, 4, 8, 9 of the '412 Patent.

6     (*Id.* ¶¶5, 9). The allegations of infringement are substantiated by the independent testing

7     performed by Eurofins on the BGI Kit. (Eurofins Report and Romesberg Declaration).

8        **D.**    *THE TURKISH ACTION*

9         Illumina Cambridge commenced the Turkish Action in June 2019. The proceedings are still

10    at a very early stage. Genoks is expected to submit its written arguments in response to Illumina

11    Cambridge's infringement claim by September 9, 2019. The preliminary hearing in the Turkish

12    Action is likely to take place in November 2019 and the final hearing, at which the court will

13    render its decision, is likely to take place at the end of 2020 or beginning of 2021. (Karakulak

14    Decl. ¶¶9, 10, 13, 14).

15        Illumina Cambridge has asserted in the Turkish Action that Genoks infringes independent

16    claims 1, 6, 9 and 10 of the '4580 Patent[5] by importing BGISEQ-500 and MGISEQ-2000

17    sequencers and related Sequencing Reagent Kits from BGI in China, using them in its genetic

18    testing center, and offering them for sale to hospitals and research institutes across Turkey. (*Id.*

19

20    [5]Claim 1 is directed to "a modified nucleotide triphosphate molecule comprising a purine or pyrimidine base and a deoxyribose sugar moiety having a 3'-azidomethyl group."

21    Claim 6 is directed to "a kit comprising four modified nucleotide triphosphate molecules, each comprising a purine or pyrimidine base and a deoxyribose sugar moiety having a 3'-

22    azidomethyl group where each nucleotide has a base that is linked to a detectable label via a cleavable linker and where the detectable label linked to each nucleotide can be distinguished

23    upon detection from the detectable label used for the other three nucleotides."

24    Claim 9 is directed to "a polynucleotide molecule having a 3'-azidomethyl group."

     Claim10 is directed to "a method for determining the sequence of a target single-stranded

25    polynucleotide, comprising monitoring the sequential incorporation of complementary nucleotides, wherein at least one incorporation is of a nucleotide comprising a purine or

26    pyrimidine base and a deoxyribose sugar moiety having a 3'-azidomethyl group where the nucleotide has a base that is linked to a detectable label via a cleavable linker."

27

28

9

1  ¶11). The allegations of infringement are substantiated by the independent testing performed by

2  Eurofins on the BGI Kit (Eurofins Report and Sanyal and Romesberg Declarations).

3  **E.    THE DANISH ACTION**

4  Illumina and Illumina Cambridge commenced the Danish Action on or about June 28,

5  2019. The proceedings are still at a very early stage. BGI Europe's initial response to the

6  infringement claim was filed on August 23, 2019 and Illumina Cambridge has until September

7  23, 2019 to file a rebuttal.[6] The trial of the Danish Action has not yet been scheduled, but is likely

8  to take place in late 2020. (Valentin Decl. ¶¶8, 9, 12, 13).

9  Illumina Cambridge has asserted, in the Danish Action, that BGI Europe infringes the '289

10 Patent by using certain Sequencing Reagent Kits. (*Id.* ¶ 10). The allegations of infringement are

11 substantiated by the independent testing performed by Eurofins on the BGI Kit. (Eurofins Report

12 and Romesberg Declaration).

13 **F.    THE DISCOVERY SOUGHT FOR THE FOREIGN ACTIONS**

14 The German, Danish, Swiss and Turkish systems of litigation differ from that of the United

15 States in a way that is relevant to the disposition of this Application. Litigants in those systems

16 have no right to pretrial discovery remotely comparable to the pre-trial civil discovery available

17 in the United States. Those foreign pretrial procedures are discussed in greater detail below. (Van

18 Rospatt Decl. ¶13; Valentin Decl. ¶15; Hess Decl. ¶15; Karakulak Decl. ¶16).

19 With this application, Illumina Cambridge seeks leave to serve (i) document subpoenas on

20 Complete Genomics, BGI Americas and MGI Americas, and (ii) a corporate deposition subpoena

21 on Complete Genomics.

22 Complete Genomics is very likely to have information in its possession, custody, or control

23 that will show that the modified nucleotides that form part of the Sequencing Reagent Kits and

24 are used for performing DNA sequencing on the BGI/MGI Sequencing Devices infringe at least

25 _____

26 [6] The Danish Action also includes claims of trademark infringement. Illumina is a party to the Danish Action only because it owns trademarks that it alleges BGI Europe infringed. Illumina does not own the relevant patent. Because the discovery sought pursuant to this Application

27 relates only to the patent issues, Illumina is not an applicant here.

10

28 **Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex**
**Parte Application to Serve Subpoenas**

Claims 1 and 4 of the '578 Patent, at least Claim 1 of the '4580 Patent and at least Claim 1 of the '289 Patent. Complete Genomics is also very likely to have information in its possession, custody, or control that will show that the method of DNA sequencing performed on the BGI/MGI Sequencing Devices involves the use of a buffer containing ascorbic acid during nucleotide detection steps such that at least Claim 1 of the '412 Patent is infringed.

Complete Genomics was acquired in 2013 by BGI and it became in 2018 part of MGI Tech, which is "the instruments manufacturing business of BGI." (Wang Decl. Ex. B). MGI Tech's website states that it "produces sequencing devices, equipment, consumables and reagents in the life science research, medicine and healthcare fields." (Wang Decl. Ex. C). BGI has published a "technical note" on the BGISEQ-500 sequencing device, which is described as a "New Desktop Sequencer with Innovative Technology." (Wang Decl. Ex. D). The "technical note" further states that the "BGISEQ-500 is an innovative high-throughput sequencing solution, developed by BGI's Complete Genomics subsidiary in Silicon Valley." (*Id.*). And in a brochure relating to MGI Tech's MGISEQ-T7 sequencing device, MGI Tech has stated that it has a location in "San Jose (the USA, Americas)" in order "to ensure sufficient supply of maintenance parts for major regions." (Wang Decl. Ex. E). BGI also describes its "San Jose Innovation Center," i.e., Complete Genomics, as a location for "sequencing application development," and a location "for developing next-generation sequencers and applications for academic, clinical, and consumer markets." (Wang Decl. Ex. F).

The Complete Genomics website[7] states that "Complete Genomics now serves as a research and development center of excellence. Complete Genomics continues to focus on improving its technology and helping MGI Tech to build next-generation sequencing systems and applications for the research, clinical, and consumer markets" (Wang Decl. Ex. B).

BGI Americas (the U.S. affiliate of BGI) and MGI Americas (the U.S. affiliate of MGI Tech) are also highly likely to have relevant evidence. BGI Americas and MGI Americas are

---

[7] https://www.completegenomics.com/

Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas

sales and marketing arms of BGI. They share an office with Complete Genomics in San Jose. The publicly available CVs of certain employees suggest they work for the BGI Group or BGI Genomics (Wang Decl. Exs. G, H & I). All of this suggests that the entities operate as an integrated whole.

