UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF ILLUMINA CAMBRIDGE LTD. for issuance of subpoenas under 28 U.S.C. § 1782 | Case No. 19-mc-80215-WHO (TSH)<br><br>**ORDER GRANTING APPLICATION FOR LEAVE TO SERVE SUBPOENAS**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Illumina Cambridge Ltd. seeks leave to serve subpoenas on Complete Genomics, Inc., BGI Americas Corp. and MGI Americas, Inc. (collectively, "Respondents") under 28 U.S.C. § 1782. Appl., ECF Nos. 1-2.[1] No opposition has been filed. For the reasons set forth below, the Court **GRANTS** Illumina Cambridge's application.

## II. BACKGROUND

Illumina Cambridge, a United Kingdom subsidiary of Illumina Inc., is a California based company that develop, manufactures, and markets DNA sequencing devices. Appl. at 1. It owns the following patents:

1. European Patent No. EP 1 530 578 Bl, (the '578 Patent), Danish PatentDK/EP 3 002 289 T3, which is the Danish designation of a divisional of the '578 Patent (the '289 Patent), and Turkish Patent Number TR 2018 04580 (the '4580 Patent), which is the Turkish validation of the '289 Patent, all of which are entitled "Modified nucleotides for polynucleotide sequencing." *Id.* These patents cover

---

[1] Illumina Cambridge filed its application at ECF No. 1 and its memorandum of law at ECF No. 2. The Court's citations herein refer to the memorandum.

United States District Court
Northern District of California

        modified nucleotides with an azidomethyl blocking group, which are used in a method of DNA sequencing known as "sequencing-by-synthesis" or "SBS." *Id.*

2. European Patent No. EP 1 828 412 B2 (the '412 Patent), which is entitled "Improved method of nucleotide detection." *Id.* This patent covers the use of a detection buffer containing ascorbic acid that may be used in SBS. *Id.*

Illumina Cambridge has brought several actions outside the United States asserting that companies of the BGI Group, a Chinese conglomerate headquartered in Shenzhen, the People's Republic of China, infringe on its patent rights. *Id.* at 2. Illumina Cambridge seeks leave to serve subpoenas on Respondents to obtain documents and testimony for use in the following foreign patent infringement actions:

1. An action asserting infringement of the '578 Patent in the Dusseldorf (Germany) Regional Court (the "German Action") against Latvia MGI Tech SIA;

2. An action asserting infringement of the '578 Patent and the '412 Patent in the Federal Patent Court in Switzerland (the "Swiss Action") against Latvia MGI;

3. An action asserting infringement of the '4580 Patent in the Istanbul Civil Court for Intellectual and Industrial Rights (the "Turkish Action") against Genoks Teknoloji Saglik Bilisim Turizm Hiz. Endustriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti.; and

4. An action asserting infringement of the '289 Patent in the Maritime and Commercial Court of Denmark (the "Danish Action"; collectively the "Foreign Actions") against BGI Europe A/S.

*Id.*

Latvia MGI, the defendant in the German and Swiss Actions, is a subsidiary of MGI Tech Co, Ltd., which is in turn another Chinese-based company and a subsidiary of BGI. *Id.* at 2-3. Genoks, the defendant in the Turkish Action, is a distributor for BGI in Turkey. *Id.* at 3. BGI Europe, located in Denmark and the defendant in the Danish Action, serves as BGI's European headquarters. *Id.* BGI Europe provides laboratory services in the area of DNA sequencing primarily under the BGI brand. *Id.* BGI also manufactures its own DNA sequencing devices

through MGI Tech. *Id.* BGI's DNA sequencing devices on which its SBS method is performed include the BGISEQ-500 and the MGISEQ-2000 (the "BGI/MGI Sequencing Devices"). *Id.* BGI also supplies sequencing reagent kits that contain the reagents needed for performing SBS on the BGI/MGI Sequencing Devices ("Sequencing Reagent Kits"). *Id.*

