Katie J.L. Scott (Cal. Bar No. 233171)
Email address: katie.scott@arnoldporter.com
Joshua Seitz (Cal Bar No. 325236)
Email address: joshua.seitz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Building 5, Suite 500
Palo Alto, California 94306
Telephone:     (650) 319-4500
Facsimile:     (650) 319-4700

Matthew M. Wolf (admitted *pro hac vice*)
matthew.wolf@arnoldporter.com
Jennifer Sklenar* (Cal. Bar. No. 200434)
jennifer.sklenar@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone:     (202) 942-5000
Facsimile:     (202) 942-5999
*Admitted in NY and CA only; practice limited to
matters before federal courts and federal agencies

Attorneys for Respondents
BGI AMERICAS CORP., MGI AMERICAS, INC.,
and COMPLETE GENOMICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE APPLICATION OF ILLUMINA CAMBRIDGE LTD. | Case No. 3:19-mc-80215-WHO (TSH) |
| | **MOTION TO VACATE 28 U.S.C. § 1782 APPLICATION AND QUASH OR LIMIT SUBPOENAS PURSUANT TO § 1782** |
| | Date:        January 9, 2020 |
| | Time:        10:00am |
| | Location:    Courtroom A |
| |                  15th Floor |

**TABLE OF CONTENTS**

                                                                                                          **Page**

I.      INTRODUCTION ...........................................................................................................1

II.     FACTUAL BACKGROUND .........................................................................................2

        A.      The Parties.........................................................................................................2

        B.      The Foreign Proceedings....................................................................................4

                1.      The German Action....................................................................................4

                2.      The Swiss Action .......................................................................................5

                3.      The Danish Action .....................................................................................5

                4.      The Turkish Action ....................................................................................6

        C.      THE APPLICATION FOR DISCOVERY UNDER SECTION 1782 .......................6

III.    LEGAL STANDARDS.................................................................................................7

                1.      Statutory Requirements Under § 1782 .......................................................7

                2.      Legal Standard for Motion to Quash..........................................................9

IV.     ARGUMENT ................................................................................................................9

                1.      Illumina's Efforts to Gain Access to Materials Before Discovery
                        Opens in the Foreign Tribunals is an Attempt to Circumvent the
                        Rules of Procedure in those Jurisdictions. ................................................9

                2.      Illumina's Requests Are an End-Run Attempt to Gain Access to
                        Early Discovery in the U.S. Litigations and Expedited Discovery
                        That This Court Denied-In-Part. .............................................................14

                3.      Respondents Should Not Be Compelled to Produce Documents
                        Located Outside of the United States........................................................17

                4.      Illumina's Requests are Unduly Burdensome and Could Lead to the
                        Public Disclosure of Respondent's Trade Secrets. ..................................20

                        (a)     Illumina's Deposition Subpoena Is Unduly Burdensome..................21

                        (b)     Illumina's Request for Documents is Unduly Burdensome..............21

                        (c)     The Foreign Tribunals Cannot Protect Respondents'
                                Confidential Information....................................................................22

                                i.      Risk of Public Disclosure of Respondent's Trade
                                        Secrets in Germany. .............................................................23

                                ii.     Risk of Public Disclosure of Respondent's Trade
                                        Secrets in Turkey..................................................................24

i

iii. Risk of Public Disclosure of Respondent's Trade Secrets in Switzerland. ...........................................24

iv. Risk of Public Disclosure of Respondent's Trade Secrets in Denmark. .............................................25

V. CONCLUSION ............................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Astronics Advanced Elec. Sys.* v. *Lufthansa Technik*,
    561 F. App'x. 605 (9th Cir. 2014) ............................................................................7

*Baxalta Inc. v. Genentech, Inc.*,
    No. 16-MC-80087-EDL, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016)....................9

*Dugan v. Lloyds TSB Bank, PLC*,
    No. 12-CV-02549-WHA (NJV), 2013 WL 4758055 (N.D. Cal. Sept. 4, 2013) ........21

*Eisemann v. Greene*,
    No. 97 CIV.6094 (JSR), 1998 WL 164821 (S.D.N.Y. Apr. 8, 1998).........................20

*Estate of Ungar v. Palestinian Authority*,
    332 F. App'x 643 (2d Cir. 2009)...............................................................................20

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).....................................................................................10

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002)..................................................................................18

*Haworth, Inc. v. Herman Miller, Inc.*,
    998 F.2d 975 (Fed. Cir. 1993)....................................................................................9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013).......................10, 13

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002)..................................................................................9, 20

*In re Harbour Victoria Inv. Holdings Ltd.*,
    No. 15-MC-127, 2015 WL 4040420 (S.D. N.Y. June 29, 2015)...................14, 16, 17

*In re Kivisto*,
    521 F. App'x 886 (11th Cir. 2013) ...........................................................................15

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997)........................................................................................15

*In re Pioneer Corp.*,
    No. MC 18-0037 UA (SS), 2018 WL 2146412 (C.D. Cal. May 9, 2018) ..............21, 23

*In re Samsung Elecs. Co.*,
    No. 12-80275 LHK (PSG), 2013 WL 12335833 (N.D. Cal. Jan. 23, 2013)...............10

*In re Sarrio, S.A.*,
    119 F.3d 143 (2nd Cir. 1997)....................................................................................18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ...........................................................................................passim

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985)......................................................................................10

*Kestrel Coal Pty Ltd. v. Joy Global Inc.*,
    362 F.3d 401 (7th Cir. 2004).....................................................................................18

*Lazaridis v. Int'l Centre for Missing & Exploited Children*,
    760 F. Supp. 2d 109 (D.C. Cir. 2011) ......................................................................14

*MetaLab Design Ltd. v. Zozi Int'l, Inc.*,
    No. 17-MC-80153-MEJ, 2018 WL 368766 (N.D. Cal. Jan. 11, 2018) .......................7

*Nikon Corp. v. ASML US Inc.*,
 No. MC-17-00035-PHX-JJT, 2017 WL 4024645 (D. Ariz. Sept. 12, 2017)................................18

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
 706 F. App'x 350 (9th Cir. 2017) ...........................................................18

*Norex Petroleum Ltd. v. Chubb Ins. Co.*,
 384 F.Supp.2d 45 (D.D.C. 2005) ............................................................18

*Siemens AG v. W. Digital Corp.*,
 No. 8:13-CV-01407-CAS-AJWx), 2013 WL 5947973 (C.D. Cal. Nov. 4, 2013)......................25

*Strike 3 Holdings LLC v. Doe*,
 No. 4:18-CV-04993-KAW, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ...................................9

*W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*,
 No. 09-126-SLR, 2010 WL 181088 (D. Del. Jan. 19, 2010) .........................................21

**Statutes**

28 U.S.C. § 1782 ...........................................................................passim

**Other Authorities**

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*, 25 Syracuse J. Int'l L. & Com. 1 (1998) ................................................19

**Rules**

Fed. R. Civ. P. 26(b) ......................................................................8

Fed. R. Civ. P. 26(c) .....................................................................20

Fed. R. Civ. P. 30(b)(6) ..................................................................22

Fed. R. Civ. P. 45 ........................................................................9

Fed. R. Civ. P. 45 (c)(1) .................................................................20