MGI Americas, with its parent MGI Tech, claim to be the "leading manufacturer and developer of BGI's proprietary NGS instrumentation." (Wang Decl. Ex. J). NGS stands for "next generation sequencing." MGI Tech's website states: "As the leading manufacturer and developer of BGI's proprietary NGS instrumentation, the global MGI organization provides comprehensive products and services for fully-automated, real-time, whole picture and lifelong genetic analysis in life science research." *Id.* MGI Americas is involved in the research, development and marketing of the infringing products. *Id.* MGI Americas' field service engineer, Abigail Frank, states that she "services NGS instruments and lab automated workstations at Complete Genomics in San Jose, as well as external customers throughout North and South America." (Wang Decl. Ex. K). MGI Americas also advertises, offers to sell, provides service and support, and disseminates literature on its website on the BGI/MGI Sequencing Devices, the MGISEQ and BGISEQ Sequencing Reagent Kits and the MGISP-960 sample prep system. (Wang Decl. Ex. L).

BGI Americas has its "West Coast Innovation Center" in San Jose, California, where it conducts research. (Wang Decl. Ex. M). It recently announced the expansion of that facility. (Wang Decl. Ex. N). BGI Americas is involved in the research and development of BGI's NGS technologies at its San Jose, California facility.

These sources strongly suggest that BGI's sequencing chemistry and sequencing devices were developed and designed by Respondents in this District, and Respondents will therefore have information and documents relevant to development and design activities, including in relation to the modified nucleotides and a detection buffer containing ascorbic acid for performing SBS on BGI/MGI Sequencing Devices.

# V.  ARGUMENT

## A.  *ILLUMINA CAMBRIDGE SATISFIES THE STATUTORY REQUIREMENTS UNDER § 1782.*

A party seeking leave to take discovery under 28 U.S.C. § 1782 must make three threshold showings. First, it must show that the person from whom the discovery is to be taken "resides" or is "found" in the judicial district where the application is brought. Second, the discovery must be "for use in a proceeding in a foreign or international tribunal." Third, the applicant must be an "interested person." 28 U.S.C. § 1782(a). This Application easily satisfies all three requirements.

### 1.  Complete Genomics, BGI Americas and MGI Americas Are Found In This District.

Complete Genomics is a Delaware corporation with its headquarters in San Jose, California, within this district. (Wang Decl. Ex. O). MGI Americas is also a Delaware corporation with its headquarters in San Jose, California, within this District. (Wang Decl. Ex. P). BGI Americas is a Delaware corporation which holds itself out as having a research facility in San Jose, California, within this District. (Wang Decl. Ex. Q).

A business entity is "found" in the judicial district where it is incorporated or headquartered. *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016); *In re Ex Parte Application of Ontario Principals' Council*, 2013 WL 6073517, at *2 (N.D. Cal. Nov. 8, 2013) (Delaware corporation headquartered in Palo Alto was "found" in the Northern District of California). In addition, the test is also satisfied if the target of the 1782 application has a presence in this District. *In re Super Vitaminas, S. A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (having an office in this District suffice). Thus, there is no question that all Respondents are "found" in this District.

### 2.  The Discovery Sought Is For Use In A Proceeding In A Foreign Tribunal.

Court actions, including patent infringement actions, pending in courts in Germany, Turkey, Switzerland and Denmark plainly satisfy the statutory requirement of a proceeding in a foreign tribunal. Courts have routinely granted § 1782 applications seeking discovery for use in

13

proceedings in those countries. *See, e.g., AIS GmbH Aachen Innovative Sols. v. Thoratec LLC,* 762 F. App'x 447, 448 (9th Cir. 2019) (German court in which a patent infringement case was pending was a foreign tribunal for purposes of § 1782); *IPCom GmbH v. Apple, Inc.,* 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (German patent infringement action qualified); *In re Int'l Judicial Assistance from the Fourth Civil Court for Intellectual and Industrial Property Rights In Istanbul,* 2015 U.S. Dist. LEXIS 81550, at \*4 (N.D. Cal. June 22, 2015) (Turkish trademark infringement action qualified); *In re Ex Parte Application of Jommi,* 2013 WL 6058201, at \*3 (N.D. Cal. Nov. 15, 2013) (Swiss court proceeding qualified); *In re Request for International Judicial Assistance from the District Court of Kolding, Denmark,* 2015 WL 13827074, at \*1(W.D.N.C. May 4, 2015) (Danish district court proceeding qualified).

### 3. Illumina Cambridge Is An "Interested Person."

A litigant in a foreign civil litigation is an "interested person" for purposes of § 1782. *See Intel,* 542 U.S. at 256-57; *In re Qualcomm Inc.*, 2018 WL 3845882, at \*2 (N.D. Cal. Aug. 13, 2018). Illumina Cambridge is a plaintiff in all the Foreign Actions (Van Rospatt Decl. ¶¶3-4; Valentin Decl. ¶¶5-6; Hess Decl. ¶¶4-5; Karakulak Decl. ¶¶6-7). It is therefore an "interested person" for purposes of the statute.

### B. *THE DISCRETIONARY FACTORS FAVOR THE APPLICATION.*

This Court should consider four factors in determining whether to grant an application under § 1782: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character or the foreign tribunal and the receptivity of the foreign tribunal to U.S. judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions, and (4) whether the request is unduly intrusive or burdensome. *Intel,* 542 U.S. at 264-265. All of these factors strongly favor discovery here or are at least neutral. None of the discretionary factors militates against discovery.

### 1. Neither Complete Genomics, BGI Americas Nor MGI Americas Is A Participant In The Foreign Actions.

Complete Genomics, BGI Americas and MGI Americas are not parties to any of the Foreign Actions nor are they expected to participate in them. The fact that Respondents are not

1    parties to the foreign proceedings favors approval of the Application. *In re Application Pursuant*

2    *to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *4

3    (N.D. Cal. Oct. 16, 2017).