Illumina Cambridge contends that Respondents have evidence that is relevant to the Foreign Actions. As to Complete Genomics, Illumina Cambridge maintains it has information that will show that the modified nucleotides that form part of the Sequencing Reagent Kits and are used for performing DNA sequencing on the BGI/MGI Sequencing Devices infringe at least Claims 1 and 4 of the '578 Patent, at least Claim 1 of the '4580 Patent and at least Claim 1 of 2 the '289 Patent. *Id.* at 10-11. It contends that Complete Genomics is likely to have information that will show that the method of DNA sequencing performed on the BGI/MGI Sequencing Devices involves the use of a buffer containing ascorbic acid during nucleotide detection steps such that at least Claim 1of the '412 Patent is infringed. *Id.* at 11. Complete Genomics was acquired in 2013 by BGI and it became in 2018 part of MGI Tech, which is "the instruments manufacturing business of BGI." *Id.* (quoting Wang Decl. Ex. B, ECF No. 3). MGI Tech's website states that it "focuses on R&D, production and sales of sequencing instruments, reagents, and related products to support life science research, agriculture, precision medicine and healthcare." Wang Decl., Ex. C.[2] BGI has published a "technical note" on the BGISEQ-500 sequencing device, which is described as a "New Desktop Sequencer with Innovative Technology." *Id.*, Ex. D. The "technical note" further states that the "BGISEQ-500 is an innovative high-throughput sequencing solution, developed by BGI's Complete Genomics subsidiary in Silicon Valley." *Id.* And in a brochure relating to MGI Tech's MGISEQ-T7 sequencing device, MGI Tech has stated that it has a location in "San Jose (the USA, Americas)" in order "to ensure sufficient supply of maintenance parts for major regions." *Id.*, Ex. E. BGI also describes its "San Jose Innovation Center," i.e., Complete Genomics, as a location for "sequencing application development" and a location "for developing next-generation sequencers and applications for academic, clinical, and consumer markets." *Id.*,

---

[2] *See also* https://en.mgitech.cn/page/gsjj.html, last visited 11/6/2019.

3

Ex. F.

The Complete Genomics website states that "Complete Genomics now serves as a research and development center of excellence. Complete Genomics continues to focus on improving its technology and helping MGI Tech to build next-generation sequencing systems and applications for the research, clinical, and consumer markets." *Id.*, Ex. B.[3]

Illumina Cambridge also contends that BGI Americas (the U.S. affiliate of BGI) and MGI Americas (the U.S. affiliate of MGI Tech) are likely to have relevant evidence. Appl. at 11. BGI Americas and MGI Americas are sales and marketing arms of BGT and share an office with Complete Genomics in San Jose. *Id.* at 12. Illumina Cambridge contends the publicly available CVs of certain employees suggest they work for the BGI Group or BGI Genomics. *Id.* (citing Wang Decl., Exs. G-I). MGI Americas and its parent MGI Tech claim to be the "leading manufacturer and developer of BGI's proprietary NGS instrumentation." Wang Decl., Ex. J. NGS stands for "next generation sequencing." Appl. at 12. MGI Tech's website states: "As the leading manufacturer and developer of BGI's proprietary NGS instrumentation, the global MGI organization provides comprehensive products and services for fully-automated, real-time, whole picture and lifelong genetic analysis in life science research." Wang Dec., Ex. J.[4] MGI Americas' field service engineer, Abigail Frank, states that she "services NGS instruments and lab automated workstations at Complete Genomics in San Jose, as well as external customers throughout North and South America." *Id.*, Ex. K. MGI Americas also advertises, offers to sell, provides service and support, and disseminates literature on its website on the BGI/MGI Sequencing Devices, the MGISEQ and 16 BGISEQ Sequencing Reagent Kits and the MGISP-960 sample prep system. *Id.*, Ex. L.

BGI Americas has its "West Coast Innovation Center" in San Jose, California, where it conducts research. *Id.*, Ex. M. It recently announced the expansion of that facility. *Id.*, Ex. N. BGI Americas is involved in the research and development of BGI's NGS technologies at its San Jose facility. Appl. at 12. Illumina Cambridge maintains that "[t]hese sources strongly suggest

---

[3] *See also* https://www.completegenomics.com/, last visited 11/6/2019.
[4] *See also* https://mgiamericas.com/, last visited 11/6/2019.

4

that BGI's sequencing chemistry and sequencing devices were developed and designed by Respondents in this District, and Respondents will therefore have information and documents relevant to development and design activities, including in relation to the modified nucleotides and a detection buffer containing ascorbic acid for performing SBS on BGI/MGI Sequencing Devices." *Id.*

### III. LEGAL STANDARD

Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person[.]

28 U.S.C. § 1782(a). Section 1782 permits district courts to authorize discovery where three general requirements are satisfied: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (citations omitted). A district court has wide discretion to grant discovery under Section 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-61 (2004). In exercising its discretion, a district court should consider the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding," (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264-65.

A district court's discretion is to be exercised in view of the twin aims of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252. There is no requirement that the party seeking discovery establish that the information sought would be

discoverable under the governing law in the foreign proceeding or that United States law would allow discovery in an analogous domestic proceeding. *Id.* at 247, 261-63. "Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here." *Id.* at 263.