Fed. R. Civ. P. 45(d)(1) ..................................................................9

iv

# I.    INTRODUCTION

Illumina Cambridge Ltd. ("Illumina") filed suit in Germany, Turkey, Switzerland, and Denmark (collective, "Foreign Actions") against companies and distributors of the BGI Group for alleged patent infringement.  Before any of the foreign courts could set hearings on the cases, Illumina rushed to this Court and filed for an Application for Discovery pursuant to 28 U.S.C § 1782 seeking leave to serve subpoenas on Complete Genomics, Inc. ("CGI"), BGI Americas Corp. ("BGI Americas"), and MGI Americas, Inc. ("MGI Americas") (collective, "Respondents").  Illumina filed this Application **two days after** Illumina's motion for expedited discovery for similar type of documents from the Respondents **had been denied-in-part by this Court.**  On November 7, 2019, this Court granted Illumina's repackaged Application to serve subpoenas.  In response to this Court's Order granting Illumina's Application, CGI, BGI Americas, MGI Americas, and their counsel spent considerable time reviewing the subpoenas in an effort to respond.  After careful review of the Application and subpoenas, Respondents respectfully submit this memorandum of law and the accompanying declarations to establish that this Court should exercise its broad discretion to vacate Illumina's Application and quash or limit Illumina's subpoenas for the following reasons:

- Illumina's subpoenas are an end-run attempt to circumvent discovery rules in this Court, the District of Delaware, and in the foreign jurisdictions because Illumina seeks access to documents that this Court already denied-in-part in *Illumina, Inc., et al. v. BGI Genomics Co., LTD.*, No. 3:19-cv-03770-WHO, D.N. 42 (N.D. Cal.) and which foreign discovery procedures would allow Illumina to access.  Illumina's subpoenas are also an attempt to get early access to Respondents' core technical documents that Illumina agreed would not be due until February 5, 2020 in *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN (D. Del.);

- Most of the requested documents are not located in the United States;

- The subpoenaed U.S. entities do not have access to many of the documents.  Illumina's requests would therefore result in the unduly burdensome search for documents that may not even reflect the current products, much less those that are alleged to have been sold in Germany, Turkey, Switzerland, or Denmark; and

---

- All of Illumina's requests seek highly confidential information of Respondents, including confidential sales information and trade secret product specifications and recipes that cannot be sufficiently protected in the Foreign Actions.

## II.    FACTUAL BACKGROUND

### A.    The Parties

CGI is an innovator and technology leader in the field of DNA sequencing, including whole human genome sequencing. CGI has developed patented DNA sequencing instruments, chemistry, and software, including its proprietary DNBSEQ™ DNA nanoball sequencing platforms and has sequenced more than 20,000 whole human genomes. CGI innovates to improve human health by providing researchers and clinicians with the core technologies to understand, prevent, diagnose, and treat diseases and conditions using genomic information. CGI was co-founded in California in 2006 by Dr. Rade Drmanac, who currently serves as its Chief Scientific Officer.

In 2013, CGI was acquired by the BGI Group, and continued to perform sequencing-related R&D as part of the BGI Group. The technologies developed by CGI and Dr. Drmanac have since been further developed and commercialized outside the United States by MGI Tech Co., Ltd. (as further discussed below). The BGI Group is a multi-national collection of distinct companies focusing on several facets of biotechnology, including genome sequencing, proteomics, and diagnostics. Research and development within the BGI Group spans such disparate fields as agriculture and food science, cancer research, metagenomics, and reproductive health. There is a division of labor within the BGI Group, with each company focusing on different aspects of the biotechnology industry and geographical regions.

BGI Americas is an indirect subsidiary of BGI Genomics, both of which are part of the services arm of the BGI Group. BGI Americas offers a variety of biotechnology services to customers in North and South America including genomic sequencing, proteomics, mass spectrometry, and bioinformatics services. These services are provided to customers involved in a wide array of industries, including drug discovery, diagnostics, and population genomics. BGI Americas is not responsible for the manufacture, importation, sale, or offer for sale of BGI sequencers or sequencing reagent kits in the United States, nor does it perform any of those activities

in Denmark, Germany, Switzerland, or Turkey. BGI Americas' role within the BGI Group as it relates to sequencing is to arrange for sequencing services for North and South American customers to be performed in laboratories outside the United States.

MGI Americas is responsible for sales and marketing of systems and reagents kits in North and South America. Neither CGI nor MGI Americas is responsible for services or sales in Europe.

Respondents are not responsible for the sale or manufacturing of the products accused of infringement in Denmark, Germany, Switzerland, or Turkey. As such, they are not responsible for maintaining the type of business records that Illumina seeks. For example, they do not maintain the design history files or manufacturing records for the accused products. Similarly, their financial systems do not include sales of products in Europe.

Applicant Illumina develops, manufactures, markets, and sells diagnostic tools and services for DNA sequencing, among other things. Illumina Cambridge is based in the United Kingdom and is a wholly owned subsidiary of Illumina Inc., a U.S. entity.

Illumina and Respondents are opponents in patent infringement and invalidity actions pending around the world, including in Germany, Switzerland, Turkey, Denmark and the United States. Within the United States, there are two cases pending between Illumina and Respondents. The first U.S. case is in the United States District Court for the District of Delaware, where Respondent CGI asserted a patent infringement claim against Illumina Inc. *See Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN (D. Del.). CGI alleges that Illumina has willfully infringed a CGI patent for improving the efficiency of DNA sequencing by reducing the number of signals required for nucleotide detection. *Id.* at D.N. 7. In response, Illumina Inc. and Illumina Cambridge asserted patent infringement counterclaims against Respondents. *Id.* Illumina's counterclaims are based on three related patents for the use of ascorbic acid in an imaging buffer (*id.* at D.N. 8.), and are the U.S. counterparts to one of the patents asserted in Switzerland.

The second U.S. case was filed by Illumina Cambridge and Illumina Inc. in this District on June 27, 2019. *See Illumina, Inc., et al. v. BGI Genomics Co., LTD.*, No. 3:19-cv-03770-WHO (N.D. Cal.). Illumina asserts two patents that are related to the patents asserted in Germany, Switzerland and Denmark, but do not share the same priority date or specification. *Id.* at D.N. 52.

Respondent CGI filed a counterclaim against Illumina asserting infringement of U.S. Patent No. 9,944,984 ("the '984 Patent"), which is directed to high density arrays for efficient base calling in sequencing reactions. *Id.* at D.N. 54.

### B. The Foreign Proceedings

In the litigations relevant to this § 1782 Application, Illumina alleges that European affiliates of the BGI group infringe Illumina's patents directed at modified nucleotides with an azidomethyl blocking group and use of a detection buffer that contains ascorbic acid during DNA sequencing. Illumina has filed the following actions: (1) an action asserting infringement of European Patent No. 1 530 578 ("the '578 Patent") in the Düsseldorf Regional Court (the "German Action") against Latvia MGI Tech SIA ("Latvia MGI") and MGI Tech Co. Ltd; (2) an action asserting infringement of the '578 Patent and European Patent No. EP 1 828 412 ("the '412 Patent") in the Federal Patent Court in Switzerland (the "Swiss Action") against Latvia MGI; (3) an action asserting infringement of TR 2018 04580 ("the '4580 Patent") Patent in the Istanbul Civil Court for Intellectual and Industrial Rights (the "Turkish Action") against Genoks Teknoloji Saglik Bilisim Turizm Hiz. Endustriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti ("Genoks"); and (4) an action asserting infringement of European Patent No. DK/EP 3 002 289 T3 ("the '289 Patent") Patent in the Maritime and Commercial Court of Denmark (the "Danish Action") against BGI Europe A/S/ ("BGI Europe") (collective, "Foreign Actions").