4       To be sure, it appears that Latvia MGI (defendant in the German and Swiss Actions), BGI

5    Europe (defendant in the Danish Action) and the three Respondents are ultimately owned by the

6    same Chinese corporate parent, BGI, and are thus affiliates and that Genoks is a distributor in

7    Turkey for BGI. Courts sometimes ask whether the target of the discovery application is related

8    to a party in the underlying foreign proceeding on the assumption that the foreign court could

9    compel discovery from the subsidiaries and affiliates of a party. But that expectation does not

10   apply to foreign jurisdictions that do not have effective pretrial discovery procedures. In the

11   German, Swiss, Turkish and Danish litigation systems, there is no effective right to pretrial

12   discovery that is even remotely comparable to that in the United States. (Van Rospatt Decl. ¶13

13   (for Germany); Hess Decl. ¶15 (for Switzerland); Valentin Decl. ¶15 (for Denmark); Karakulak

14   Decl. ¶16 (for Turkey)). The key test under this prong is whether the "evidence, available in the

15   United States, may be unobtainable absent" an order by this court under Section 1782. *In re*

16   *Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017

17   WL 4647753, at *4 (quoting *Intel*, 542 U.S. at 264).

18       Here, the requested evidence is not available to Illumina Cambridge without this Court's

19   intervention. This is just a consequence of the unavailability of discovery in the four foreign

20   jurisdictions. The first *Intel* factor would not weigh against discovery *even if the target of the*

21   *subpoena was itself a party to a Foreign Action* due to the lack of effective foreign discovery

22   procedures. *See In re IPCom GmbH & Co. KG*, 2014 WL 12772090, at *2 (N.D. Cal. Apr. 10,

23   2014) (factor neutral as a result of lack of effective discovery procedure in Germany, even though

24   Apple, the target of the subpoena, was a defendant in the German action); *In re Qualcomm Inc.*,

25   2018 WL 3845882, at *3 (noting that multiple courts have found this to be a neutral factor for

26   German cases in light of German discovery law). *A fortiori,* the first factor favors discovery or

27

28

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

1   is at most neutral when the target of the subpoena is an affiliate of (or arguably under the control

2   of) the party to a Foreign Action.

3   **2. The Foreign Courts Here Are Receptive To U.S. Judicial Assistance.**

4   The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question

5   has expressly made it clear that it would not accept the evidence. *See In re Application of JSC*

6   *Raiffeinsenbank*, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("Absent this type of clear

7   directive, however, a district court's ruling should be informed by section 1782's overarching

8   interest in 'providing equitable and efficacious procedures for the benefit of tribunals and

9   litigants involved in litigation and international aspects'") (quoting *Euromepa S.A. v. R.*

10  *Esmerian, Inc.,* 51 F.3d 1095, 1100 (2d Cir. 1995)).

11  The declarations from foreign counsel submitted with this Application confirm that none

12  of the four foreign countries in which Illumina Cambridge's patent infringement actions are

13  pending has a policy of rejecting or has indicated an intent to reject evidence from the United

14  States obtained under section 1782.

15  The Declaration of Max Van Rospatt, a German patent litigator with twenty-four years of

16  experience, demonstrates that the German court would be receptive to evidence obtained through

17  this Application. (Van Rospatt Decl. ¶¶21-24). The court in which the German Action is pending

18  would have to consider any documents obtained in this proceeding in making its decision. (*Id.*

19  ¶¶21-23). A transcript of deposition testimony will be admissible in a German court, even though

20  the court retains the discretion to require live in-person testimony by the deponent. (*Id.* ¶23). Mr.

21  Van Rospatt's conclusion about the receptivity of German courts to evidence from the United

22  States is consistent with the decisions of many U.S. courts to grant section 1782 applications in

23  aid of German cases. *See, e.g., In re Qualcomm Inc.*, 2018 WL 3845882, at *3-4.

24  According to Andri Hess, a Swiss lawyer with twenty-one years of experience, courts in

25  Switzerland are also receptive to evidence obtained from the United States pursuant to Section

26  1782. (Hess Decl. ¶¶20-21). In addition, this Court has already observed that the Swiss legal

27  system permits introduction evidence from the United States. *Jommi*, 2013 WL 6058201, at *4.

28

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

In Denmark, Anders Valentin, a litigator with 19 years of experience, has confirmed that the courts in Denmark are receptive to evidence obtained from the United States under section 1782. (Valetin Decl. ¶21). And in fact, one U.S. court has granted an application for judicial assistance for use in Danish courts. *See, e.g., In re Request for Int'l Jud. Assistance from the Dist. Ct. of Kolding, supra.*

Finally, Özge Atılgan Karakulak, a Turkish lawyer with 15 years of experience, has opined that a Turkish court would be receptive to evidence obtained through this Application. (Karakulak Decl. ¶25). Ms. Karakulak's professional opinion is consistent with this Court's view on a Turkish court's receptivity to evidence obtained under section 1782 in an intellectual property case. *See In re Int'l Jud. Assistance from the Fourth Civil Ct. for Intell. & Indus. Prop. Rights in Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (James, M.J.).

While discoverability under the foreign law is not a factor in the *Intel* calculus, *see Intel*, 542 U.S. at 260, it is worth noting that the information sought in this Application would not be as a practical matter discoverable in any of the Foreign Actions. For example, the court in the German Action would have the power to require production of documents not mentioned by the parties in their submissions only if Illumina Cambridge could specify the evidence with particularity. *See* Zivilprozessordnung [ZPO] [Code of Civil Procedure] § 142(2). (Van Rospatt Decl. ¶¶ 14-15 & 17). In patent cases, German law also gives the patentee a right to inspection of a document if it can provide an exact identification of the document. *See* Patentgesetz [PatG] [Patent Law] § 140c; Burgerliches Gesetzbuch §§ 809-810. (Van Rospatt Decl. ¶16). Illumina Cambridge is highly confident that responsive documents exist, but it has no way to identify them with the particularity that German law would require. (*Id.* ¶17).

Likewise, in the Swiss Action, Illumina Cambridge can generally obtain only the evidence that its adversary entered into the proceedings. (Hess Decl. ¶¶15-16). Moreover, the limited discovery procedure available in Switzerland to compel production of evidence would not help Illumina Cambridge, because it requires the party seeking to compel production to identify with

17

1  specificity the evidence being sought. As discussed above, Illumina Cambridge cannot identify

2  documents with such specificity now. (*Id.* ¶¶17-18).

3  In Denmark, discovery is limited to information that (i) is contained in "documents," (ii)

4  the court deems to be of potential importance to the case at hand, (iii) the party seeking discovery

5  could not (without undue burden) obtain elsewhere, and (iv) is in the possession of the opposing

6  party or a third party. But a court can deny discovery even if the foregoing requirements are met.