### IV. DISCUSSION

#### A. Statutory Requirements

Illumina Cambridge's request satisfies the minimum requirements of Section 1782. First, Respondents can be found in this District. Complete Genomics and MGI Americas are both Delaware corporations with their headquarters in San Jose, California. Wang Decl., Exs. O, P. BGI Americas is a Delaware corporation which holds itself out as having a research facility in San Jose, California. *Id.*, Ex. Q. A business entity is "found" in the judicial district where it is incorporated or headquartered. *In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016); *In re Ex Parte Appl. of Ontario Principals' Council*, 2013 WL 6073517, at *2 (N.D. Cal. Nov. 8, 2013) (Delaware corporation headquartered in Palo Alto was "found" in the Northern District of California). In addition, the test is also satisfied if the target of the 1782 application has a presence in this District. *In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (having an office in this District is sufficient). Thus, there is no question that all Respondents are "found" here.

Second, court actions, including patent infringement actions, pending in courts in Germany, Turkey, Switzerland and Denmark satisfy the statutory requirement of a proceeding in a foreign tribunal. Courts have routinely granted Section 1782 applications seeking discovery for use in proceedings in those countries. *See, e.g.*, *AIS GmbHAachen Innovative Sols. v. Thoratec LLC*, 762 F. App'x 447, 448 (9th Cir. 2019) (German court in which a patent infringement case was pending was a foreign tribunal for purposes of § 1782); *IPCom GmbH v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (German patent infringement action qualified); *In re Int'l Judicial Assistance from the Fourth Civil Court for Intell. and Indus. Property Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (N.D. Cal. June 22, 2015) (Turkish trademark infringement action qualified); *In re Ex Parte Appl. of Jommi*, 2013 WL6058201, at *3 (N.D. Cal. Nov. 15,

2013) (Swiss court proceeding qualified); *In re Request for Int'l Judicial Assistance from the Dist. Ct. of Kolding, Denmark*, 2015 WL 13827074, at *1 (W.D.N.C. May 4, 2015) (Danish district court proceeding qualified).

Third, a litigant in a foreign civil litigation is an "interested person" for purposes of Section 1782. *See Intel*, 542 U.S. at 256-57; *Qualcomm Inc.*, 2018 WL 3845882, at *2 (N.D. Cal. Aug. 13, 14 2018). Illumina Cambridge is a plaintiff in all the Foreign Actions. Van Rospatt Decl. ¶¶ 3-4, ECF No. 4; Hess Decl. ¶¶ 4-5, ECF No. 5; Valentin Decl. ¶¶ 5-6, ECF No. 6; Karakulak Decl. ¶¶ 6-7, ECF No. 7. It is therefore an "interested person" for purposes of the statute.

## B. Discretionary *Intel* Factors

### 1. Respondents Are Not Participants In The Foreign Actions

The fact that Respondents are not parties to any of the Foreign Actions favors approval of Illumina Cambridge's application. *See In re Appl. Pursuant to 28 US.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *4 (N.D. Cal. Oct. 16, 2017). Further, although Illumina Cambridge concedes that Respondents are ultimately owned by the same Chinese corporate parent, BGI, it is unlikely that the foreign courts could compel discovery from the subsidiaries and affiliates of a party given that German, Swiss, Turkish and Danish litigation systems do not have effective right to pretrial discovery that is comparable to that in the United States. Van Rospatt Decl. ¶ 13 (Germany), Hess Decl. ¶ 15 (Switzerland); Valentin Decl. ¶ 15 (Denmark); Karakulak Decl. ¶ 16 (Turkey). The key test under this prong is whether the "evidence, available in the United States, may be unobtainable absent" an order by this Court under Section 1782. *In re Nikon Corp.*, 2017 17 WL4647753, at *4 (quoting *Intel*, 542 U.S. at 264). Because the requested discovery is unavailable in the four foreign jurisdictions, Illumina Cambridge has established it is unavailable without this Court's intervention. Further, the first *Intel* factor would likely not weigh against discovery even if the target of the subpoena was itself a party to a Foreign Action due to the lack of effective foreign discovery procedures. *See In re IPCom GmbH & Co. KG*, 2014 WL 12772090, at *2 (N.D. Cal. Apr. 10, 2014) (factor neutral as a result of lack of effective discovery procedure in Germany, even though Apple, the target of the

7

subpoena, was a defendant in the German action); *In re Qualcomm Inc.*, 2018WL3845882, at *3 (noting that multiple courts have found this to be a neutral factor for German cases in light of German discovery law).