#### 1. The German Action

In the German action, Illumina filed suit on March 29, 2019 against Latvia MGI in the District Court of Düsseldorf, Germany asserting infringement of the '578 Patent. Von Rospatt Decl., ¶¶ 3-4. On November 13, 2019, Illumina extended the complaint to include MGI Tech Co. Ltd. Feldges Decl., ¶ 7. Illumina alleges that Latvia MGI and MGI Tech Co. Ltd., infringe the '578 Patent by *inter alia* offering and distributing in Germany, DNA sequencing machines such as "BGISEQ-500" and "MGISEQ-2000" as well as kits containing sequencing chemistry such as "MGISEQ-2000RS High-throughput Sequencing Set" and "BGISEQ-500RS High-throughput Sequencing Set." Von Rospatt Decl., ¶ 8; Von Rospatt Decl. Ex. A at 11, 27. Illumina further alleges that Latvia MGI has supplied at least two customers in Germany—University Hospital of

Tübingen and University of Saarland—with the accused sequencing machines and matching kits containing sequencing chemistry. Von Rospatt Decl. Ex. A at 30.

On October 16, 2019, Latvia MGI filed an answer denying infringement and requesting a stay of the infringement proceedings pursuant to section 148 of the German Code of Civil Procedure pending an action asserting invalidity of the '578 Patent at the German Federal Patent Court. Feldges Decl., ¶¶ 8, 12. As of December 2, 2019 the District Court of Düsseldorf has neither scheduled further dates for Illumina or Latvia MGI to file additional submissions nor a date for oral proceedings. *Id.*, ¶ 8. The District Court of Düsseldorf has yet to make any rulings on the motion to stay but it is settled case law that the District Court will stay the infringement proceedings if there is a high likelihood that the patent in suit will be found invalid by the German Federal Patent Court. *Id.*, ¶ 12.

Illumina also alleges that MGI Tech Co. Ltd presented *inter alia* a sequencing machine "MGISEQ-2000" as well as kits containing sequencing chemistry at the "Medica 2018" trade show which took place in Düsseldorf, Germany from the 12 to the 15 of November, 2018. *Id.*, ¶ 10. MGI Tech Co. Ltd has yet to respond to this allegation.

### 2. The Swiss Action

In the Swiss Action, Illumina filed its Complaint on June 28, 2019 alleging that Latvia MGI infringes the '578 Patent and the '412 Patent by selling products and performing processes that infringe the asserted patents. Calame Decl., ¶ 8; Hess Decl., ¶ 8. On November 25, 2019, Latvia MGI filed a statement of defense denying infringement and asserting invalidity of the '578 Patent and the '412 Patent. Calame Decl., ¶ 9. Latvia MGI also filed a procedural motion requesting a stay of the proceedings for the Court to determine if the suit was brought against the right party. *Id.*; *see also* Calame Decl. Ex. A.

### 3. The Danish Action

Illumina asserted the '289 Patent against BGI Europe on May 15, 2019 alleging that BGI Europe infringes by using Denmark specific sequencing reagent kits that contain reagents, including modified nucleotides, for performing polynucleotide sequencing on sequencing platforms of the BGI Group. Valentin Decl., ¶ 8; Valentin Decl. Ex. A. On August 23, 2019, BGI Group filed a statement

of defense explaining that the '289 Patent is invalid and Illumina had failed to demonstrate that the reagents allegedly used by the BGI Group in fact contain azidomethyl group. Bording Decl. Ex. A at 2, 13. BGI Europe also moved to stay the infringement proceeding pending determination of the validity of the '289 Patent. *Id.*, ¶ 8. There is currently no date set for the hearing. *Id*, ¶ 9.

### 4.     The Turkish Action

In the Turkish Action, Illumina filed suit on July 9, 2019 against Genoks before the Istanbul 1st IP Civil Court, Turkey, alleging infringement of the '4580 patent. Çan Decl., ¶¶ 5, 7. Genoks is a distributor for the BGI group, and Illumina has not filed suit against any BGI entity. *Id*., ¶ 12. Illumina claims that the DNA sequencing kits distributed by Genoks, including BGISEQ-500, MGISEQ-200 and MGISEQ-2000, infringe the '4580 patent. *Id.*, ¶ 6.

On September 24, 2019, Genoks served its response to Illumina's infringement action and also asserted counterclaims of invalidity. *Id.*, ¶ 7. Genoks also moved to stay the infringement proceedings pending the determination of the validity of the asserted patent before the European Patent Office. *Id.* On November 8, 2019, Illumina served its response to Genoks' claim for invalidity. *Id.* The Turkish Court has granted Genoks a one month extension for filing its responses. *Id.* The Turkish Court has not yet made any rulings as to the motion to stay, but it is expected that the court will stay the infringement proceedings pending the outcome of the invalidity action. *Id.*, ¶ 14.

### C.     THE APPLICATION FOR DISCOVERY UNDER SECTION 1782

By *ex parte* Petition dated September 6, 2019, Illumina filed an application with this Court under 28 U.S.C. § 1782 seeking leave to issue three subpoenas to Respondents for the production of documents to use in the Foreign Actions and for a deposition of Respondent CGI on the same topics.

In its application, Illumina failed to provide **complete** information to this Court about the discovery procedures in each of these Foreign Tribunals. As explained below, each of these jurisdictions have discovery procedures that would allow Illumina to obtain the requested information from the entities alleged to have performed the challenged activities. Illumina also failed to inform this Court that two days prior, Judge Orrick denied-in-part Illumina's Motion to Expedite discovery in this Court for a similar set of documents and deposition testimony. *Illumina,*

*Inc., et al. v. BGI Genomics Co., LTD., et al.*, No. 3:19-cv-03770-WHO, at D.N. 42 (N.D. Cal.). Illumina's motion to expedite sought the following documents: 1) BGI's commercialization plans in the United States; 2) the chemical structure of its nucleotides and the protocol for the use of those sequencers; and 3) the location, model and owner of each BGI sequencer used with each such system. *Id.* at D.N. 29. The Respondents agreed to provide the chemical structures of the fluorescently labeled nucleotides in an interrogatory response within 30 days and to notify Illumina 60 days in advance of plans to commercialize. *Id.* at D.N. 42. The Court did not grant Illumina's request for the location, model and owner of each BGI sequencer or the protocols for use of the nucleotides, and deposition testimony regarding the same. *Id.* Illumina's repackaged subpoenas now seeks *inter alia* documents and deposition testimony 1) the "chemical composition (and structure) of each component of the Sequencing Reagents Kit, including but not limited to the chemical composition and structure of each nucleotide molecule contained in the kit and the chemical composition of each solution contained in the kit; and 2) for each Sequencing Reagent Kit, whether the kit contains modified nucleotides that comprise a removable 3'-azidomethyl blocking group or modified nucleotide triphosphate molecules comprising a 3'-azidomethyl group." Thus, through its application, Illumina sought broad discovery that would allow Illumina to gain early access to documents and deposition testimony while unduly burdening Respondents.

## III. LEGAL STANDARDS

### 1. Statutory Requirements Under § 1782

The purpose of 28 U.S.C. § 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004). Under § 1782, a district court is authorized, but not required, to assist foreign litigants in gathering evidence. *MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-MC-80153-MEJ, 2018 WL 368766, at *4 (N.D. Cal. Jan. 11, 2018) ("Although the statutory factors have been satisfied, the Court exercises its discretion under *Intel* and [denies] the Application."); *Astronics Advanced Elecs. Sys.* v. *Lufthansa Technik AG*, 561 F. App'x. 605, 606 (9th Cir. 2014) ("The Courts

have stressed that, even if the absolute requirements of § 1782 are met, a district court still retains the discretion to deny a request.") (internal alterations omitted).

Generally, courts considering an application for a discovery order under § 1782 must conduct a two part inquiry. First, the court must decide whether the statutory prerequisites for obtaining a discovery order pursuant to § 1782 are met. This initial inquiry requires the court to decide (1) whether the person from whom discovery is sought is a resident or is found in the district; (2) whether the discovery is sought in connection with proceedings in a foreign tribunal; and (3) whether the person seeking discovery is the foreign tribunal or an interested party.