7  There is also a business exemption under Danish law that a company can invoke to shield

8  intellectual property information from discovery, which would pose a serious obstacle to

9  Illumina Cambridge in the Danish Action. (Valentin Decl. ¶¶16-18).

10  In Turkey, there is no mandatory disclosure obligation in civil litigation. While there is a

11  process to apply for the permission of the Turkish court to request discovery on case-by-case

12  basis, it is not likely to be effective in the Turkish Action for several reasons. First, a Turkish

13  court is likely to deny such a request on the ground that such information could incriminate the

14  party that possesses the information or may reveal confidential business data. Second, courts in

15  Turkey typically are not willing to compel disclosure from a private entity. Third, Turkish law

16  requires identification of discovery materials with the kind of specificity that, as discussed above,

17  Illumina Cambridge cannot currently provide. (Karakulak Decl. ¶¶17-20).

18  In any event, even if one of the courts in the Foreign Actions ordered Complete Genomics,

19  BGI Americas or MGI Americas to produce documents, it could not enforce its order, since those

20  entities are outside of the territorial jurisdiction of such court. (Van Rospatt Decl. ¶ 18; Karakulak

21  Decl. ¶¶ 21-22; Hess Decl. ¶19; Valentin ¶19). All the courts in the Foreign Actions also lack the

22  authority to require officers or employees of Respondents who reside in the United States to

23  appear before them to provide testimony. (Van Rospatt Decl. ¶ 19; Karakulak Decl. ¶23; Valentin

24  ¶20; Hess Decl. ¶19). In sum, it would be impossible for Illumina Cambridge to obtain the

25  important U.S.-based evidence for prosecuting any of the Foreign Actions using the limited

26  domestic discovery procedures available in those countries.

27

28

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

### 3. There Is No Circumvention Of Foreign Discovery Procedure.

The third *Intel* factor weighs in favor of discovery unless the applicant is attempting to circumvent the foreign country's proof-gathering restrictions. *See Intel*, 542 U.S. at 244-45. The question under this prong is whether the foreign court would be affronted by the applicant's resort to U.S. discovery. *Application of Gianoli Aldunate*, 3 F.3d 54, 61-62 (2d Cir. 1993). The fact that more evidence may be obtained via a section 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application. *In re Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *4; *In re: Application of Joint Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *6; *see also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (that an applicant "cannot obtain even remotely comparable discovery by utilizing German procedures" was not circumvention and was not a basis to deny an application under section 1782).

An order from this Court authorizing discovery in aid of an action pending there would not offend any court or violate any court order in Germany, Switzerland, Turkey or Denmark. (Van Rospatt Decl. ¶ 25; Hess Decl. ¶22; Valentin Decl. ¶22; Karakulak Decl. ¶25). The professional opinions of counsel in the four foreign countries are consistent with earlier court decisions on this point; *see, e.g., In re IPCom GMBH & Co.*, 2014 WL 12772090, at *3 (noting there is no circumvention because "U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings."); *Jommi*, 2013 WL 6058201, at *4 (no circumvention of Swiss law); *In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *Appeal filed* (No. 18-1755, 2d Cir. June 13, 2018) (order under § 1782 was not a circumvention of Swiss law); *In re Int'l Jud. Assistance from the Fourth Civil Ct. for Intell. & Indus. Prop. Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (no circumvention of Turkish discovery law).

19

## 4. The Requests Are Not Unduly Burdensome.

Illumina Cambridge seeks to take a deposition of Complete Genomics under Fed. R. Civ. P. 30(b)(6). Depositions of corporate officers are standard practice in any U.S. civil litigation and are not burdensome. The Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden. *See* Fed. R. Civ. P. 45(d)(1). The document requests on Respondents, and the corresponding deposition topics, are also not unduly burdensome. Discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the relevance of the documents sought is clear and the discovery aimed at discovering one truth—the truth (Illumina Cambridge asserts and believes) that a Chinese corporate entity and its affiliates are engaged in a global campaign of intellectual property theft and that the defendants in the Foreign Actions are unlawfully exploiting Illumina Cambridge's patented technologies, which are directed to: (i) modified nucleotides with a 3' azidomethyl blocking group, which are the subject of the accused products, methods and kits that are the subject of the Foreign Actions; and (ii) use of a detection buffer containing ascorbic acid which is the subject of the accused methods and kits that are the subject of the Swiss Action.

To the extent Respondents assert that any of the information Illumina Cambridge seeks is confidential or proprietary, Illumina Cambridge is prepared to enter into this Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets, in the form attached to this memorandum as Exhibit A (with suitable modifications to make it appropriate for use in a § 1782 context), or into another reasonable protective order. *See, e.g., In re NanoPyxis Co., Ltd.*, 2018 WL 1156838, at *5 (N.D. Cal. Mar. 5, 2018) (entry into a protective order alleviated confidentiality concerns).

**Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex Parte Application to Serve Subpoenas**

The laws of Germany, Turkey, Switzerland and Denmark would also provide adequate protection for confidential documents or information submitted to a court located there.

Unlike in the United States, court documents in Germany are kept confidential by default. A third party can, however, seek to inspect a court file under ZPO § 299(2). But Latvia MGI, an affiliate of Respondents and a defendant in the German Action, would have the right to object to inspection on confidentiality grounds, in which case the German court would allow the inspection only if the third party has a justified legal interest in inspecting the file. (Van Rospatt Decl. ¶27). To make that decision, the German court would balance Latvia MGI's interest in confidentiality against the third party's interest in having access. (*Id.*). Illumina Cambridge is willing to cooperate with MGI Latvia in objecting to the disclosure of any confidential information pursuant to this Application and offered in the German Action. (*Id.* ¶28).

Oral hearings before the German court will generally be open to the public. *See* Gerichtsverfassungsgesetz [GVG] [Court Constitutional Law] §169. However, the parties can request exclusion of the public if confidential business information is to be addressed. The German court will have the discretion to decide the request, and Illumina Cambridge is willing to cooperate with MGI Latvia in making such a request. (*Id.* ¶29).

It is unlikely that the German court's written decision would reference any confidential information, as the court typically refers to the court file rather than reciting factual details. However, the parties can request that the court does not include confidential information in its written decision or that it make only a redacted version of the decision public. (*Id.* ¶30). Again, Illumina Cambridge is willing to cooperate with MGI Latvia in making such a request. Thus, any confidentiality concerns do not pose an obstacle to this Application. (*Id.*)

The court files of the Swiss Federal Patent Courts are not publicly accessible. Under Article 53 of the Swiss Code of Civil Procedure, only court personnel and the parties to the litigation have access to court files. Third parties have no rights to inspect court files. Indeed, under Article 53(b), even a party's right to inspect court files can be curtailed to protect an overriding public

1 or privacy interest. Moreover, Article 156 of the Swiss Code of Civil Procedure expressly permits

2 the court to protect the legitimate business interests of the parties, such as business secrets. (Hess

3 Decl. ¶24).

4 Illumina Cambridge agrees to reasonably cooperate with Latvia MGI in the Swiss Action

5 in filing objections to the disclosure of any confidential information produced pursuant to the

6 Application. (*Id.* ¶23).

7 After the verdict, the Swiss court will issue a written opinion that will be served upon the

8 parties. To the extent that the opinion reveals the confidential information of Respondents,

9 Illumina Cambridge will likewise cooperate in requesting the Swiss court to redact the

10 appropriate portions of its written opinion. (*Id.* ¶¶25-26).