### 2. The Foreign Courts Are Receptive To U.S. Judicial Assistance

The second *Intel* factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence. *In re Appl. of Jt. Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'") (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). The declarations from foreign counsel submitted with Illumina Cambridge's application confirm that none of the four foreign countries in which its patent infringement actions are pending has a policy of rejecting or has indicated an intent to reject evidence from the United States obtained under Section 1782. Van Rospatt Decl. ¶¶ 21-24 (Germany), Hess Decl. ¶¶ 20-21 (Switzerland); Valentin Decl. ¶ 21 (Denmark); Karakulak Decl. ¶ 25 (Turkey). Further, the receptivity of these courts to evidence from the United States is consistent with previous decisions. *See In re Qualcomm Inc.*, 2018 WL 3845882, at *3-4 (Germany); *In re Jommi*, 2013 WL 6058201, at *4 (Switzerland); *In re Dist. Ct. of Kolding*, 2015 WL 13827074, at *1 (Denmark); *In re Fourth Civil Ct. for Intell. & Indus. Prop. Rights in Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (Turkey).

### 3. There Is No Circumvention Of Foreign Discovery Procedure

The third *Intel* factor weighs in favor of discovery unless the applicant is attempting to circumvent the foreign country's proof-gathering restrictions. *Intel*, 542 U.S. at 244-45. The question under this prong is whether the foreign court would be affronted by the applicant's resort to U.S. discovery. *In re Appl. of Gianoli Aldunate*, 3 F.3d 54, 61-62 (2d Cir. 1993). The fact that more evidence may be obtained via a section 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application. *In re Nikon Corp.*, 2017 WL 4647753, at *4; *In re Raiffeinsenbank*, 2016

WL6474224, at *6; *see also Appls. of Heraeus Kulzer, GmbHv. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (that an applicant "cannot obtain even remotely comparable discovery by utilizing German procedures" was not circumvention and was not a basis to deny an application under section 1782). Here, the Court finds an order authorizing discovery in aid of an action pending there would not offend any court or violate any court order in Germany, Switzerland, Turkey or Denmark. *See* Van Rospatt Decl. ¶ 25; Hess Decl. ¶ 22; Valentin Decl. ¶ 22; Karakulak Decl. ¶ 25. The opinions of counsel in the four foreign countries are consistent with earlier court decisions on this point. *See, e.g., In re IPCom GMBH & Co.*, 2014WL 12772090, at *3 (noting there is no circumvention because "U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings."); *In re Jommi*, 2013 WL 6058201, at *4 (no circumvention of Swiss law); *In re Dist. Ct. of Kolding*, 2015 WL 13827074, at *1 (Denmark); *In re Fourth Civil Ct. for Intell. &Indus. Prop. Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (no circumvention of Turkish discovery law).

### 4. The Requests Are Not Unduly Burdensome

Finally, discovery is likely to lead to identifying information. Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Here, Illumina Cambridge seeks to take a deposition of Complete Genomics under Rule 30(b)(6). As a general matter, depositions of corporate officers are standard practice in U.S. civil litigation and are not burdensome. The Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden. *See* Fed. R. Civ. P. 45(d)(1). Further, the discovery is relevant to Illumina Cambridge's allegations that a Chinese corporate entity and its affiliates are engaged in a global campaign of intellectual property theft and that the defendants in the Foreign Actions are unlawfully exploiting its patented technologies. To the extent Respondents assert that any of the information Illumina Cambridge seeks is

burdensome or confidential or proprietary, they can bring an appropriate motion to quash or the parties can enter into a protective order, such as this Court's Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets[5] (with suitable modifications to make it appropriate for use in a § 1782 context). *See, e.g., In re NanoPyxis Co., Ltd.*, 2018 WL 1156838, at *5 (N.D. Cal. Mar. 5, 2018) (entry into a protective order alleviated confidentiality concerns). Illumina Cambridge has also made a preliminary showing that the laws of Germany, Turkey, Switzerland and Denmark would provide adequate protection for confidential documents or information submitted to a court located there. Appl. at 21-22. Accordingly, the Court finds the fourth factor is also satisfied.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Illumina Cambridge Ltd.'s application for leave to serve subpoenas on Complete Genomics, Inc., BGI Americas Corp. and MGI Americas, Inc.

**IT IS SO ORDERED.**

Dated: November 7, 2019

THOMAS S. HIXSON
United States Magistrate Judge

---

[5] Available at https://cand.uscourts.gov/model-protective-orders.

10