After the court has satisfied itself that it has the authority under § 1782 to grant the requested discovery, it must then decide whether, under the circumstances existing in that case, it should actually exercise this authority. This second decision is left entirely to the discretion of the Court. The Supreme Court in *Intel* set forth a number of considerations to guide district courts: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach; (2) the nature of the foreign tribunal, and the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel Corp.*, 542 U.S. at 264-265.

Section 1782 explicitly incorporates the Federal Rules of Civil Procedure. Any discovery must therefore be "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

As detailed below, the subpoenas at issue here raise several issues that merit this Court exercising its discretion to vacate the Application and quash or limit the subpoenas.

## 2. Legal Standard for Motion to Quash

Federal Rule of Civil Procedure Rule 45 governs discovery by subpoena, and requires that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 further requires that "the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A); *Strike 3 Holdings LLC v. Doe*, No. 4:18-CV-04993-KAW, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019); *see also In re Edelman*, 295 F.3d 171, 181 (2d Cir. 2002) (holding Rule 45 can operate to prevent discovery under 28 U.S.C. § 1782). Rule 45 also permits a court to quash or modify a subpoena that requires "disclosing a trade secret or other confidential research, development or commercial information." Fed. R. Civ. P. 45(d)(3)(B); *see also*, *Baxalta Inc. v. Genentech, Inc.*, No. 16-MC-80087-EDL, 2016 WL 11529803, at *3 (N.D. Cal. Aug. 9, 2016).

It is also well established that parties should first obtain discovery from their opponents before burdening a non-party with discovery requests. *See, e.g., Haworth, Inc. v. Herman Miller, Inc.,* 998 F.2d 975, 978 (Fed. Cir. 1993) (holding that a district court can properly require a party to seek discovery from its party opponent before burdening a non-party with a subpoena).

The moving party on a motion to quash bears the burden of persuasion. *Baxalta,* 2016 WL 11529803, at *3. However, "the party issuing the subpoena must demonstrate that the discovery is relevant." *Strike 3 Holdings*, 2019 WL 468816, at *2.

## IV. ARGUMENT

### 1. Illumina's Efforts to Gain Access to Materials Before Discovery Opens in the Foreign Tribunals is an Attempt to Circumvent the Rules of Procedure in those Jurisdictions.

The third *Intel* factor weighs strongly against Illumina. A key consideration in addressing § 1782 discovery requests is whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*

9

*Corp.*, 542 U.S. at 265; *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ("[a] grant of discovery that trenched upon the clearly established procedures of a foreign tribunal would not be within section 1782") (quoting *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985)).

U.S. courts are thus reluctant to sanction attempts by foreign litigants to circumvent the discovery rules in the foreign litigants' home countries. In fact, where the discovery sought is merely an impermissible fishing expedition to circumvent discovery procedures, the Supreme Court has cautioned district courts to deny § 1782 applications. Such concerns are equally applicable here and Illumina's end-run of the Foreign Tribunals' procedures should not be allowed.

Illumina's own attorneys admit that discovery is available in all the foreign jurisdictions. *See* Von Rospatt Decl., ¶¶ 13-25 (discussing discovery options in Germany); Valentin Decl., ¶¶ 15-22 (discussing discovery options in Denmark); Karakulak Decl., ¶¶ 16-25 (discussing discovery options in Turkey); Hess Decl., ¶¶ 15-22 (discussing discovery options in Switzerland). Illumina, however, has failed to make ***any attempt*** to obtain discovery from any of the foreign jurisdictions. Illumina essentially argues that it cannot be faulted for circumventing foreign discovery rules if it just chooses not to engage with those rules in the first place. Although there is no requirement that an applicant "exhaust" available options for discovery in the foreign forum before bringing a § 1782 application, the failure of an applicant to make any attempt to avail itself of discovery options in the foreign forum is a factor that the District Court may consider and weigh against the applicant. *In re Samsung Elecs. Co.*, No. 12-80275 LHK (PSG), 2013 WL 12335833, at *3 (N.D. Cal. Jan. 23, 2013); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (denying discovery and noting that "a perception that an applicant has '***side-stepped***' less-than-favorable discovery rules ***by resorting immediately to § 1782*** can be a factor in a court's analysis") (emphasis added).

Illumina admits that the German action, which was filed on March 29, 2019 is "still at a very early stage." Von Rospatt Decl., ¶7. Illumina has only filed a complaint and the German Court will not set a hearing date until the second half of 2020. *Id.*, ¶ 11. Illumina also fails to provide this Court with complete information about German discovery procedures. In fact, German law has detailed procedures on discovery that allows a litigant to obtain documents from an opposing party

or a third party prior to infringement proceedings as well as during the infringement proceedings. Feldges Decl., ¶¶ 13-17.  For example, sections 809 and 810 of the German Civil Code as well as section 140c (1) of the German Patent Act allows a patentee to obtain discovery of specific documents or inspect devices that are alleged to be infringing.  *Id.*, ¶ 14.  Section 142(1) of the German Code of Civil Procedure also provides the option for Illumina to request that the District Court of Düsseldorf order the production of specific documents in the possession of Latvia MGI and/or of MGI Tech Co. Ltd. or a third party.  *Id.*, ¶ 16.  Indeed, section 140c(1) of the German Patent Act allows such discovery measures to be ordered if there is a substantial likelihood that the opposing party infringes a patent and the patentee is in need of such measures in order to substantiate its infringement claim.  *Id.*, ¶ 14.

In addition, German Law provides for an inspection of the accused device.  Prior to filing its compliant, Illumina could have obtained an *ex parte* order from the District Court of Düsseldorf pursuant to section 485 *et seq* of the German Code of Civil Procedure to conduct an inspection of the allegedly infringing sequencing machines and kits in Germany.  *Id.*, ¶ 15.  In practice, these orders are routinely granted and will be denied only if the infringement allegation is without any merit.  *Id.*  This inspection could have been conducted at any location where the accused sequencing machines and kits are located in Germany and also at the premises of the alleged customers of Latvia MGI and/or of MGI Tech Co. Ltd.  In fact, Illumina could have conducted an  inspection at the booth of MGI Tech Co. Ltd. during the "Medica 2018" trade show in Düsseldorf, Germany (*id.*), a fact that Illumina failed to inform this Court in the Von Rospatt declaration.  Illumina had additional opportunities to conduct this inspection when the accused devices were again displayed at the "Medica 2019" tradeshow from the 18th to the 20th of November 2019.  *Id.*  Illumina could have requested for the accused device to be examined by an expert who would then prepare a written opinion on the question of patent infringement.  The expert would have been allowed to disassemble the products and perform any type of analysis necessary.  *Id.*  It is undisputed that Illumina was aware of the fact that the accused product was on display at the "Medica 2019" show because Illumina filed a motion seeking to serve the complaint on MGI Tech Co. Ltd. at the tradeshow.  *Id.*  Illumina, however, failed to make a request for an inspection of the accused devices, but rather raced

to this Court in an attempt to circumvent Germany's well-established discovery procedures. This failure of Illumina to seek discovery from MGI Tech Co., Ltd. in Germany is particularly egregious given that MGI Tech Co., Ltd. is the manufacturer of the accused products, and is therefore the most appropriate source of the requested information. Bao Decl., ¶ 6; Jiang Decl., ¶ 7; Xu Decl., ¶¶ 8-11; Hansen Decl., ¶ 10; Jimena Decl., ¶ 10.