11 In Turkey, there is a general right of public access to court files and court proceedings.

12 But a Turkish court has the discretion to deviate from this practice, especially when sensitive

13 business information is involved. Illumina Cambridge will provide reasonable cooperation in

14 objecting to the disclosure of any confidential information obtained from this Application and

15 in joining any reasonable request for confidentiality protection in the Turkish Action. To the

16 extent that any court decision in the Turkish Action reveals confidential information obtained

17 from this Application, Illumina Cambridge will likewise cooperate in requesting appropriate

18 redactions are made by the court. (Karakulak Decl. ¶¶26-29).

19 In Denmark, the public has a general right of access to court files. Hearings in Danish

20 courts will also generally be open to the public. However, at the parties' request, a Danish

21 court can agree to handle a case *in camera* and conduct hearings *in camera*. Under the *in

22 camera* procedure, only the parties themselves may have access to the submitted evidence and

23 briefs and only the parties can attend the court hearing at which confidential information is

24 addressed. This procedure is generally invoked when it is necessary to protect confidential

25 business information, including intellectual property information. (Valetin Decl. ¶24).

26 Illumina Cambridge agrees to cooperate with BGI Europe in the Danish Action in

27

28 **Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas**

objecting to the disclosure of any confidential information of Respondents produced pursuant to the Application. Illumina Cambridge will also join a request by BGI Europe for *in camera* court procedures in the Danish Action. (*Id.* ¶¶23, 25).

After the verdict, the Danish court will issue a written opinion which will be served upon the parties. To the extent that the opinion reveals Respondents' confidential information produced through the Application, Illumina Cambridge will cooperate in requesting the Danish court to redact the appropriate portions of its written opinion. (*Id.* ¶¶23, 26).

## VI. CONCLUSION

For these reasons, the Court should grant this Application and authorize Illumina Cambridge to serve subpoenas on Complete Genomics, BGI Americas and MGI Americas.

Respectfully submitted,

ILLUMINA CAMBRIDGE LTD.

By its attorneys:

_____/s/_____

Brian J. Dunne (CA Bar No. 275689)
PIERCE BAINBRIDGE BECK PRICE &
HECHT, LLP
355 S. Grand Ave., 44th Floor
Los Angeles, CA 90071
(213) 262-9333
bdunne@piercebainbridge.com

Theodore J. Folkman (*pro hac vice* pending)
PIERCE BAINBRIDGE BECK PRICE &
HECHT, LLP
One Liberty Square
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

Minyao Wang (*pro hac vice* pending)
PIERCE BAINBRIDGE BECK PRICE &
HECHT, LLP

23

277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

Edward R. Reines (CA Bar No. 135960)
Derek C. Walter (CA Bar No. 246322)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

Dated: September 6, 2019

Illumina Cambridge Ltd.'s Memorandum of Law In Support of Ex
Parte Application to Serve Subpoenas

EXHIBIT A

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  | Case No. C |
|---|---|
| Plaintiff, | STIPULATED PROTECTIVE ORDER FOR LITIGATION INVOLVING PATENTS, HIGHLY SENSITIVE CONFIDENTIAL INFORMATION AND/OR TRADE SECRETS |
| v. | |
| Defendant. | |

1. PURPOSES AND LIMITATIONS

Disclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted. Accordingly, the parties hereby stipulate to and petition the court to enter the following Stipulated Protective Order. The parties acknowledge that this Order does not confer blanket protections on all disclosures or responses to discovery and that the protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section 14.4, below, that this Stipulated Protective Order does not entitle them to file confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

2. DEFINITIONS

    2.1   Challenging Party: a Party or Non-Party that challenges the designation of information or items under this Order.

    2.2   "CONFIDENTIAL" Information or Items: information (regardless of how it is generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of Civil Procedure 26(c).

    2.3   Counsel (without qualifier): Outside Counsel of Record and House Counsel (as well as their support staff).

    [2.4   *Optional*: Designated House Counsel: House Counsel who seek access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information in this matter.]

    2.5   Designating Party: a Party or Non-Party that designates information or items that it produces in disclosures or in responses to discovery as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"].

    2.6   Disclosure or Discovery Material: all items or information, regardless of the medium or manner in which it is generated, stored, or maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

    2.7   Expert: a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a Party or of a Party's competitor, and (3) at the time of retention, is not anticipated to become an employee of a Party or of a Party's competitor.

    2.8   "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" Information or Items: extremely sensitive "Confidential Information or Items," disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

    [2.9   *Optional*: "HIGHLY CONFIDENTIAL – SOURCE CODE" Information or Items: extremely sensitive "Confidential Information or Items" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs, disclosure of which

to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.]

2.10    House Counsel: attorneys who are employees of a party to this action. House Counsel does not include Outside Counsel of Record or any other outside counsel.

2.11    Non-Party: any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

2.12    Outside Counsel of Record: attorneys who are not employees of a party to this action but are retained to represent or advise a party to this action and have appeared in this action on behalf of that party or are affiliated with a law firm which has appeared on behalf of that party.

2.13    Party: any party to this action, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.14    Producing Party: a Party or Non-Party that produces Disclosure or Discovery Material in this action.

2.15    Professional Vendors: persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.16    Protected Material: any Disclosure or Discovery Material that is designated as "CONFIDENTIAL," or as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." [*Optional*: or as "HIGHLY CONFIDENTIAL – SOURCE CODE."]

2.17    Receiving Party: a Party that receives Disclosure or Discovery Material from a Producing Party.

3.    SCOPE

The protections conferred by this Stipulation and Order cover not only Protected Material (as defined above), but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material. However, the protections conferred by this Stipulation and Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain after

its disclosure to a Receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source who obtained the information lawfully and under no obligation of confidentiality to the Designating Party. Any use of Protected Material at trial shall be governed by a separate agreement or order.

4.    DURATION

Even after final disposition of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order otherwise directs. Final disposition shall be deemed to be the later of (1) dismissal of all claims and defenses in this action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for filing any motions or applications for extension of time pursuant to applicable law.

5.    DESIGNATING PROTECTED MATERIAL

5.1    Exercise of Restraint and Care in Designating Material for Protection. Each Party or Non-Party that designates information or items for protection under this Order must take care to limit any such designation to specific material that qualifies under the appropriate standards. To the extent it is practical to do so, the Designating Party must designate for protection only those parts of material, documents, items, or oral or written communications that qualify – so that other portions of the material, documents, items, or communications for which protection is not warranted are not swept unjustifiably within the ambit of this Order.

Mass, indiscriminate, or routinized designations are prohibited. Designations that are shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process or to impose unnecessary expenses and burdens on other parties) expose the Designating Party to sanctions.

If it comes to a Designating Party's attention that information or items that it designated for protection do not qualify for protection at all or do not qualify for the level of protection initially asserted, that Designating Party must promptly notify all other parties that it is withdrawing the mistaken designation.