Illumina also admits that the Denmark action is "still at a very early stage." Valentin Decl., ¶ 9. Illumina fails to explain to this Court that Danish law has discovery procedures that permits parties to file a motion requesting the Court to order a counterparty to disclose documents. Bording Decl., ¶¶ 14, 17. Illumina could have filed a motion for a search and seizure to secure evidence of infringement. Bording Decl., ¶ 14. When the motion is granted, the search can be performed without prior notice to the opposing party. *Id.*, ¶ 16. The evidence secured by the Court can include all relevant materials found during the search of the facilities, including electronically stored documents. *Id.* Typically, the motion for a search and seizure order will specify some search terms and the court will then seize all materials found using those search terms on the opposing party's computer network or database. *Id.* The Court may also seize relevant specimens as well as copies or backups of documents, including electronically stored documents. *Id.*

Similarly, the Swiss action is "still at a very early stage." Hess Decl., ¶ 8. Illumina has only filed a complaint and the Swiss Federal Patent Court is not expected to set a preliminary hearing date until February 2020, at the earliest. Calame Decl., ¶ 11. Illumina's reply brief to Latvia MGI's Statement of Defense will not be due until after this preliminary hearing. *Id.* Swiss law also has detailed procedures on discovery that allows a litigant to obtain documents from an opposing party or a third party prior to infringement proceedings as well as during the infringement proceedings. *Id.*, ¶ 12. According to Swiss law, Swiss courts may order a party, upon specific request of the other party, to produce certain documents (or narrowly defined categories of documents) which are relevant and material to the outcome of the case. *Id.* Generally, in making this request, the requesting party must (i) to specify the requested document(s) as well as show that the requested documents (ii) are relevant and material to the outcome of the case and (iii) are in the possession of the requested party, i.e. Latvia MGI. *Id.*, ¶ 13. To request a document, Illumina need only describe

(1) author and/or recipient of the document, (2) date or presumed time frame and (3) presumed content of the document. *Id.*, ¶ 14. Despite Illumina's assertions, there is no reason to believe that Illumina could not have satisfied these requirements. In fact, the very subpoena that Illumina has served on Respondents in this case contains much of the information needed for an order from a Swiss court.

Illumina also admits that the Turkish action is "still at a very early stage." Karakulak Decl., ¶ 10. Genoks has not yet filed its response to Illumina's defense against its invalidity action. Çan Decl., ¶ 7. Turkish Procedural Code provides effective measures for the production of evidence. Pursuant to Article 400/1 of Turkish Procedural Code, the parties may request expert examination from the court to aid in the determination of facts in dispute. *Id.*, ¶ 9. This Article also permits a party to obtain witness statements upon request before the filing of an action. *Id.* Moreover, according to Article 150/3 of Turkish IP Code, a party may request determination of evidence which may be used for the calculation of damages before instituting any compensation action based on patent infringement. *Id.*, ¶ 10.

Additionally, the Turkish Courts are empowered to ask for collection of any evidence from a public or private entity, as well as order discovery, expert examination or witness testimony upon the request of parties. *Id.*, ¶ 11. These are commonly used means for collecting evidence in Turkish litigation. *Id.* Despite these available avenues of discovery in the Turkish action, as of the filing of this motion, Illumina has not filed a single request for discovery or determination of evidence in Turkey. *Id.* Rather, Illumina seeks to abuse the § 1782 subpoena process to circumvent its obligations for pre-suit investigation under Turkish law.

Illumina is "side stepping" these well-settled procedural rules in Germany, Denmark, Switzerland, and Turkey with its Motion. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 ("Here, the Special Master found that Sharp had side-stepped less-than-favorable discovery rules by resorting immediately to § 1782."). Illumina is seeking, long before these foreign tribunals would ever hear any discovery disputes, discovery of material to which Illumina might never have a right to use and could potentially have obtained by following the foreign tribunal's discovery rules. Thus, it appears that Illumina is trying to use § 1782 to circumvent or avoid the

considered policies and procedures of Germany, Denmark, Switzerland, and Turkey. It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to rush to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority. But that is precisely the sort of encouragement that Illumina asks this Court to give. This Court should not countenance the use of United States procedure, and resources, as a device to subvert discovery rules in all these countries.

        **2.**      **Illumina's Requests Are an End-Run Attempt to Gain Access to Early Discovery in the U.S. Litigations and Expedited Discovery That This Court Denied-In-Part.**

Illumina's *ex parte* Petition is remarkable for its attempt to circumvent discovery procedures in four foreign jurisdictions and two U.S. jurisdictions. Illumina asked this Court for permission to serve subpoenas on Respondents that would allow Illumina to get early access to documents and deposition testimony relating to Respondents' alleged use of ascorbic acid to support Illumina's barebones infringement claim in *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN (D. Del.). The documents Illumina seeks through its § 1782 application are not scheduled, as agreed, to be produced in that case until February 5, 2020. *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN, at D.N. 21 (D. Del.). Illumina also attempted to circumvent this Court's Order with a repackaged motion that seeks much of the same discovery that this Court previously denied-in-part with respect to Illumina's motion to expedite discovery. Illumina's request is therefore not only an attempt to circumvent foreign discovery rules, it is, in fact, a Trojan horse designed to secure early access to documents and testimony that is not due in the Delaware action for over two months or that this Court rejected when it denied-in-part Illumina's Motion for Expedited Discovery. *In re Harbour Victoria Inv. Holdings Ltd.*, No. 15-MC-127, 2015 WL 4040420, at *5 (S.D. N.Y. June 29, 2015) (denying § 1782 Applicating and finding that § 1782 discovery request was ***an attempt to evade an unfavorable discovery ruling by another Judge of this Court***). This type of abuse is not proper under § 1782 and has no place under the Federal Rules of Civil Procedure. *See, e.g.*, *Lazaridis v. Int'l Centre for Missing & Exploited Children*, 760 F. Supp. 2d 109, 115-16 (D.C. Cir. 2011) (denying application under 28 U.S.C. § 1782 because the applicant's "wide-ranging request" suggested that applicant was seeking information more for "his

general use than for use by the Greek tribunals in their investigation or prosecution."); *see also In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997) (noting that "[i]f the judge . . . suspects that the [§ 1782 discovery] request is a 'fishing expedition' . . . the district court should deny the request") (alterations in original).  It is well-established, for example, that a court may deny a § 1782 application where it suspects that the request is a vehicle to end-run discovery procedures.  *In re Kivisto*, 521 F. App'x 886, 889 (11th Cir. 2013) (instructing that district courts should "carefully examine and give thoughtful deliberation to any request for assistance submitted by an interested person and deny the request when it suspects that the request is a fishing expedition or a vehicle for harassment.") (internal quotation marks omitted).

In this case, the circumstances surrounding the application show that the requested discovery is an attempt to gain early access to documents.  For example, Illumina's subpoena seeks *inter alia* documents and deposition testimony relating to the following: 1) for "each Sequencing Reagent Kit, documents sufficient to show whether the kit contains a solution containing ascorbic acid;" and 2) "documents sufficient to describe the chemical composition (and structure) of each component of the Sequencing Reagent Kits, including but not limited to the chemical composition and structure of each nucleotide molecule contained in the kit and the chemical composition of each solution contained in the kit."  These documents are relevant to the Delaware action in which Illumina agreed to a negotiated schedule where core technical documents would not be produced until February 5, 2020.  Illumina has, however, found a vehicle to gain early access to these documents despite the agreed-upon scheduling order.