5.2    Manner and Timing of Designations. Except as otherwise provided in this Order (see, e.g.,

second paragraph of section 5.2(a) below), or as otherwise stipulated or ordered, Disclosure or Discovery

Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

Designation in conformity with this Order requires:

(a) for information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] to each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

A Party or Non-Party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Producing Party must determine which documents, or portions thereof, qualify for protection under this Order. Then, before producing the specified documents, the Producing Party must affix the appropriate legend ("CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional:* or "HIGHLY CONFIDENTIAL – SOURCE CODE]) to each page that contains Protected Material. If only a portion or portions of the material on a page qualifies for protection, the Producing Party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins) and must specify, for each portion, the level of protection being asserted.

(b) for testimony given in deposition or in other pretrial or trial proceedings, that the Designating Party identify on the record, before the close of the deposition, hearing, or other proceeding, all protected testimony and specify the level of protection being asserted. When it is impractical to identify separately each portion of testimony that is entitled to protection and it appears that substantial portions of the testimony may qualify for protection, the Designating Party may invoke on the record (before the

deposition, hearing, or other proceeding is concluded) a right to have up to 21 days to identify the specific portions of the testimony as to which protection is sought and to specify the level of protection being asserted. Only those portions of the testimony that are appropriately designated for protection within the 21 days shall be covered by the provisions of this Stipulated Protective Order. Alternatively, a Designating Party may specify, at the deposition or up to 21 days afterwards if that period is properly invoked, that the entire transcript shall be treated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other proceeding to include Protected Material so that the other parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of a document as an exhibit at a deposition shall not in any way affect its designation as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY."

Transcripts containing Protected Material shall have an obvious legend on the title page that the transcript contains Protected Material, and the title page shall be followed by a list of all pages (including line numbers as appropriate) that have been designated as Protected Material and the level of protection being asserted by the Designating Party. The Designating Party shall inform the court reporter of these requirements. Any transcript that is prepared before the expiration of a 21-day period for designation shall be treated during that period as if it had been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" in its entirety unless otherwise agreed. After the expiration of that period, the transcript shall be treated only as actually designated.

(c) for information produced in some form other than documentary and for any other tangible items, that the Producing Party affix in a prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"]. If only a portion or portions of the information or item warrant protection, the Producing Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

5.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to designate

qualified information or items does not, standing alone, waive the Designating Party's right to secure protection under this Order for such material. Upon timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

6.    CHALLENGING CONFIDENTIALITY DESIGNATIONS

6.1    Timing of Challenges. Any Party or Non-Party may challenge a designation of confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

6.2    Meet and Confer. The Challenging Party shall initiate the dispute resolution process by providing written notice of each designation it is challenging and describing the basis for each challenge. To avoid ambiguity as to whether a challenge has been made, the written notice must recite that the challenge to confidentiality is being made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to resolve each challenge in good faith and must begin the process by conferring directly (in voice to voice dialogue; other forms of communication are not sufficient) within 14 days of the date of service of notice. In conferring, the Challenging Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation. A Challenging Party may proceed to the next stage of the challenge process only if it has engaged in this meet and confer process first or establishes that the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

6.3    Judicial Intervention. If the Parties cannot resolve a challenge without court intervention, the Designating Party shall file and serve a motion to retain confidentiality under Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) within 21 days of the initial notice of challenge or within 14 days of the parties agreeing that the meet and confer process will not resolve their dispute,

whichever is earlier.[1] Each such motion must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed in the preceding paragraph. Failure by the Designating Party to make such a motion including the required declaration within 21 days (or 14 days, if applicable) shall automatically waive the confidentiality designation for each challenged designation. In addition, the Challenging Party may file a motion challenging a confidentiality designation at any time if there is good cause for doing so, including a challenge to the designation of a deposition transcript or any portions thereof. Any motion brought pursuant to this provision must be accompanied by a competent declaration affirming that the movant has complied with the meet and confer requirements imposed by the preceding paragraph.

The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary expenses and burdens on other parties) may expose the Challenging Party to sanctions. Unless the Designating Party has waived the confidentiality designation by failing to file a motion to retain confidentiality as described above, all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation until the court rules on the challenge.

7.    ACCESS TO AND USE OF PROTECTED MATERIAL

7.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been terminated, a Receiving Party must comply with the provisions of section 15 below (FINAL DISPOSITION).

Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner[2] that ensures that access is limited to the persons authorized under this Order.

---

[1] Alternative: It may be appropriate in certain circumstances for the parties to agree to shift the burden to move on the Challenging Party after a certain number of challenges are made to avoid an abuse of the process. The burden of persuasion would remain on the Designating Party.

[2] It may be appropriate under certain circumstances to require the Receiving Party to store any electronic Protected Material in password-protected form.

7.2     Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

(b) the officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(c) Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants, and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

(f) during their depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise agreed by the Designating Party or ordered by the court. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Stipulated Protective Order.

(g) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

7.3     Disclosure of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: and "HIGHLY CONFIDENTIAL – SOURCE CODE"] Information or Items. Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY

CONFIDENTIAL – SOURCE CODE"] only to:

(a) the Receiving Party's Outside Counsel of Record in this action, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Exhibit A;

[(b) *Optional as deemed appropriate in case-specific circumstances:* Designated House Counsel of the Receiving Party[3] (1) who has no involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, (3) who has signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (4) as to whom the procedures set forth in paragraph 7.4(a)(1), below, have been followed];[4]

(c) Experts of the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and (3) as to whom the procedures set forth in paragraph 7.4(a)(2), below, have been followed];

(d) the court and its personnel;

(e) court reporters and their staff, professional jury or trial consultants,[5] and Professional Vendors to whom disclosure is reasonably necessary for this litigation and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A); and

(f) the author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information.

---

[3] It may be appropriate under certain circumstances to limit the number of Designated House Counsel who may access "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information under this provision.

[4] This Order contemplates that Designated House Counsel shall not have access to any information or items designated "HIGHLY CONFIDENTIAL – SOURCE CODE." It may also be appropriate under certain circumstances to limit how Designated House Counsel may access "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information. For example, Designated House Counsel may be limited to viewing "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information only if it is filed with the court under seal, or in the presence of Outside Counsel of Record at their offices.

[5] *Alternative:* The parties may wish to allow disclosure of information not only to professional jury or trial consultants, but also to mock jurors, to further trial preparation. In that situation, the parties may wish to draft a simplified, precisely tailored Undertaking for mock jurors to sign.