In addition, the circumstances surrounding the application show that the requested discovery is an attempt to circumvent this Court's prior Order.  As previously explained, Illumina filed its Complaint in Germany on March 29, 2019, Denmark on May 15, 2019 and Switzerland, and Turkey on June 28, 2019.  The Complaint that Illumina filed in this Court on June 27, 2019 included barebones and unfounded allegations of indirect infringement.  Shortly after the Complaint was filed, the Respondents requested a 30-day extension of time to respond to the complaint.  *See Illumina, Inc., et al. v. BGI Genomics Co., LTD., et al.*, No. 3:19-cv-03770-WHO, at D.N. 26 (N.D. Cal.).  In response, Illumina conditioned its agreement to the extension on Respondents agreeing to

expedited discovery, and indicated several topics for which Illumina intended to seek expedited discovery. *Id.* Respondents declined in view of Illumina's failure to establish a Rule 11 basis for the discovery it sought and instead reluctantly accepted Illumina's offer for a mere seven-day extension to respond to the Complaint. *Id.* Illumina then raced to this Court on July 31, 2019 with a motion for expedited discovery to support its barebones allegations. *See id.*, at D.N. 28. Illumina's motion for expedited discovery was for the purpose of filing the gaps in its prefiling investigation so that it could augment what would otherwise undoubtedly be a deficient infringement contention. It was an attempt to circumvent the Federal Rules and Patent Local Rules.

This became readily apparent and more troubling when Illumina offered to drop its unnecessary and unreasonable demand for expedited discovery if BGI would "agree not to introduce sequencers before 2021," an offer that had serious antitrust implications. Indeed, Illumina's request made no reference to the asserted patents and did not set any limitation on the type of sequencing technology that the Respondents would refrain from selling, such that even indisputably non-infringing alternatives would be encompassed. Given the impropriety of Illumina's proposal and Respondent' good faith defenses in this case, Respondents did not accept it and instead requested that this Court reject Illumina's request for expedited discovery for failure to demonstrate "good cause." At the hearing on Illumina's motion on September 4, 2019, Judge Orrick declined to fully grant Illumina's requests; instead limiting the scope of discovery to Respondents' agreement to provide an interrogatory response with the chemical structures of the fluorescently labeled nucleotides and their current business plans in the United States within 30 days and to notify Illumina 60 days in advance of plans to launch in the United States. *Id.*, at D.N. 46, at 10:5-12, 17:6-11. Yet, ***two days later***, Illumina found a new vehicle to repackage its motion in order to circumvent this Court's ruling.

As the court in *In re Harbour* observed, "the timing of Petitioner's various motions and petitions is ***highly suspect.***" *In re Harbour*, 2015 WL 4040420, at *7. In that case, which involved a similar timing of events, the court explained that:

> one can imagine that a discovery request in the U.S. proceeding will often be relevant to the foreign proceeding and vice versa. If the judge overseeing the U.S. proceeding denies a given discovery request, the losing party could simply turn around and file a § 1782 petition for the

same information, but repackaged as aiding the foreign proceeding. Indeed, that appears to be what occurred here.

*Id.* "Noticeably absent from [Illumina's] briefs is any explanation as to what prompted it to file the § 1782 petitions when it did." *Id.* The German Action has been pending since March 2019, but Illumina did not file the Petition until after this Court had stated at a hearing on Illumina's motion for expedited discovery that Illumina was "not entitled to the information, why should [Illumina] get it?" D.N. 46 at 17:4-5. ***Two days after***, Illumina filed the Application seeking effectively the same discovery that this Court had just denied. Illumina should not be rewarded with what is clearly an attempt to circumvent this Court's ruling.

Moreover, the Protective Orders in the Northern District of California and the District of Delaware do not allow documents produced to be used in the Foreign Actions. *See Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN, at D.N. 26, § XIX (D. Del.); Patent L.R. 2-2 Interim Protective Order, § 7.1. Illumina should not be allowed to exploit § 1782 and obtain broad discovery that the foreign defendants would not be able to obtain from Illumina in the Foreign Actions. This will result in a situation where the defendants are disadvantaged, and perhaps unfairly prejudiced, in the Foreign Actions. *Intel*, 542 U.S. at 262.

### 3. Respondents Should Not Be Compelled to Produce Documents Located Outside of the United States

Illumina's subpoenas specifically request documents from CGI, MGI Americas, and BGI Americas as well as its predecessors, successors, subsidiaries, parents, affiliates, and past or present directors, officers, agents, representatives, employees, consultants, attorneys, joint ventures, and partners. D.N. 1, at pp. 12, 44, 77, 110. Nothing in the subpoenas limits the requests to documents located in the United States. *Id.* at pp. 13, 45, 78, 111. Yet, the information that Illumina seeks from Respondents is maintained by the manufacturer of the accused systems and reagent kits (MGI Tech and/or by the European entities), which is located outside the United States. Bao Decl., ¶ 6; Jiang Decl., ¶ 7; Xu Decl., ¶¶ 8-11; Hansen Decl., ¶ 10; Jimena Decl., ¶ 10.

Whether the requested materials are located outside the United States is a factor to be considered and courts in this district have denied production of documents located outside the United States. *See Nikon Corp. v. GlobalFoundries U.S., Inc.*, 706 F. App'x 350, 351 (9th Cir.

2017) ("On this record, we cannot conclude that the court abused its 'broad discretion' in ordering discovery limited to documents physically located within the United States."); *see also Nikon Corp. v. ASML US Inc.*, No. MC-17-00035-PHX-JJT, 2017 WL 4024645, at *1 (D. Ariz. Sept. 12, 2017) (finding that the location of the document is a factor to be considered); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (suggesting there is "some support" for the view that § 1782 does not authorize discovery of material located in foreign countries but resolving the appeal on other grounds, stating "[w]e need not rule . . . on the question whether § 1782 can ever support discovery of materials outside the United States").

In fact, other courts that have more deeply considered this issue have held that § 1782 does not permit discovery of documents located outside of the United States and that *Intel* did not require the opposite conclusion. *See Norex Petroleum Ltd. v. Chubb Ins. Co.*, 384 F. Supp. 2d 45, 50-55 (D.D.C. 2005) ("The cases discussed *supra* suggest that extraterritorial application of would not be in keeping with the aims of the statute, and indeed that **documents held outside the United States are beyond the statute's intended reach**. Nothing in the Supreme Court's *Intel* decision addresses this issue or suggests otherwise" but then concluding that the documents in question "are not discoverable for another reason") (emphasis added). Professor Hans Smit, who prepared the final version of section 1782 has explained that:

> construing the statute to reach evidence abroad would make the United States courts "clearing houses" for discovery in litigation around the world. Apart from its demands on federal judicial resources, that construction would be apt to transform the effect of § 1782 from "assistance to foreign and international tribunals" to interference with those bodies. ***Thus, despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States.***

*In re Sarrio, S.A.*, 119 F.3d 143, 147 (2nd Cir. 1997) (emphasis added); *see also Kestrel Coal Pty Ltd. v. Joy Global Inc*., 362 F.3d 401, 404 (7th Cir. 2004) (quoting commentary from Professor Hans Smit, the principal draftsman of § 1782 in its revised form, that the statute was "not intended to enable litigants to obtain in Spain evidence located in Spain that could not be obtained through proceedings in Spain" but concluding that "[n]or need we determine whether § 1782 ever permits a district judge to require evidence to be imported from a foreign nation so that it may be handed over

18

here and then exported" for use in a foreign proceeding); *see also* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals,* 25 Syracuse J. Int'l L. & Com. 1 (1998) (explaining why section 1782 should not be applied to documents located outside the United States).

While Illumina would no doubt like to obtain access to the trade secrets of one of its primary competitors, Illumina is not permitted, under the guise of § 1782, to conduct discovery on entities that are not located in this district for their confidential and proprietary information ***located outside the United States*** before the foreign tribunals have had a chance to set their discovery schedules. Here, Illumina seeks documents and testimony from Respondents regarding information maintained by their affiliates outside the United States relating to sales of BGI Sequencing Reagents Kits in Denmark, Germany, Switzerland, and Turkey.