7.4 <u>Procedures for Approving or Objecting to Disclosure of "HIGHLY CONFIDENTIAL –</u>
<u>ATTORNEYS' EYES ONLY"</u> [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"]
<u>Information or Items to Designated House Counsel[6] or Experts.[7]</u>

   (a)(1) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to Designated House Counsel any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" pursuant to paragraph 7.3(b) first must make a written request to the Designating Party that (1) sets forth the full name of the Designated House Counsel and the city and state of his or her residence, and (2) describes the Designated House Counsel's current and reasonably foreseeable future primary job duties and responsibilities in sufficient detail to determine if House Counsel is involved, or may become involved, in any competitive decision-making.[8]

   (a)(2) Unless otherwise ordered by the court or agreed to in writing by the Designating Party, a Party that seeks to disclose to an Expert (as defined in this Order) any information or item that has been designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] pursuant to paragraph 7.3(c) first must make a written request to the Designating Party that (1) identifies the general categories of "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] information that the Receiving Party seeks permission to disclose to the Expert, (2) sets forth the full name of the Expert and the city and state of his or her primary residence, (3) attaches a copy of the Expert's current resume, (4) identifies the Expert's current employer(s), (5) identifies each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom

---

[6] *Alternative*: The parties may exchange names of a certain number of Designated House Counsel instead of following this procedure.

[7] *Alternative:* "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information or items may be disclosed to an Expert without disclosure of the identity of the Expert as long as the Expert is not a current officer, director, or employee of a competitor of a Party or anticipated to become one.

[8] It may be appropriate in certain circumstances to require any Designated House Counsel who receives "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information pursuant to this Order to disclose any relevant changes in job duties or responsibilities prior to final disposition of the litigation to allow the Designating Party to evaluate any later-arising competitive decision-making responsibilities.

the expert has provided professional services, including in connection with a litigation, at any time during the preceding five years,[9] and (6) identifies (by name and number of the case, filing date, and location of court) any litigation in connection with which the Expert has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years.[10]

(b) A Party that makes a request and provides the information specified in the preceding respective paragraphs may disclose the subject Protected Material to the identified Designated House Counsel or Expert unless, within 14 days of delivering the request, the Party receives a written objection from the Designating Party. Any such objection must set forth in detail the grounds on which it is based.

(c) A Party that receives a timely written objection must meet and confer with the Designating Party (through direct voice to voice dialogue) to try to resolve the matter by agreement within seven days of the written objection. If no agreement is reached, the Party seeking to make the disclosure to Designated House Counsel or the Expert may file a motion as provided in Civil Local Rule 7 (and in compliance with Civil Local Rule 79-5, if applicable) seeking permission from the court to do so. Any such motion must describe the circumstances with specificity, set forth in detail the reasons why the disclosure to Designated House Counsel or the Expert is reasonably necessary, assess the risk of harm that the disclosure would entail, and suggest any additional means that could be used to reduce that risk. In addition, any such motion must be accompanied by a competent declaration describing the parties' efforts to resolve the matter by agreement (i.e., the extent and the content of the meet and confer discussions) and setting forth the reasons advanced by the Designating Party for its refusal to approve the disclosure.

In any such proceeding, the Party opposing disclosure to Designated House Counsel or the Expert shall bear the burden of proving that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Material to its Designated House Counsel or Expert.

---

[9] If the Expert believes any of this information is subject to a confidentiality obligation to a third-party, then the Expert should provide whatever information the Expert believes can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose to the Expert shall be available to meet and confer with the Designating Party regarding any such engagement.

[10] It may be appropriate in certain circumstances to restrict the Expert from undertaking certain limited work prior to the termination of the litigation that could foreseeably result in an improper use of the Designating Party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information.

8.     PROSECUTION BAR [*Optional*]

Absent written consent from the Producing Party, any individual who receives access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] information shall not be involved in the prosecution of patents or patent applications relating to [insert subject matter of the invention and of highly confidential technical information to be produced], including without limitation the patents asserted in this action and any patent or application claiming priority to or otherwise related to the patents asserted in this action, before any foreign or domestic agency, including the United States Patent and Trademark Office ("the Patent Office").[11] For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims.[12] To avoid any doubt, "prosecution" as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination or *inter partes* reexamination). This Prosecution Bar shall begin when access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] information is first received by the affected individual and shall end two (2) years after final termination of this action.[13]

9.     SOURCE CODE [*Optional*]

(a)     To the extent production of source code becomes necessary in this case, a Producing Party may designate source code as "HIGHLY CONFIDENTIAL - SOURCE CODE" if it comprises or includes confidential, proprietary or trade secret source code.

(b)     Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information [*Optional*: including the Prosecution Bar set forth in Paragraph 8], and may be disclosed only to the individuals to whom "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY"

---

[11] It may be appropriate under certain circumstances to require Outside and House Counsel who receive access to "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information to implement an "Ethical Wall."

[12] Prosecution includes, for example, original prosecution, reissue and reexamination proceedings.

[13] *Alternative:* It may be appropriate for the Prosecution Bar to apply only to individuals who receive access to another party's "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" technical or source code information pursuant to this Order, such as under circumstances where one or more parties is not expected to produce "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information that is technical in nature or "HIGHLY CONFIDENTIAL – SOURCE CODE" information,

1  information may be disclosed, as set forth in Paragraphs 7.3 and 7.4, with the exception of Designated
2  House Counsel.[14]

3          (c)      Any source code produced in discovery shall be made available for inspection, in a
4  format allowing it to be reasonably reviewed and searched, during normal business hours or at other
5  mutually agreeable times, at an office of the Producing Party's counsel or another mutually agreed upon
6  location.[15] The source code shall be made available for inspection on a secured computer in a secured room
7  without Internet access or network access to other computers, and the Receiving Party shall not copy,
8  remove, or otherwise transfer any portion of the source code onto any recordable media or recordable
9  device. The Producing Party may visually monitor the activities of the Receiving Party's representatives
10  during any source code review, but only to ensure that there is no unauthorized recording, copying, or
11  transmission of the source code.[16]

12          (d)      The Receiving Party may request paper copies of limited portions of source code
13  that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers,
14  or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code
15  other than electronically as set forth in paragraph (c) in the first instance. The Producing Party shall provide
16  all such source code in paper form including bates numbers and the label "HIGHLY CONFIDENTIAL -
17  SOURCE CODE." The Producing Party may challenge the amount of source code requested in hard copy
18  form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 6 whereby the
19  Producing Party is the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes
20  of dispute resolution.

21          (e)      The Receiving Party shall maintain a record of any individual who has inspected
22  any portion of the source code in electronic or paper form. The Receiving Party shall maintain all paper

---

24  [14] It may be appropriate under certain circumstances to allow House Counsel access to derivative materials including "HIGHLY CONFIDENTIAL - SOURCE CODE" information, such as exhibits to motions or expert reports,

25  [15] *Alternative*: Any source code produced in discovery shall be made available for inspection in a format through which it could be
26  reasonably reviewed and searched during normal business hours or other mutually agreeable times at a location that is reasonably convenient for the Receiving Party and any experts to whom the source code may be disclosed. This alternative may be appropriate if the Producing Party and/or its counsel are located in a different jurisdiction than counsel and/or experts for the Receiving Party.