Respondents do not maintain records regarding sales of BGI sequencers or sequencing reagent kits in Denmark, Switzerland, Germany, or Turkey.[1] Hansen Decl., ¶¶ 9-10; Jiang Decl., ¶ 7; Jimena Decl., ¶¶ 9-10. None of the Respondents sell or distribute BGI sequencers or BGI sequencing reagent kits in Europe. Jimena Decl., ¶ 10. BGI Americas only sells sequencing services and even then, its U.S.-based laboratory only performs sample preparation and sample transport. Bao Decl., ¶ 5; Zhang Decl., ¶ 3. MGI Americas has not sold BGI sequencers or BGI sequencing reagent kits to any customer, much less customers in Europe. Hansen Decl., ¶¶ 8-9. CGI performs research and development (not manufacturing), and does not sell BGI sequencers or BGI sequencing reagent kits. Xu Decl., ¶ 5; Hansen Decl., ¶ 5. Neither MGI Americas nor CGI act as a distributor for sequencers or sequencing reagent kits to European countries, and neither maintains systems with access to the BGI Group's supply and/or distribution to Europe. Jimena Decl., ¶ 10. As a result, a majority of the documents and information that Illumina seeks are located outside of the United States with the entities that are responsible for manufacturing and/or sales in Europe. For example, documents relating to sales of BGI Sequencers or BGI Sequencing Reagent Kits in Denmark, Germany, Switzerland, or Turkey would either be located in China, at the headquarters of BGI Genomics or MGI Tech or at their respective European affiliates' offices in

---

[1] The only exception to this is that Ms. Hansen has access to MGI Tech financial data from June 2, 2016 to July 31, 2018, but she cannot attest to its accuracy or completeness. Hansen Decl., ¶ 10.

Europe.  Bao Decl., ¶ 6; Jiang Decl., ¶ 8; Hansen Decl., ¶ 10; Jimena Decl., ¶ 10.

Section 1782 is therefore not the appropriate vehicle for requesting documents that are not maintained by the Respondents in the United States.  This is especially true given that Illumina has made absolutely no effort to request this discovery in the Foreign Proceedings despite its ability to do so.  Feldges Decl., ¶¶ 13-17; Çan Decl., ¶ 11; Von Rospatt Decl., ¶ 20; Valentin Decl., ¶ 18; Karakulak Decl. ¶ 24.  Illumina's failure to seek documents and testimony from MGI Tech Co., Ltd., a party to the German Action and the manufacturer of the accused devices, is particularly damning in this regard because MGI Tech actually maintains and controls the information Illumina seeks.  Bao Decl., ¶ 6; Jiang Decl., ¶ 7; Xu Decl., ¶¶ 8-11; Hansen Decl., ¶ 10; Jimena Decl., ¶ 10.

### 4. Illumina's Requests are Unduly Burdensome and Could Lead to the Public Disclosure of Respondents' Trade Secrets.

The fourth factor set forth by the Supreme Court in the *Intel* decision also weighs against Illumina because the deposition subpoenas and the subpoenas to produce documents impose an impermissible burden on Respondents.  By its proposed subpoenas, Illumina seeks to compel Respondents to produce a broad range of highly confidential and proprietary information, including trade secrets regarding Respondents' manufacturing process.  This is extremely valuable, proprietary information that will not be protected in the foreign jurisdictions.

This Court may reject "unduly intrusive or burdensome requests."  *Intel*, 542 U.S. at 265.  In determining whether a § 1782 petition imposes too great a burden, the courts look to the Federal Rules of Civil Procedure and "the controls on discovery available to the District Court, *see*, *e.g.*, Fed. Rule Civ. Proc. 26(b)(2) and (c)."  *Id.* at 266.  Thus, under the Rules, the party issuing the subpoena "must take reasonable steps to avoid undue burden or expense."  *See* Fed. R. Civ. P. 45 (c)(1); *see also In re Edelman*, 295 F.3d at 181 (holding Rule 45 can operate to prevent discovery under 28 U.S.C. § 1782).  If the subpoena, like the one Illumina seeks, does not avoid subjecting a party to undue burden it will be quashed.  Fed. R. Civ. P. 45 (c)(3)(A)(iv); *see also* Fed. R. Civ. P. 26(c).  Federal courts are especially vigilant in enforcing these requirements to protect non-parties to litigation.  *See*, *e.g.*, *Eisemann v. Greene*, No. 97 CIV.6094 (JSR), 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998); *see also Estate of Ungar v. Palestinian Authority*, 332 F. App'x 643, 645 (2d Cir. 2009) (affirming the quashing of a subpoena on a non-party "which asked for essentially

every document [the non-party] possessed relating to" its relationship with one company "all over the world -- because it was overly broad and burdensome").

### (a) Illumina's Deposition Subpoena Is Unduly Burdensome

Regarding the deposition subpoena to CGI, CGI does not have control or authority to compel or produce any witness not located in the United States and/or not subject to the jurisdiction of this Court. *See, e.g., Dugan v. Lloyds TSB Bank, PLC*, No. 12-CV-02549-WHA (NJV), 2013 WL 4758055, at *2-3 (N.D. Cal. Sept. 4, 2013). As explained in the declarations of Maria Hansen and Chongjun Xu, CGI does not maintain the manufacturing specifications or European financial records for the accused products – these business records are maintained in China and/or Europe. Hansen Decl., ¶¶ 10-11; Xu Decl. ¶¶ 9-13.

As such, CGI should not be expected to provide deposition testimony that will be inherently incomplete, potentially inaccurate, and (at best) riddled with speculation. *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, No. 09-126-SLR, 2010 WL 181088, at *3 (D. Del. Jan. 19, 2010) ("The court has determined that DBSI has no employees who are located within 100 miles of Wilmington, Delaware. DBSI asserts that no responsive documents are maintained in Delaware and that its agent for service of process in Delaware has no control over DBSI's documents or business records. Since plaintiff has not alleged the degree of control by the agent necessary to allow this court to issue a production subpoena over documents located outside the district, the production subpoena as issued is invalid.") (internal citation omitted).

### (b) Illumina's Request for Documents is Unduly Burdensome

Without access to the databases and systems that maintain the requested documents, the documents sought by Illumina would unduly burden Respondents with extensive searching, collection, and review of documents from numerous custodian's personal files and would be disproportionate to the needs and scope of discovery in the Foreign Actions because the requested documents are more properly sought from the relevant entities in the Foreign Actions. *In re Pioneer Corp.*, No. MC 18-0037 UA (SS), 2018 WL 2146412, at *8 (C.D. Cal. May 9, 2018) (denying application and noting that "the right to discovery, even plainly relevant discovery, is not limitless.")

Illumina's request for documents from Respondents regarding the chemical structure of the nucleotides and polymerases contained in BGI's sequencing reagent kits is unduly burdensome and disproportionate to the needs of the litigation. After CGI was acquired by BGI Shenzhen, the manufacturing documents for the nucleotides polymerases used in the sequencing reagent kits were also transferred to, and are currently maintained by affiliates of the BGI Group in China. Xu Decl., ¶¶ 8, 9, 11. CGI no longer manufactures sequencers or sequencing reagent kits or maintains records of such manufacturing. *Id.* CGI only performs research and development, and any documents it has in its possession are limited in scope for this purpose. For example, CGI has some "recipe" files for the BGI sequencers and Bill of Materials for the reagent kits from its Chinese affiliates, but does not control or maintain these documents. *Id.*, ¶¶ 8, 10. CGI cannot confirm whether the documents it receives are accurate or reflective of the current state of BGI's sequencers or sequencing reagent kits, or whether they reflect any sequencers or reagent kits that may have been sold in Europe. *Id.* Similarly, CGI is in possession of some documents that describe the development of various polymerases (and their amino acid sequences) since 2014, but is unable to confirm which (if any) of these polymerases were used in sequencing reagent kits sold in Denmark, Switzerland, Turkey, or Germany (if any). *Id.*, ¶ 11. Finally, any documents and information available to CGI regarding the nucleotide structure in the sequencing reagent kits are from before 2014, and no longer accurately describe the nucleotides in BGI's currently commercially available sequencing kits. *Id.*, ¶ 9.