27  [16] It may be appropriate under certain circumstances to require the Receiving Party to keep a paper log indicating the names of any
28  individuals inspecting the source code and dates and times of inspection, and the names of any individuals to whom paper copies of portions of source code are provided.

copies of any printed portions of the source code in a secured, locked area. The Receiving Party shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The Receiving Party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.[17]

10.    PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL – SOURCE CODE"] that Party must:

(a) promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b) promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c) cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.[18]

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional*: or "HIGHLY CONFIDENTIAL

---

[17] The nature of the source code at issue in a particular case may warrant additional protections or restrictions, For example, it may be appropriate under certain circumstances to require the Receiving Party to provide notice to the Producing Party before including "HIGHLY CONFIDENTIAL – SOURCE CODE" information in a court filing, pleading, or expert report.

[18] The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued.

– SOURCE CODE"] before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

11.    A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION

(a)    The terms of this Order are applicable to information produced by a Non-Party in this action and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" [*Optional:* or "HIGHLY CONFIDENTIAL – SOURCE CODE"]. Such information produced by Non-Parties in connection with this litigation is protected by the remedies and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a Non-Party from seeking additional protections.

(b)    In the event that a Party is required, by a valid discovery request, to produce a Non-Party's confidential information in its possession, and the Party is subject to an agreement with the Non-Party not to produce the Non-Party's confidential information, then the Party shall:

1.    promptly notify in writing the Requesting Party and the Non-Party that some or all of the information requested is subject to a confidentiality agreement with a Non-Party;

2.    promptly provide the Non-Party with a copy of the Stipulated Protective Order in this litigation, the relevant discovery request(s), and a reasonably specific description of the information requested; and

3.    make the information requested available for inspection by the Non-Party.

(c)    If the Non-Party fails to object or seek a protective order from this court within 14 days of receiving the notice and accompanying information, the Receiving Party may produce the Non-Party's confidential information responsive to the discovery request. If the Non-Party timely seeks a protective order, the Receiving Party shall not produce any information in its possession or control that is

1  subject to the confidentiality agreement with the Non-Party before a determination by the court.[19] Absent a

2  court order to the contrary, the Non-Party shall bear the burden and expense of seeking protection in this

3  court of its Protected Material.

4  12.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

5       If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

6  Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the

7  Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized

8  disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform

9  the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d)

10  request such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is

11  attached hereto as Exhibit A.

12  13.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED
        MATERIAL

13       When a Producing Party gives notice to Receiving Parties that certain inadvertently

14  produced material is subject to a claim of privilege or other protection, the obligations of the Receiving

15  Parties are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B).[20] This provision is not intended to

16  modify whatever procedure may be established in an e-discovery order that provides for production without

17  prior privilege review. Pursuant to Federal Rule of Evidence 502(d) and (e), insofar as the parties reach an

18  agreement on the effect of disclosure of a communication or information covered by the attorney-client

19  privilege or work product protection, the parties may incorporate their agreement in the stipulated protective

20  order submitted to the court.

21

22  _____

23  [19] The purpose of this provision is to alert the interested parties to the existence of confidentiality rights of a Non-Party and to afford the Non-Party an opportunity to protect its confidentiality interests in this court.

24  [20] *Alternative*: The parties may agree that the recipient of an inadvertent production may not "sequester" or in any way use the document(s) pending resolution of a challenge to the claim of privilege or other protection to the extent it would be otherwise

25  allowed by Federal Rule of Civil Procedure 26(b)(5)(B) as amended in 2006. This could include a restriction against "presenting" the document(s) to the court to challenge the privilege claim as may otherwise be allowed under Rule 26(b)(5)(B) subject to ethical obligations.

26  An alternate provision could state: "If information is produced in discovery that is subject to a claim of privilege or of protection as

27  trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return or destroy the specified information and any copies it has and may not

28  sequester, use or disclose the information until the claim is resolved. This includes a restriction against presenting the information to the court for a determination of the claim."

14. MISCELLANEOUS

14.1 Right to Further Relief. Nothing in this Order abridges the right of any person to seek its modification by the court in the future.

14.2 Right to Assert Other Objections. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

[14.3 *Optional:* Export Control. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. The Producing Party shall be responsible for identifying any such controlled technical data, and the Receiving Party shall take measures necessary to ensure compliance.]

14.4 Filing Protected Material. Without written permission from the Designating Party or a court order secured after appropriate notice to all interested persons, a Party may not file in the public record in this action any Protected Material. A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5. Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil Local Rule 79-5, a sealing order will issue only upon a request establishing that the Protected Material at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e) is denied by the court, then the Receiving Party may file the Protected Material in the public record pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the court.

15. FINAL DISPOSITION

Within 60 days after the final disposition of this action, as defined in paragraph 4, each Receiving Party must return all Protected Material to the Producing Party or destroy such material. As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material. Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if

1  not the same person or entity, to the Designating Party) by the 60-day deadline that (1) identifies (by

2  category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that

3  the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format

4  reproducing or capturing any of the Protected Material. Notwithstanding this provision, Counsel are entitled

5  to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal

6  memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and

7  consultant and expert work product, even if such materials contain Protected Material. Any such archival

8  copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in

9  Section 4 (DURATION).

10    IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

11

12  DATED: _____  _____
                                    Attorneys for Plaintiff

13

14  DATED: _____  _____
                                    Attorneys for Defendant

15  PURSUANT TO STIPULATION, IT IS SO ORDERED.

16

17  DATED: _____  _____
                                    [Name of Judge]

18                                    United States District/Magistrate Judge

19

20

21

22

23

24

25

26

27

28

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

[print or type full address], declare under penalty of perjury that I have read in its entirety and understand

the Stipulated Protective Order that was issued by the United States District Court for the Northern District

of California on [date] in the case of _____ **[insert formal name of the case and the number and

initials assigned to it by the court]**. I agree to comply with and to be bound by all the terms of this

Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to

sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any

manner any information or item that is subject to this Stipulated Protective Order to any person or entity

except in strict compliance with the provisions of this Order.

I further agree to submit to the jurisdiction of the United States District Court for the

Northern District of California for the purpose of enforcing the terms of this Stipulated Protective Order,

even if such enforcement proceedings occur after termination of this action.

I hereby appoint _____ [print or type full name] of

_____ [print or type full address and telephone number] as my

California agent for service of process in connection with this action or any proceedings related to

enforcement of this Stipulated Protective Order.


Date: _____

City and State where sworn and signed: _____

Printed name: _____
               [printed name]

Signature: _____
            [signature]