Thus, CGI is poorly positioned to provide documents or testimony regarding the requested topics. Because Respondents do not maintain or control the documents Illumina requests, it would be unduly burdensome to require Respondents to designate and prepare one or more Rule 30(b)(6) deponents to testify on topics that they have, at best, incomplete knowledge and documentation of.

**(c)** **The Foreign Tribunals Cannot Protect Respondents' Confidential Information**

Moreover, Illumina's requests are intrusive, and seek to delve deeply into the proprietary information of Respondents. The information that Illumina is seeking is highly valuable and protected through a combination of confidentiality agreements, corporate policies, and trade secret and other forms of protection. Compelling Respondents to share this confidential information with Illumina, a competitor and an accused infringer of Respondents' patents, would provide a substantial

competitive advantage to Illumina, which could use the information for a number of purposes that would be damaging to Illumina. For example, by gaining access to the chemical composition and structure of each nucleotide molecule contained in CGI's sequencing reagent kits, Illumina would be provided with valuable tools for designing new sequencing products. Moreover, if this information were eventually placed into the public record, it would provide a substantial advantage to other competitors and potential competitors of Respondents, while causing serious harm to Respondents. *In re Pioneer*, 2018 WL 2146412, at *9 (C.D. Cal. May 9, 2018) ("Finally, if Pioneer were to use any of the third-party licenses requested in a court filing, even if the German court prohibited access to the documents to the public, such restrictions would seemingly not apply to Pioneer's employees.").

Accordingly, producing information to Illumina for use in each of the Foreign Tribunals poses a grave risk of leading to the public disclosure of highly sensitive trade secrets and other confidential and proprietary information.

### i. Risk of Public Disclosure of Respondents' Trade Secrets in Germany.

As Illumina admits, under German law, a third party can request a file inspection under Para. 299 (2) of the German Statute of Civil Actions for confidential documents used in a proceeding. Von Rospatt Decl., ¶ 27. And the parties to the action can file objections to the request on confidentiality grounds. *Id.* Respondents are not parties to the Foreign Action. There is therefore, at the very least, a substantial risk that allowing Illumina's subpoenas will lead to significant harm to Respondents through the public disclosure of its confidential and proprietary information including trade secrets. This is not a risk that can be fully addressed through a protective order issued in a U.S. court.

Although an appropriate protective order issued by this Court could preclude Illumina from disclosing Respondents' trade secret information (or using that information to compete with Respondents or for any other purpose unrelated to the Foreign Action), a protective order issued by this Court would not and could not bind the Foreign Tribunals or require those bodies to depart from their own rules with regard to the publication of evidence submitted to it. *In re Pioneer*, 2018 WL 2146412, at *9 ("Despite Pioneer's representation that it would be willing to voluntarily exclude

certain employees from proceedings where confidential information is discussed, there is no assurance that the highly sensitive information Pioneer seeks about its own competitors would truly be protected.") Indeed, Illumina has failed to obtain any enforceable commitment in any of the foreign jurisdictions regarding how that court will safeguard the confidentiality of Respondents' confidential information should the information be disclosed to the court. Illumina cannot guarantee that sufficient safeguards are in place to protect the confidentiality of Respondents' confidential information in the foreign jurisdictions. Therefore, there is a substantial risk that allowing these subpoenas will cause direct, substantial, and undue harm to Respondents.

          **ii.**       **Risk of Public Disclosure of Respondents' Trade Secrets in Turkey.**

Under Turkish law, courts have discretion to prevent disclosure of confidential information and trade secrets. Çan Decl., ¶ 13. However, such decisions are made upon request of the parties in the litigation. *Id*. Since Respondents are not party to the Turkish Action, they may have little control or input over preventing the disclosure of their confidential and proprietary information. *Id.* Thus, in the Turkish Action, there is serious and significant risk of harm to the Respondents, as not only can the courts not guarantee to protect Respondents' confidential information, but Respondents may not be able to petition the court on their own behalf.

          **iii.**      **Risk of Public Disclosure of Respondents' Trade Secrets in Switzerland.**

According to Article 53 of the Swiss Civil Procedure Code ("CPC"), only the parties to the proceeding have the right to consult the case files and to obtain copies thereof. Calame Decl., ¶ 17. While the court files are thus not publicly available, Article 54 of Swiss CPC provides that the court hearings shall be conducted in public, unless an exclusion of the public is required by public interest or by the legitimate interests of a person involved. *Id.*

Article 156 of Swiss CPC states that "[t]he court shall take appropriate measures to ensure that taking evidence does not infringe the legitimate interests of any parties or third party, such as business secrets". *Id.*, ¶ 18. Thus, Illumina could ask the Federal Patent Court to take the appropriate measures to ensure that confidential documents are protected. The court, however, has the discretion to allow for public access of the documents. *Id*., ¶ 19. Accordingly, Illumina would

not be able to guarantee the confidentiality of any document submitted in the Swiss Infringement Action.  *Id.*

**iv.     Risk of Public Disclosure of Respondents' Trade Secrets in Denmark.**

Under Danish law, the public has a general right of access to court files.  While the parties can request the court to hear the case *in camera*, such requests are decided on a case-by-case basis and is up to the court's discretion.  Bording Decl., ¶¶ 10-11.  Therefore, there is no right by law for a party to protect its confidential information from public access, and there is no guarantee that confidential information submitted to a Danish court will not become publicly available.  *Id.*, ¶ 11.  Moreover, under Section 41d of the Danish Administration of Justice Act, persons who are closely and directly affected by a specific legal question may, if certain conditions are fulfilled, be granted access to specific documents concerning the proceedings.  This Section applies regardless of whether the hearing has been held *in camera*.  *Id.*, ¶ 12.  Thus, there is a substantial chance that allowing Illumina's subpoena will lead to significant harm to Respondents through the public disclosure of their confidential and proprietary information.

## V.     CONCLUSION

For the foregoing reasons, Respondent respectfully requests that Illumina's subpoenas should be quashed.  Moreover, to the extent that Illumina's subpoenas are not quashed, the Court should allow 30 days for Respondents to respond, and enter a protective order restricting access to attorney's eyes only and requiring Illumina to seek an order in the Foreign Tribunals that guarantees the confidentiality of Respondents' information in those tribunals by maintaining the information under seal.  *See Siemens AG v. W. Digital Corp.*, No. 8:13-CV-01407-CAS-AJWx, 2013 WL 5947973, at *6 (C.D. Cal. Nov. 4, 2013) (finding that Section 1782 applicant's "willingness to seek a German protective order appears to address [the respondent's] concerns about confidentiality in the German proceedings.").

25

Dated:  December 2, 2019

ARNOLD & PORTER KAYE SCHOLER LLP

By:  _____ */s/ Katie J.L. Scott* _____
        Katie J.L. Scott

Attorney for Respondents
BGI AMERICAS CORP., MGI AMERICAS,
INC., AND COMPLETE GENOMICS INC.