**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)
355 S. Grand Ave., 44th Floor
Los Angeles, California 90071
Tel: (213) 262-9333
bdunne@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**
Theodore J. Folkman (*pro hac vice*)
One Liberty Square
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**
Minyao Wang (*pro hac vice*)
277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

*Attorneys for Applicant Illumina Cambridge Ltd.*

**Weil, Gotshal & Manges LLP**
Edward R. Reines (SBN 135960)
edward.reines@weil.com
Derek C. Walter (SBN 246322)
derek.walter@weil.com
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re APPLICATION OF ILLUMINA CAMBRIDGE LTD. for issuance of subpoenas under 28 U.S.C. § 1782 | Civ. A. No.: 3:19-mc-80215-WHO (TSH)<br><br>**Memorandum Of Law In Support Of Applicant Illumina Cambridge Ltd.'s Opposition To Respondents' Motion to Quash Or Limit Subpoenas**<br><br>Date: January 30, 2020<br>Time: 10:00am<br>Location: Courtroom A<br>15th Floor |

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT................................................................1

II.  FACTS ................................................................................3

III. THE PENDING LITIGATIONS ..........................................................4

    A.   THE INFRINGEMENT...............................................................4

    B.   THE GERMAN ACTION............................................................4

    C.   THE SWISS ACTION...............................................................5

    D.   THE TURKISH ACTION............................................................6

    E.   THE DANISH ACTION.............................................................6

    F.   THE U.S. ACTIONS ...............................................................7

    G.   THE DISCOVERY SOUGHT FOR THE FOREIGN ACTIONS .........................7

IV. ARGUMENT ................................................................................8

    A.   THE INTEL FACTORS FAVOR DISCOVERY ...............................................8

        1.   Illumina Cambridge Is Not Seeking To Circumvent Foreign Proof Gathering Restrictions. ...........................................................8

        2.   The Discovery Is Not Unduly Burdensome. ...........................................11

    B.   SECTION 1782 IS NOT LIMITED TO EVIDENCE LOCATED IN THE UNITED STATES. ................................................................18

    C.   DISCOVERY DECISIONS IN THE PARALLEL U.S. CASE HAVE NOTHING TO DO WITH THIS APPLICATION.................................................22

    D.   SECTION 1782 PROMOTES EFFICIENCY FOR THE COURTS HERE AND ABROAD AND FOR THE PARTIES IN THIS CASE..........................................24

V.  CONCLUSION ................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page(s)**

*In re Accent Delight Int'l Ltd.,*
869 F.3d 121 (2d Cir. 2017) ........................................................................................24

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.,*
    793 F.3d 1108 (9th Cir. 2015) ..............................................................................18, 24

*Alcon Labs, Inc. v. Pharmacia Corp.,*
    225 F. Supp. 2d 340 (S.D.N.Y. 2002) ........................................................................16

*Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.,*
    2018 WL 1157752 (C.D. Cal. Mar. 2, 2018) .............................................................14

*In re Ex Parte Apple, Inc.,*
    2012 WL 1570043 (N.D. Cal. May 2, 2012)...............................................................18

*In re Ex Parte Apple, Inc.,*
    2015 WL 5838606 (S.D. Cal. Oct. 7, 2015)................................................................25

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS*
    *Forwarding (USA), Inc.,*
    747 F.3d 1262 (11th Cir. 2014) ................................................................................15

*Application of Sarrio, S.A.,*
    119 F.3d 143 (2d Cir. 1997) ......................................................................................20

*In re ATM Fee Antitrust Litig.,*
    233 F.R.D. 542 (N.D. Cal. 2005) ...............................................................................13

*In re Barnwell Enters. Ltd.,*
    265 F. Supp. 3d 1 (D.D.C. 2017).................................................................................20

*Beckman Indus., Inc. v. Int'l Ins. Co.,*
    966 F.2d 470 (9th Cir. 1992) ......................................................................................17

*In re Biomet Orthopaedics Switzerland GmbH,*
    742 F. App'x 690 (3d Cir. 2018) ................................................................................11

*Blazevska v. Raytheon Aircraft Co.,*
    522 F.3d 948 (9th Cir. 2008) ......................................................................................21

*In re Broadcom Corp.,*
    2019 WL 4978849 (W.D. Wash. Oct. 8, 2019).........................................................10

*Bryant v. Armstrong,*
    285 F.R.D. 596 (S.D. Cal. 2012) ...............................................................................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2013 WL 183944 (N.D. Cal. Jan. 17, 2013)................................................11

*Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*,
    224 F.R.D. 471 (N.D. Cal. 2004) ...........................................................14

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ...............................................................14

*In re Del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ..............................................................20, 21

*Dietrich v. Bauer*,
    2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) .......................................13

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002) ...................................................................19

*In re Eurasian Natural Res. Corp., Ltd.*,
    2018 WL 1557167 (N.D. Cal. Mar. 30, 2018) ........................................15

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) .............................................................10, 20

*Four Pillars Enters. Co. v. Avery Dennison Corp.*,
    308 F.3d 1075 (9th Cir. 2002) ................................................................20

*In re Gilead Pharmasset LLC*,
    2015 WL 1903957 (D. Del. Apr. 14, 2015) ......................................17, 18

*Glock v. Glock, Inc.*,
    797 F.3d 1002 (11th Cir. 2015) ..............................................................24

*In re Harbour Victoria Inv. Holdings Ltd.*,
    2015 WL 4040420 (S.D.N.Y. June 29, 2015) ...................................23, 24

*Hay Group, Inc. v. E.B.S. Acquisition Corp.*,
    360 F.3d 404 (3d Cir. 2004) ...................................................................19

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    633 F.3d 591 (7th Cir. 2001) ............................................................11, 15

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
    881 F. 3d 550 (7th Cir. 2018) .................................................................17

*In re HydroDrive Nigeria, Ltd.*,
    2013 WL 12155021 (S.D. Tex 2013) ......................................................20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ..........................................................................passim

iii

Tables

*In re JSC Raiffeinsenbank,*
    2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ................................................................9

*In re Kleimar N.V.,*
    220 F. Supp. 3d 517 (S.D.N.Y. 2016) ......................................................................12

*In re Macquarie Bank Ltd.,*
    2014 WL 7706908 (D. Nev. June 4, 2014) ...............................................................9

*In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.,*
    686 F.3d 1115 (9th Cir. 2012) ................................................................................17

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010) ................................................................................................19

*Nat'l Broad. Co. v. Bear Stearns & Co.,*
    165 F.3d 184 (2d Cir. 1999) ...................................................................................21

*Norex Petroleum Ltd. v. Chubb Ins. Co.,*
    384 F. Supp. 2d 45 (D.D.C. 2005) ..........................................................................20

*In re O'Keeffe,*
    2015 WL 1308546 (D. Nev. Mar. 24, 2015) ...........................................................10

*In re O'Keeffe,*
    2015 WL 5039723 (D.N.J. Aug. 26, 2015) .............................................................18

*Palantir Techs., Inc. v. Abramowitz,*
    2019 WL 6251338 (N.D. Cal. Nov. 22, 2019) ........................................................17

*Participations Industrielles et Commerciales, S.A. v. Rogers,*
    357 U.S. 197 (1958) ................................................................................................18

*In re Pioneer Corp.,*
    2018 WL 2146412 (C.D. Cal. May 9, 2018) ...........................................................17

*In re PJSC Uralkali,*
    2019 WL 291673 (W.D. Wash. Jan. 23, 2019) .......................................................10

*In re Procter & Gamble Co.,*
    334 F. Supp. 2d 1112 (E.D. Wis. 2004) ..............................................................8, 25

*In re Qualcomm Inc.,*
    162 Supp. F.3d 1029 (N.D. Cal. 2016) ...................................................................11

*Reed v. Illinois,*
    2016 WL 3612115 (N.D. Ill. 2016) .........................................................................15

*In re Samsung Electronics Co.,*
    2013 WL 12335833 (N.D. Cal. Jan. 23, 2013) .......................................................11

Tables

1

*San Jose Mercury News, Inc. v. United States Dist. Court*,
   187 F.3d 1096 (9th Cir. 1999) ................................................................16

2

*In re Savan Magic Ltd.*,
   2017 WL 6454240 (D. Nev. Dec. 18, 2017) ........................................11

3

4

*Sergeeva v. Tripleton Int'l Ltd.*,
   834 F.3d 1194 (11th Cir. 2016) ...............................................12, 20, 21

5

*Silver v. Tenet Health Care Corp.*,
   2010 WL 11444064 (S.D. Fla. Aug. 6, 2010) ......................................13

6

7

*St. Jude Medical S.C., Inc. v. Janssen-Counotte*,
   305 F.R.D. 630 (D. Or. 2015)..................................................................12

8

9

*Super Film of Am., Inc. v. UCB Films, Inc.*,
   219 F.R.D. 649 (D. Kan. 2004) ...............................................................14

10

*U.S. Commodity Futures Trading Comm'n v. Bac de Binary, Ltd.*,
   2015 WL 556441 (D. Nev. Feb. 11, 2015)............................................15

11

12

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*,
   870 F.2d 1450 (9th Cir. 1989) ................................................................12

13

14

*In re Veiga*,
   746 F. Supp. 2d 8 (D.D.C. 2010)............................................................10

15

*In re Yasuda*,
   2019 WL 4933581 (N.D. Cal. Oct. 7, 2019 ) ..........................................9

16

17

**Statutes**

18

28 U.S.C. § 1782 ........................................................................*passim*

19

**Rules**

20

Fed. R. Civ. P. 26(a) ...............................................................................18

21

Fed. R. Civ. P. 30(b)(6) ..........................................................................15

22

Fed. R. Civ. P. 34 ...................................................................................13

23

Fed. R. Civ. P. 45 .............................................................................15, 18

24

**Other Authorities**

25

26

Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals*
   *25 Syr. J. Int'l L. & Com. 1, 11 (1998).*....................................................21

27

28

**Tables**

**MEMORANDUM IN SUPPORT OF OPPOSITION TO MOTION TO VACATE
28 U.S.C. § 1782 APPLICATION AND QUASH OR LIMIT
SUBPOENAS**

## I.    PRELIMINARY STATEMENT

Illumina Cambridge, Ltd. ("Illumina Cambridge"), the British affiliate of a California-based company, seeks discovery from Complete Genomics, Inc. ("CGI"), BGI Americas Corp. ("BGI Americas"), and MGI America, Inc. ("MGI Americas," and collectively "the Respondents"), affiliates of a Chinese biotech company, for use in four separate patent infringement actions pending in Germany, Switzerland, Denmark and Turkey (together the "Foreign Actions"). Illumina Cambridge brought its application (the "Application") under 28 U.S.C. § 1782, and the Respondents have moved to quash the subpoenas this Court granted Illumina Cambridge leave to issue.

There is no question that Illumina Cambridge meets the statutory requirements to bring the Application, and there is no question that at least two of the four discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004), favor the Application. The Respondents try and fail to put at issue the remaining two *Intel* factors, and they also try and fail to raise two other issues: they argue that the Court lacks power to compel the production of documents within their possession, custody, or control that may be located outside the United States, and they make a quixotic attempt to argue that the Application is an attempt to circumvent this Court's discovery decision in a parallel U.S. patent case.

None of these arguments has merit. The Respondents say that Illumina Cambridge is seeking to circumvent foreign courts' proof-gathering restrictions. But circumvention occurs only if granting discovery would violate a specific restriction or a specific judicial order of a foreign forum. The Respondents cannot make that showing here. They say instead that Illumina Cambridge should first seek discovery in the foreign cases before turning to a U.S. court, but they ignore case-law holding that there is no requirement under § 1782 of exhaustion of foreign

discovery remedies. The Respondents also argue that the subpoenas they have received are too burdensome. But they fail to make any specific showing of undue burden. Instead, they say that they do have documents, and that the documents are responsive and do disclose some of the key information Illumina Cambridge seeks, but that they may be inaccurate. This is discovery—let the documents be produced and let the defendants in the Foreign Actions explain them away if they can. The Respondents also claim that some documents are in the possession of entities over which the Respondents supposedly have no control. But Respondent CGI is the parent company of China-based MGI Tech Co. Ltd. ("MGI") and therefore has legal control over MGI's documents. And the conduct of the Respondents is also inconsistent with their claim that they do not have the responsive documents. In any case the Respondents' burdensomeness concern cannot be taken seriously: they have failed to respond substantively to two requests by Illumina Cambridge to meet and confer about an agreement regarding the scope of the subpoenas or the appropriate protective order to be entered.

The Respondents say that § 1782 does not apply to documents located outside the United States. They cite a single district court case from another circuit that says so but, incredibly, they ignore the only two appellate decisions on point, which say that Respondents are wrong. Their proposed view of § 1782 is in any case at odds with the plain text of the statute and makes no sense in the age of cloud computing.

Last, the Respondents try to make something of the fact that this Application was filed shortly after this Court denied in part Illumina Cambridge's request for expedited discovery in a parallel U.S. patent infringement proceeding. They say that Illumina Cambridge is somehow seeking to evade this Court's earlier ruling. This is nonsense. To the extent the Respondents claim to have any concerns about whether the evidence Illumina Cambridge will obtain via this Application could be used in the U.S. litigation, Illumina Cambridge is prepared to enter into a

**Opposition to Motion to Quash**

protective order that will make it perfectly clear that this imagined scenario cannot and will not happen. The Respondents have no grounds for complaint.

In short, nothing the Respondents say comes close to giving this Court a reason to quash or modify the subpoenas. The Court should therefore deny the Respondents' motion.

## II.   FACTS

Illumina Cambridge and its affiliates (together "Illumina") are the leading manufacturer of instruments and chemical reagents for DNA sequencing. Illumina's proprietary technology is based on an approach referred to in the field as "sequencing-by-synthesis," or "SBS" for short. We gave a full description of Illumina's innovative and industry-leading patented technology in the memorandum in support of Illumina Cambridge's *ex parte* application for leave to issue the subpoenas (ECF 2). We do not repeat it here in its entirety. There are two key points that are relevant to this Application. First, Illumina's patented SBS technology makes use of a particular chemical group known as an azidomethyl group, which allows the sequencing process to be carried out under mild chemical conditions that do not damage the structure of the DNA. This invention is claimed in European Patent Nos. EP 1 530 578 B1 (the "'578 Patent") and EP 3 002 289 B1 (the "'289 Patent"). Second, Illumina's technology uses antioxidants—in particular ascorbic acid—to reduce the loss of signal that can occur over successive rounds of nucleotide detection during SBS. This permits more cycles of sequencing to be achieved and hence increases the length of the DNA sequence information even further. This invention is claimed in European Patent No. EP 1 828 412 B2 (the "'412 Patent").

Illumina Cambridge alleges infringement of the German and Swiss designations of the '578 Patent in actions pending before the Düsseldorf (Germany) Regional Court (the "German Action") and the Swiss Federal Patent Court (the "Swiss Action"). Illumina Cambridge also alleges infringement of the Danish and Turkish designations of the '289 Patent in actions pending before the Maritime and Commercial Court of Denmark (the "Danish Action") and the Istanbul

3

Civil Court for Intellectual and Industrial Rights (the "Turkish Action"). In each case, Illumina Cambridge alleges that copycat sequencing products used in Europe have the same proprietary nucleotides with an azidomethyl group that are found in Illumina Cambridge's products.

Finally, Illumina Cambridge alleges infringement of the Swiss designation of the '412 Patent in the Swiss Action. The accused sequencing kits are alleged to use ascorbic acid in the same way as Illumina Cambridge's products.[1]

## III. THE PENDING LITIGATIONS

### A. The Infringement

As explained in full in the *ex parte* application (ECF 2), Illumina Cambridge arranged for testing by an independent laboratory, which confirmed that the "BGISEQ-500RS High-throughput Sequencing Set" (the "BGI Kit") contained labelled nucleotides that have an azido group, unlabeled nucleotides that have the same structural composition as 3'-azidomethyl-dNTPs, and a solution containing ascorbic acid. The experts Illumina Cambridge consulted concluded that the testing showed that the BGI Kit likely infringes Illumina Cambridge's patents. This conclusion is the main foundation for the Foreign Actions at issue in this Application.

### B. The German Action

Illumina Cambridge commenced the German Action on or about March 29, 2019. The German Action was served on Latvia MGI Tech SIA ("Latvia MGI") on June 25, 2019 and Latvia MGI's German legal counsel indicated on July 15, 2019 that it would defend itself against the complaint. On October 16, 2019, Latvia MGI filed an answer denying infringement and requesting a stay of the infringement proceedings pending a decision of the Federal Patent Court in the nullity action that was filed in respect of the patent in suit by Latvia MGI on October 15,

---

[1] After the commencement of this *ex parte* application for discovery, Illumina Cambridge filed a patent infringement action in the United Kingdom.

4

2019. The German court has not decided whether to grant a stay. On November 18, 2019 an extension to the infringement complaint was served on MGI. MGI must file a statement of defense by February 3, 2020. Rospatt Rebuttal Decl., ¶2. Illumina Cambridge estimates that assuming there is no stay, oral argument will occur in the second half of 2020.

Illumina Cambridge has asserted in the German Action that Latvia MGI and MGI infringe the '578 Patent in several ways: they sell modified nucleotide molecules in Germany that infringe at least Claim 1; they sell kits in Germany that infringe one claim of the patent; they offer equipment for sale in Germany that is suitable for performing, and intended to perform, methods claimed in the patent.

Latvia MGI and MGI have sold or offered for sale BGI/MGI Sequencing Devices in Germany. For example, as set forth on page 30 of the German complaint, Latvia MGI delivered an MGISEQ-2000 sequencer to the University Hospital of Tübingen and a BGISEQ-500 sequencer to the University of Saarland. In response to a tender issued by the German Research Foundation, Latvia MGI has also offered to equip several sequencing centres with MGISEQ-2000 sequencers. The German complaint also explains that Latvia MGI distributes Sequencing Reagent Kits in Germany, such as the "MGISEQ-2000RS High-throughput Sequencing Set" and the "BGISEQ-500RS High-throughput Sequencing Set." The extension to the infringement complaint further alleges that MGI operated a booth the Medica 2018 trade fair, which took place in Düsseldorf from 12 to 15 November 2018 at which, among other things, it exhibited and promoted MGISEQ-2000 sequencers.

**C.    The Swiss Action**

Illumina Cambridge commenced the Swiss Action on or about June 28, 2019. On November 25, 2019, Latvia MGI filed a statement of defense denying infringement and asserting invalidity of the patents at issue. It has also sought a stay, but the court has not yet ruled on its request. In the Swiss Action, Illumina Cambridge has asserted that Latvia MGI infringes the '578

5

Patent and the '412 Patent by selling products that contain infringing features. Latvia MGI has sold BGI/MGI Sequencing Devices and corresponding Sequencing Reagent Kits in Switzerland. In particular, at least one MGISEQ-2000 sequencer has been supplied to the Health 2030 Genome Center at Campus Biotech in Geneva.

**D.   The Turkish Action**

Illumina Cambridge commenced the Turkish Action in June 2019. On September 24, 2019, the defendant, Genoks Teknoloji Saglik Bilisim Turizm Hiz. Endustriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti ("Genoks"), served its response to Illumina Cambridge's infringement action and also asserted counterclaims of invalidity. Genoks also moved to stay the infringement proceedings pending the determination of the validity of the asserted patent in the opposition proceedings that are pending before the European Patent Office. On November 8, 2019, Illumina served its response to Genoks' claim for invalidity. The Turkish Court has granted Genoks a one-month extension for filing its response. The Turkish Court has not yet made any rulings as to the motion to stay.

Illumina Cambridge has asserted in the Turkish Action that Genoks infringes independent claims 1, 6, 9 and 10 of the '289 Patent (the Turkish validation of which is Turkish Patent No. TR 2018 04580) by importing BGISEQ-500 and MGISEQ-2000 sequencers and related Sequencing Reagent Kits from BGI in China, using them in its genetic testing center, and offering them for sale to hospitals and research institutes across Turkey.

**E.   The Danish Action**

Illumina, Inc. and Illumina Cambridge commenced the Danish Action on or about June 28, 2019. BGI Europe A/S has asserted an invalidity defense and has requested a stay pending a decision of the Opposition Division in the opposition proceedings in respect of the '289 Patent that are pending before the European Patent Office. The Danish Court has not yet reached a

**Opposition to Motion to Quash**

decision on the stay request. The trial of the Danish Action has not yet been scheduled, but it is likely to take place in late 2020.

Illumina Cambridge has asserted in the Danish Action that BGI Europe A/S infringes the '289 Patent by using certain Sequencing Reagent Kits.

**F.     The U.S. Actions**

There are also two cases in the United States between Illumina Cambridge or its parent, Illumina, Inc., and one or more of the Respondents, for infringement of United States patents related to patented DNA sequencing technology. The first case, in this District, is numbered 19-cv-03770. The second case, in the District of Delaware, is numbered 19-cv-00970.

**G.     The Discovery Sought For The Foreign Actions**

On September 6, 2019, Illumina Cambridge sought leave *ex parte* to serve (i) document subpoenas on CGI, BGI Americas and MGI Americas, and (ii) a corporate deposition subpoena on CGI. The Respondents had notice of the Application and had two months to oppose it, but they did not do so.[2] This Court granted the Application on November 7, 2019, and the subpoenas were served on the Respondents the next day. Approximately a month later, on December 2, the Respondents moved to quash. Counsel to Illumina Cambridge twice invited Respondents' counsel to confer in order to narrow the parties' areas of disagreement but received no substantive response. *See* Wang Reply Decl. Ex. B and Ex. C (November 13, 2019 and December 5, 2019 Emails from Ted Folkman to Katie Scott). The parties have not conferred to date about the scope of the subpoenas or about the terms of a protective order.

---

[2] On September 5, 2019, counsel to Illumina Cambridge gave notice of the Application to counsel to Respondents, prior to filing the *ex parte* Application. On September 12, 2019, after the clerk of the court electronically docketed the *ex parte* Application, Illumina Cambridge' counsel relayed the docket information to Respondents.  *See* Wang Decl. Ex. A.

**Opposition to Motion to Quash**

## IV.   ARGUMENT

### A.   The *Intel* Factors Favor Discovery

The only *Intel* factors that the Respondents challenge are the third factor, which asks whether the applicant is seeking to circumvent foreign proof-gathering restrictions, and the fourth factor, which asks if the discovery is unduly burdensome. The Court should therefore take it as given that the remaining two factors favor the Application: that the foreign courts would be receptive to the evidence Illumina Cambridge expects to obtain, and that none of the Respondents are parties to the Foreign Actions. Thus, even if the Respondents' *Intel* arguments had merit, there would still be weighty reasons to reject the Respondents' motion to quash, and the Respondents say nothing to explain why the overall *Intel* balance should tip in their favor even if their arguments could prevail. The purpose of § 1782 is not to restrict the availability of discovery, but to make discovery available in aid of litigation abroad. *Intel Corp.,* 542 U.S. at 247-48. In any event, the Respondents are wrong to claim that Illumina Cambridge is trying to circumvent foreign proof-gathering restrictions and wrong to say that the subpoenas are unduly burdensome. All four *Intel* factors favor Illumina Cambridge.

### 1.   Illumina Cambridge Is Not Seeking To Circumvent Foreign Proof Gathering Restrictions.

*Intel* holds that a bad faith attempt "to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" weighs against an application under § 1782. *Intel,* 542 U.S. at 264-65. Circumvention exists only when the application, if granted, will "undermine a specific policy of a foreign country or the United States." *In re Procter & Gamble Co.,* 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004).[3] There is no requirement under § 1782 that

---

[3] The *Procter & Gamble* court gave an example of circumvention: a specific request by the German government that the court deny an application under § 1782 to avoid compromising an ongoing German criminal investigation. *See In re Procter & Gamble Co.,* 334 F.Supp.2d at 1116 n.3.

**Opposition to Motion to Quash**

the evidence be discoverable under the foreign law, *In re Yasuda*, 2019 WL 4933581, at *2 (N.D. Cal. Oct. 7, 2019 ) (Hixson, M.J.) (citing *Intel*, 542 U.S. at 261-63) and an applicant is not guilty of circumvention because it seeks more discovery under U.S. law than the foreign law would permit; *see also In re JSC Raiffeinsenbank,* 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016). If that were not the rule, then § 1782 would be of limited value in connection with the great majority of countries—including the countries at issue in this Application—that do not allow much, if any, pre-trial discovery. But those are the countries where § 1782 is of especially great use. "Where foreign countries have adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782, [the circumvention factor] militates *in favor* of granting § 1782 relief." *In re Macquarie Bank Ltd.*, 2014 WL 7706908, at *7–8 (D. Nev. June 4, 2014) (emphasis supplied). [4]

Usually when a respondent makes a circumvention argument, it is asserting that the applicant is seeking evidence in the United States that it would be prohibited from obtaining in the foreign forum. That idea is built into the idea of circumvention, which, in the words of the *Intel* court, means circumvention of foreign proof-gathering *restrictions*. *Intel*, 542 U.S. at 264-65 ("[A] district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

---

[4] Much of what both sides' foreign declarants have to say concerns the extent to which the evidence Illumina Cambridge seeks here would be discoverable abroad. Because there is no foreign discoverability test under § 1782, that issue is of marginal, if any, importance. Nevertheless, it is clear from the declarations that while there is some room for limited discovery in the relevant foreign jurisdictions, Illumina Cambridge could not meaningfully benefit from the available discovery methods. For example, German discovery procedures are of limited utility to Illumina Cambridge, Rospatt Rebuttal Decl., ¶¶3-8. The Respondents' own German expert does not challenge that Illumina Cambridge cannot currently provide the requisite level of specificity for discovery, Feldges Decl., ECF 21, ¶16. And in Turkey, the parties agree that compliance with a Turkish discovery order is optional and Illumina Cambridge has no recourse if the target of discovery refuses to produce information. Atilgan Rebuttal Decl. ¶¶3-4; Can Decl., ECF 20, ¶8. In Denmark, there is no dispute that compliance with a discovery order is voluntary. Valentin Rebuttal Decl. ¶¶3-4; Bording Decl., ECF 18, ¶18. Finally, in Switzerland, there is no dispute that Illumina Cambridge cannot currently meet the standard for discovery. Hess Rebuttal Decl. ¶¶3-4; Calame Decl., ECF 19, ¶¶13-16.

9

United States"). Here, the Respondents point to no relevant restriction or policy in any country where a Foreign Action is pending. Rather, their point is that the evidence would or might be available under the foreign law, just not yet—in other words, that Illumina Cambridge's § 1782 application comes too early. Their argument is foreclosed by the well-settled rule that there is no requirement of exhaustion of efforts to obtain the evidence in the foreign case before resorting to § 1782. *In re Broadcom Corp.,* 2019 WL 4978849, at *3 (W.D. Wash. Oct. 8, 2019) ("While it is possible that Applicants could have requested some of this information in the German courts, they were not obligated to do so"); *In re PJSC Uralkali,* 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[T]he court emphasizes that an applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782."); *In re O'Keeffe,* 2015 WL 1308546, at *4 (D. Nev. Mar. 24, 2015) (collecting cases); *see also Euromepa S.A. v. R. Esmerian, Inc.,* 51 F.3d 1095, 1098 (2d Cir. 1995) ("Relying on the plain language of the statute, this Court has also refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to" seek discovery outside the United States first); *In re Veiga,* 746 F. Supp. 2d 8, 24 (D.D.C. 2010) ("[T]he assertion that Applicants have not previously attempted to obtain comparable discovery" in the foreign tribunal "is simply irrelevant to the Court's analysis" because "Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is

not required to first seek discovery from the foreign tribunal.").[5] In this light, the Respondents'

emphasis on the early stage of the Foreign Actions is unpersuasive. Given the time it can take to

obtain evidence under § 1782, particularly where, as here, respondents are not eager to cooperate,

*see supra* at 7, bringing an application at an early stage of the foreign litigation is not just prudent

but potentially critical. Indeed, it is not necessary even to wait until the foreign action has

commenced: it is settled that under § 1782 a party can seek leave to take discovery in the U.S.

even before filing the foreign action. *Intel*, 542 U.S. at 259 (Section 1782 can be invoked as long

as a foreign proceeding is "within reasonable contemplation*"); In re Ex Parte Application of

Ambercroft Trading Ltd.*, 2018 WL 2867744, at *3 (N.D. Cal. June 11, 2018) (granting § 1782

application for contemplated proceeding where parties had only exchanged correspondence

about a potential proceeding).

### 2.      The Discovery Is Not Unduly Burdensome.

To show undue burden, a respondent must provide "specific facts that indicate the nature

and extent of the burden." *In re Savan Magic Ltd.*, 2017 WL 6454240, at *4 (D. Nev. Dec. 18,

2017); *see also In re Biomet Orthopaedics Switzerland GmbH*, 742 F. App'x 690, 699 (3d Cir.

2018) (respondent failed to provide "any empirical evidence" of undue burden); *Heraeus Kulzer,

GmbH v. Biomet, Inc.,* 633 F.3d 591, 598 (7th Cir. 2001) (requiring a "specific showing of

---

[5] The Respondents do cite two 2013 cases, but those cases are inapposite. In *In re Samsung Electronics Co.,* 2013 WL 12335833, at *4 (N.D. Cal. Jan. 23, 2013), the applicant had already asked the foreign court for discovery, and the U.S. court was concerned about the possibility that the foreign court would deny the request, which would of course raise circumvention concerns if the U.S. judge were to grant the same request. The second case, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013), held that a special master who took the view the respondents put forward here had not clearly erred. If the *CRT* decision stands for anything more than the holding that the special master's error was not sufficiently clear to be overturned by the district court, then it is wrongly decided. One judge in this district applied *CRT* with approval only in an exceptional case where allowing U.S. discovery might have interfered with a Korean government antitrust investigation and the foreign government expressly opposed the request—which, of course, is the kind of concern at the heart of the circumvention analysis. *See In re Qualcomm Inc.,* 162 Supp. F.3d 1029, 1034, 1041 (N.D. Cal. 2016) (noting that the Korean government, as *amicus curiae,* opposed the § 1782 application).

**Opposition to Motion to Quash**

burden."); *In re Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. 2016) (respondent "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden") (citation omitted). It is not enough simply to make a vague assertion of burdensomeness, as the Respondents do here. The discovery requests at issue are reasonable and representative of the kinds of requests that courts routinely allow in § 1782 cases. The Respondents argue that the documents are located outside the United States, but that hardly suffices to show a burden, let alone an *undue* burden. They claim that they do not control the documents located abroad, but the term "control" is construed broadly. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (respondent in a section 1782 case had control of documents in the Bahamas); *see also St. Jude Medical S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 638-39 (D. Or. 2015); *Bryant v. Armstrong*, 285 F.R.D. 596, 603 (S.D. Cal. 2012).

It is difficult to conceive, at least without a showing that the Respondents have failed to make, that the Respondents do not have in their possession or at least their control evidence about the basic technology used in the products that were developed here in California. Surely when CGI transferred documents to its Chinese purchaser (its ultimate parent), it did not destroy all its documents (especially because the Respondents operate a research lab in San Jose for the benefit of the parent), and it is unclear what the Respondents mean when they say that CGI has "some 'recipe' files for the BGI sequencers and Bill of Materials for the reagent kits from its Chinese affiliates" but that it "does not control or maintain these documents." (Motion to Quash, ECF 17 at 22). In any case, the Respondents have admitted in a corporate disclosure statement filed with this Court that the China-based MGI is an indirect, wholly-owned subsidiary of CGI, a Respondent here. (Wang Decl. Ex. D). CGI therefore has legal control of all documents in the possession of its subsidiary, MGI. *See United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (holding "[a] corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls"); *In*

12

*re ATM Fee Antitrust Litig.*, 233 F.R.D. 542, 544 (N.D. Cal. 2005) ("[F]or purposes of compliance with Rule 34, a parent company has control of documents in the custody and possession of its wholly owned subsidiary."); *Silver v. Tenet Health Care Corp.*, 2010 WL 11444064 at *3 (S.D. Fla. Aug. 6, 2010) (collecting cases); *Dietrich v. Bauer*, 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000) (parent has control over indirect wholly owned entities). The Respondents have further admitted in their disclosures that both CGI, a Respondent here, and its wholly owned subsidiary MGI, are likely to have information related to "the structure, characteristics, and operation of" of the infringing products. (Wang Decl. Ex. E at 10).

The Respondents' conduct strongly suggests that the discovery sought here is not burdensome. One of the Respondents' objections is that they are not engaged in relevant activities in the United States any longer and that they lack relevant information. But their actions belie that claim. CGI has filed petitions for *inter partes* review ("IPR") of the US counterpart to some of the patents at issue in Europe, which also covers labelled nucleotides having an azidomethyl group. (Wang Decl. Exs. F and G). CGI has further asserted that "its *current business interests* have prompted it to seek to avail itself of the IPR process." (Wang Decl. Ex. H at 6) (emphasis supplied). Moreover, in a published interview, MGI Americas' general manager, Roy Tan, spoke about MGI's commercial plans for **Europe** and MGI's Chief Scientific Officer, Radoje Drmanac, who lives in the United States and **also** holds himself out as Chief Scientific Officer of CGI **and** a Senior Vice President of BGI Genomics Co., Ltd., gave technical details of the sequencing chemistry. (Wang Decl. Exs. I, J, O and P). Mr. Tan also held himself out recently in a conference as a representative of **both** MGI Americas and CGI. (Wang Decl. Ex. K). In addition, the disclosures show that the same person serves as the chief financial officer

**Opposition to Motion to Quash**

of MGI, MGI Americas, and CGI. Ex. E at 3. These facts show a very close connection between the companies.[6]

CGI's concern that the documents it does have may not be "accurate or reflective of the current state of BGI's sequencers or sequencing reagent kits, or whether they reflect any sequencers or reagent kits that may have been sold in Europe" (Motion to Quash at 22) sounds very much like a concern that the documents that it does have will prove to be very bad news for defendants in the Foreign Actions. But this is discovery, not a trial—let the documents be produced, and if, as CGI claims, they are inaccurate or out of date, let the defendants in the Foreign Actions make that case.

In any event, to the extent there is an issue, the test is whether the recipient of the subpoena has "the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999).[7] There is nothing in the record to suggest that the Respondents have done anything to determine whether they could obtain the documents if they tried. The factual basis of their motion to quash is therefore woefully insufficient.

To the extent these subpoenas might impose any undue burden, counsel to Illumina Cambridge have offered—twice—to engage in discussions with counsel for the Respondents in an effort to reduce it, without any substantive response. The Respondents' refusal to engage in a

---

[6] Other people identified in the disclosures also have roles across the companies. For example, Jia Sophie Liu is identified in the disclosures as senior manager for business development for MGI Americas. But Ms. Liu is identified on a conference website as a person "leading BGI Global Innovation Center effort at BGI San Jose site." And the *Financial Times* featured Ms. Liu as a research scientist working for CGI in an article about the potential national security implications posted by BGI Genomics Co., Ltd. to the United States (Wang Decl. Exs. L and M).

[7] The "control" test can be met in other ways, too, as when the two entities have a commonality of interest, *see Choice-Intersil Microsystems, Inc. v. Agere Systems, Inc.*, 224 F.R.D. 471, 472-73 (N.D. Cal. 2004) (subsidiary had control over parent)*; Almont Ambulatory Surgery Ctr., LLC v. UnitedHealth Group, Inc.,* 2018 WL 1157752, at *21 (C.D. Cal. Mar. 2, 2018); *Super Film of Am., Inc. v. UCB Films, Inc.,* 219 F.R.D. 649, 655 (D. Kan. 2004) (no shared ownership or parent/subsidiary relationship necessary where companies regularly "exchanged information, documents, and employees" and thus showed a commonality of interest).

discussion about the scope of the subpoenas is fatal to their undue burden argument. *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1272-73 (11th Cir. 2014) (a respondent's "all-or-nothing approach" to undue burden was not acceptable; the respondent must "try to meet [applicant] somewhere in the middle"); *Heraeus*, 633 F.3d at 597-98 (the district court committed a "serious legal error" by denying Section 1782 discovery as unduly burdensome where the discovery target "refused to meet . . . to negotiate a reduction in the amount of discovery sought); *In re Eurasian Natural Res. Corp., Ltd.*, 2018 WL 1557167, at *4 (N.D. Cal. Mar. 30, 2018) (instead of a "motion to quash, the parties must" meet and confer).

The argument that having to produce a witness to testify at a deposition is unduly burdensome is baseless. Depositions of corporate officers are commonplace in U.S. litigation, and Fed. R. Civ. P. 45 provides appropriate limitations. The Respondents' argument that a Rule 30(b)(6) witness they designate to testify on their behalf might have inaccurate information about their business is surprising and concerning,[8] but they are free to cross-examine their own witness if it should turn out that they need to impeach his or her testimony. *See U.S. Commodity Futures Trading Comm'n v. Bac de Binary, Ltd.*, 2015 WL 556441 at, *2 n.3 (D. Nev. Feb. 11, 2015) (denying a motion to quash on the basis of a claim that the proposed deponent lacked knowledge of noticed topics, because "[i]f [deponent] lacks knowledge regarding the noticed topics, he may say so during the deposition); *Reed v. Illinois*,

---

[8] As noted *supra* at page 13, Dr. Drmanac, the Chief Scientific Officer of **both** CGI and MGI **and** a Senior Vice President of BGI Genomics Co., Ltd., has demonstrated an in-depth understanding of the scientific principles at issue in the Foreign Actions. Likewise, Defendants' initial disclosure in the U.S. action stated that an individual by the name of Handong Li has knowledge regarding "MGI/BGI sequencing chemistry, including dNTPs." Ex. E at 2. Mr. Li is identified in the disclosures as a "Senior Director, Chemistry" for BGI Research USA. *Id*. But on Linkedin, Mr. Li reports that he has been working for CGI, a Respondent here, since April 2014, and was promoted to CGI's Vice President for Chemistry in January 2018. (Wang Decl. Ex. N). It is implausible that Respondents do not have a corporate representative with sufficient knowledge to testify.

**Opposition to Motion to Quash**

2016 WL 3612115 at, *3 (N.D. Ill. 2016) (holding that claims of ignorance about the subject matter of the subpoena were insufficient to establish an undue burden; if answers to questions posed at deposition were truly beyond deponent's knowledge, deponent could just answer "I don't know," and if she truly did not have access or knowledge regarding whereabouts of requested documents, she could say so at the deposition, but she could not avoid compliance by asserting lack of knowledge); *Alcon Labs, Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, (S.D.N.Y. 2002) ("[A] [potential witness] cannot avoid a deposition by asserting that he or she has no relevant, nonprivileged information, and that at a minimum, the [witness] must submit to a deposition so that his lack of knowledge may be tested and any claimed privilege placed on the record." (quoting *Niagra Mohawk Power Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y. 1989)).

The Respondents' final point is that the risk of disclosure of their confidential information in the Foreign Actions makes the subpoenas unduly burdensome. Not so. The declarations of foreign counsel submitted to this Court show that the courts of Germany, Denmark, Switzerland, and Turkey have *reasonable* safeguards to protect the confidentiality of information submitted to them. *See* Rospatt Rebuttal Decl., ¶ 9 (Germany courts will likely protect trade secrets upon request of one party); Atilgan Rebuttal Decl., ¶ 5 (same for Turkey); Valentin Rebuttal Decl. ¶ 3 (Danish courts highly likely to grant confidentiality protection upon a joint request by the parties); Hess Rebuttal Decl., ¶¶ 6-7 (courts are required by Swiss law to protect the confidentiality of business secrets and will almost certainly honor a joint request by the parties to do).

The Respondents say that there is no *absolute* guarantee of confidentiality in those countries. But absolute assurances are not and cannot be the test. Even a U.S. court cannot provide such an assurance in domestic litigation. In the United States, court files are presumptively public, but when a court has ordered protection, its orders are always subject to later modification by the court on the motion of a non-party. *See, e.g., San Jose Mercury News,*

16

**Opposition to Motion to Quash**

*Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (protective orders "are inherently subject to challenge and modification"). This is true of materials exchanged in discovery but not filed, *see*, *e.g. Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992), and of documents that are on file under seal, *see*, *e.g.*, *In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012).

Moreover, this Court and other courts have routinely approved subpoenas issued under § 1782 for countries where the Foreign Actions are pending over the objection that those countries cannot guarantee the confidentiality of sensitive documents.  The cases recognize that, as the declarations Illumina Cambridge has submitted show, protective orders and applicable foreign procedures can and do provide reasonably sufficient safeguards. *See, e.g., Palantir Techs., Inc. v. Abramowitz,* 2019 WL 6251338, at *8 (N.D. Cal. Nov. 22, 2019) (Germany); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F. 3d 550, 566 (7th Cir. 2018) (Denmark); *In re Gilead Pharmasset LLC,* 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) (Germany and Switzerland).

In *In re Pioneer Corp.,* 2018 WL 2146412 (C.D. Cal. May 9, 2018), a case on which the Respondents rely heavily, the court did credit a respondent's supposed concern about the protection a German court would provide for confidential material. But the court's discussion is confused. The court reasoned that "even if [it] entered a protective order, there is no evidence that a German court would obey such an order." *Id.* at *9. But the question is not whether the foreign court will obey a U.S. court's protective order, but rather, as the declarations Illumina Cambridge has submitted show, the foreign court's own procedures provide adequate protection. The *Pioneer* court's comments on the issue were *dicta* in any case, as the court concluded that the application did not satisfy one of the statutory requirements of § 1782, and its discussion of undue burden and the other *Intel* factors was an alternative basis for its decision. *See id.* at *5.  Therefore, *Pioneer* has no persuasive value.

17

This discussion assumes that a respondent's concerns about confidentiality are a factor that the Court should consider in a burdensomeness analysis; but in *In re Ex Parte Apple, Inc.,* 2012 WL 1570043, at *3 (N.D. Cal. May 2, 2012), this Court held that concerns about preservation of confidentiality "do not pertain to the intrusiveness or burdensomeness" of the subpoena. Any confidentiality concern should be addressed through a negotiated protective order. *Id.* at *3 n.9; *accord Akebia Therapeutics, Inc. v. Fibrogen, Inc.,* 793 F.3d 1108, 1112 (9th Cir. 2015) (recognizing a tailored protective order as the appropriate way to protect highly confidential information); *Gilead Pharmasset,* 2015 WL 1903957, at *5; *In re O'Keeffe,* 2015 WL 5039723, at *3 (D.N.J. Aug. 26, 2015). This is yet another reason the Court should reject the Respondents' argument.[9]

### B.      Section 1782 Is Not Limited To Evidence Located In The United States.

Section 1782 is a gateway for interested persons—typically parties in foreign lawsuits—to make use of the ordinary mechanisms of U.S. pretrial discovery. In ordinary discovery proceedings, it is settled that a person who receives a subpoena duces tecum must produce documents in his possession, custody, or control. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii), 45(a)(1)(A)(iii). A document may be in a person's possession, custody, or control even if it is not within the court's territorial jurisdiction, and indeed, even if it is abroad. *See Société Internationale pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 199-200, 204-06 (1958) (documents located in Switzerland were within party's "control" and their production could be compelled). This is a long-standing principle in American law, and indeed, the *Rogers* case predates the extensive revisions of § 1782 in 1964. The subpoena must issue from the court in the district "in which the production or inspection is to be made," Fed. R. Civ. P. 45(a)(2), but that just means that the documents must be *produced* within the territorial

---

[9] Illumina Cambridge's second invitation to Respondents to discuss the subpoenas expressly included a request to negotiate a mutually acceptable protective order.  *See* Ex. C.

**Opposition to Motion to Quash**

jurisdiction of the court, not that they must be *kept* or *retrieved* there. *See Hay Group, Inc. v. E.B.S. Acquisition Corp.,* 360 F.3d 404, 412 (3d Cir. 2004).

A subpoena issued with leave of court under § 1782 works just like a subpoena issued in a domestic lawsuit. *See* 28 U.S.C. § 1782(a) (when the court grants leave to issue a subpoena, "[t]o the extent that the order does not prescribe otherwise … the document … [shall be] produced, in accordance with the Federal Rules of Civil Procedure"). Indeed, the Respondents themselves note that "Section 1782 explicitly incorporates the Federal Rules of Civil Procedure." (Motion to Quash at 8.) The question in both cases—the domestic subpoena and the subpoena issued pursuant to § 1782—is whether the document is in the recipient's possession, custody, or control, not the location of the document.

The Respondents ask the Court to read a restriction into § 1782 that is not in the statute itself—that discovery should be taken as provided in the Rules of Civil Procedure, with a single exception in the case of documents located abroad. But "[i]f Congress had intended to impose such a sweeping restriction on the district court's discretion" under § 1782, "it would have included statutory language to that effect." *Intel Corp.,* 542 U.S. at 260. Nor should the Court turn to general rules about extraterritoriality. It is true that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247, 255 (2010). Here, though, the key is whether the Court has jurisdiction over the person who receives the subpoena, not over the documents. When the person who is to produce the documents "resides or is found" within the Court's territorial jurisdiction, 28 U.S.C. § 1782(a), which is undisputed here, then the person can be compelled to produce documents within his control, wherever they are. This is a characteristic feature of our law—it is the same principle that allows for "tag jurisdiction" that allows a U.S. court to exercise jurisdiction over a defendant based solely on service of process on a person found in the territorial jurisdiction of the court, even temporarily, no matter where the events underlying the lawsuit occurred. *See In*

**Opposition to Motion to Quash**

*re Edelman,* 295 F.3d 171, 179 (2d Cir. 2002) ("Given that this so-called tag jurisdiction is consistent with due process, we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more.").

It is true that the Ninth Circuit has kept the question of § 1782's application to documents located abroad open. *See Four Pillars Enters. Co. v. Avery Dennison Corp.,* 308 F.3d 1075, 1079-80 (9th Cir. 2002). And, as the Respondents say, the court in *Norex Petroleum Ltd. v. Chubb Ins. Co.,* 384 F. Supp. 2d 45, 55 (D.D.C. 2005), did indeed hold that "documents held outside the United States are beyond the statute's intended reach."[10] It is, though, highly surprising that the Respondents failed to cite, let alone address, *In re Del Valle Ruiz,* 939 F.3d 520 (2d Cir. 2019), or *Sergeeva,* 834 F.3d at 1199-1200, the only two appellate decisions on point, which undermine their arguments completely.[11]

In *Del Valle Ruiz,* the question was whether an applicant could obtain discovery from Santander Investment Securities, Inc., the New York-based affiliate of Santander, the Spanish bank, where the documents sought were kept in Spain. Santander argued for a "per se bar against discovery under § 1782 of evidence located abroad, relying on the presumption against extraterritoriality." *Del Valle Ruiz,* 939 F.3d at 531. But the presumption is typically applied to statutes "regulating conduct." *Id.* at 532. Section 1782, which is "simply a discovery mechanism," *id.* (citing *Edelman,* 295 F.3d at 179), should not, the court held, be subject to the presumption. *Id.* at 532 (citing *Restatement (Fourth) of the Foreign Relations Law of the United States* § 404 cmt. a & n.3 (2018) ("The presumption against extraterritoriality applies to

---

[10] But a more recent decision in the District of Columbia took a contrary view. *See In re Barnwell Enters. Ltd.,* 265 F. Supp. 3d 1, 15 (D.D.C. 2017) (holding there is no "per se bar on the discovery of material located outside the United States" under §1782); *see also In re HydroDrive Nigeria, Ltd.,* 2013 WL 12155021, at *2 (S.D. Tex. May 29, 2013) (rejecting argument that Section 1782 bars extraterritorial discovery).

[11] To make matters worse, the Respondents cited a *dictum* from *Application of Sarrio, S.A.,* 119 F.3d 143 (2d Cir. 1997), without disclosing that *Del Valle Ruiz* had expressly rejected the dictum. *Del Valle Ruiz,* 939 F.3d at 532 n.16.

**Opposition to Motion to Quash**

substantive provisions of federal statutes and to express and implied federal causes of action. The presumption does not apply to provisions granting subject-matter jurisdiction to federal courts")); *see also Blazevska v. Raytheon Aircraft Co.,* 522 F.3d 948, 953 (9th Cir. 2008) (presumption against extraterritoriality applies only when the statute at issue governs conduct abroad). With the presumption out of the way, the *Del Valle Ruiz* court, following the Eleventh Circuit in *Sergeeva,* "reasoned that the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure," and that the Rules "in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control"). 939 F.3d at 533 (citing *Sergeeva,* 834 F.3d at 1199-1200).

The Respondents cite the view of Professor Hans Smit, one of the drafters of § 1782, who did opine that the statute should be limited to documents located in the United States. But the courts have already roundly rejected Professor Smit's view of the statute in another context, which he gave in the same article the Respondents cite: he also believed that the statute should not be construed to allow discovery in the U.S. of evidence that could not be obtained through discovery under the relevant foreign law. *See* Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals,* 25 Syr. J. Int'l L. & Com. 1, 11 (1998). Notwithstanding this view, the Supreme Court has held that there is no requirement that the evidence be discoverable under the applicable foreign law. *See Intel,* 542 U.S. at 259-64. "It is perhaps enough to say … that Professor Smit's … article does not purport to rely upon any special knowledge concerning legislative intent," and it is therefore "unpersuasive." *Nat'l Broad. Co. v. Bear Stearns & Co.,* 165 F.3d 184, 190 n.6 (2d Cir. 1999); *see also Del Valle Ruiz,* 939 F.3d at 528, 532 n.16 (rejecting Professor Smit's views that the statute has no extraterritorial application ***and*** that a district court must have general personal jurisdiction to proceed under the statue).

For these reasons, the Respondents are simply wrong to say that § 1782 forbids discovery of documents located abroad. And in the age of cloud computing and enterprise-wide databases,

21

such a rule would be absurd in any case: when a person present in America has the power to obtain a document stored electronically at the push of a few buttons, no matter where in the world the server on which the document resides is located, the kind of focus on the physical location of a document that the Respondents want to ingraft into § 1782 is an anachronism.

The Court should reject the Respondents' request to limit discovery to documents located in the United States.

### C.   Discovery Decisions In The Parallel U.S. Case Have Nothing To Do With This Application.

The Respondents make much of the timing of this Application, which followed closely on this Court's ruling on Illumina Cambridge's request for expedited discovery in the U.S. case. They seem to think that the appearances are unfavorable for Illumina Cambridge: whenever they note that the Application followed only two days after the Court's decision on expedited discovery, they put **two days** in boldface type (Motion to Quash at 16, 17). This argument is meritless.

As an initial matter, the Respondents mischaracterize what happened in the U.S. case. Faced with the prospect that defendants might begin a full-scale commercial launch of its infringing products in the United States, Illumina Cambridge requested expedited discovery to prepare for a motion for a preliminary injunction. Judge William Orrick did not grant the request in full, but he did require defendants to give 60 days' notice before a commercial launch, which mooted some of the urgency that had led Illumina Cambridge to seek expedited discovery. Judge Orrick also granted limited technical discovery, and Illumina Cambridge has since served full discovery requests. On these facts, the Respondents are just wrong to suggest that the discovery Illumina Cambridge seeks here is an attempt to take a second bite at the apple.

At the most basic level, the Foreign Actions are distinct proceedings from the U.S. proceedings. Illumina Cambridge was entitled to seek the aid of this Court in obtaining evidence

**Opposition to Motion to Quash**

for use in the Foreign Actions, and it did so. The Respondents frame their argument as an argument about attempted circumvention of *this Court's* proof-gathering restrictions, but of course, that is not one of the *Intel* factors. *See In re Harbour Victoria Inv. Holdings Ltd.,* 2015 WL 4040420, at *7 (S.D.N.Y. June 29, 2015).

On a more practical note, there is no real possibility of prejudice to the Respondents. Illumina Cambridge is represented in this Application by two law firms. One of the firms and its lawyers have no involvement whatsoever in the parallel U.S. cases.[12] As the Respondents would know if they would have taken up counsel on their offer to seek to negotiate the terms of a protective order before moving to quash, Illumina Cambridge is prepared to enter into an order prohibiting the use of any material obtained via this Application in the U.S. case. Illumina Cambridge's position is that such an order is more than sufficient, but if the Court should disagree, Illumina Cambridge is further prepared to enter into a protective order barring counsel of record in the U.S. parallel proceeding from having access to the § 1782 discovery, or if necessary, even to enter into an "outside attorney's eyes only" protective order. With such provisions in place, there would be no possible prejudice to the Respondents in the U.S. case. Thus, concerns of the kind that motivated the decision in *Harbour,* the case on which the Respondents heavily rely, do not exist here.

*Harbour* is readily distinguishable in any case. In *Harbour*, an Indian entity sought to enforce an arbitration award entered in its favor in London. It sought to attach an apartment in New York. The court denied relief. Harbour then filed a § 1782 application seeking evidence to determine whether and where to initiate new foreign proceedings. Here, it is undisputed that Illumina Cambridge has already filed four Foreign Actions. The *Harbour* court noted that the

---

[12] Counsel for Illumina Cambridge in the U.S. cases entered an appearance in this proceeding for convenience and to ensure coordination of Illumina Cambridge's positions in the U.S. proceedings now pending.

**Opposition to Motion to Quash**

applicant's case would have been stronger had the foreign actions already been on file, which is precisely the situation here. *See Harbour*, 2015 WL 4040420, at *9 ("Had petitioner[ ] filed a lawsuit before submitting this application for discovery, this concern would be mitigated").

It is unfortunate that the Respondents have decided to pound the table rather than at least to try to work out an acceptable protective order before coming to this Court. The Respondents' concern about "spill over" discovery could easily be remedied by an appropriately tailored protective order and does not support denial of this Application. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135-36 (2d Cir. 2017) (a properly crafted protective order can address concerns that a party is using international litigation to circumvent discovery restrictions elsewhere); *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015) ("nothing prevents a party from seeking to negotiate a protective order precluding the evidence from being used in United States civil litigation, particularly if the party has reason to believe that it risks exposure to United States litigation based on the evidence produced.").

### D.   Section 1782 Promotes Efficiency For The Courts Here And Abroad And For The Parties In This Case.

Both the Supreme Court and the Ninth Circuit have noted that one of the primary policies of § 1782 is "providing efficient means of assistance to participants in international litigation in our federal courts." *Intel*, 542 U.S. at 252 ("allowance of liberal discovery seems entirely consistent with…providing efficient assistance to participants in international litigation"); *Akebia Therapeutics*, 793 F.3d at 1100 (noting the twin goals of "provid[ing] efficient assistance to participants in international litigation and encourag[ing] foreign countries by example to provide similar assistance to our courts") (citing *Intel*).

Here, given the multiple foreign cases and complex nature of the litigations between Illumina Cambridge and Illumina, Inc., on the one hand, and BGI Genomics Co., Ltd., and its affiliates on the other, Section 1782 provides an efficient mechanism for discovery. We have explained elsewhere that Illumina Cambridge cannot, as a practical matter, obtain the evidence

**Opposition to Motion to Quash**

1   it seeks using the discovery procedures, such as they are, available in the Foreign Actions. But

2   suppose that the foreign discovery procedures were comparable to the procedures available in

3   the United States and leave aside the settled rule that there is no requirement to exhaust foreign

4   discovery methods before resorting to § 1782, there would still be very strong reasons of

5   economy to grant this Application. Illumina Cambridge can obtain the discovery from

6   Respondents through a single Section 1782 petition instead of having to seek the same evidence

7   in each of the Foreign Actions. *See In re Procter & Gamble*, 334 F. Supp. 2d at 1115 (observing

8   that it was more efficient for the district court to allow Section 1782 discovery for use in patent

9   infringement actions in Germany, the Netherlands, and Japan than for the petitioner "to seek the

10  same discovery" in each of them); *In re Ex Parte Apple, Inc.*, 2015 WL 5838606, at *5 (S.D.

11  Cal. Oct. 7, 2015) (although some of the *Intel* factors weighing against discovery, "the potentially

12  complex nature of the foreign proceedings supports granting the application" for use in patent

13  litigations in the Netherlands, Germany and the U.K.). The Court need not reach this point,

14  because as we have demonstrated, it is hypothetical: the foreign discovery methods available are

15  *not* sufficient to obtain the evidence Illumina Cambridge seeks. Nevertheless, economy for the

16  parties and for the many courts involved in the overall dispute provides an additional compelling

17  reason to grant Illumina Cambridge's Application.

18  **V.   CONCLUSION**

19        For these reasons, Court should deny the Respondents' motion to quash or limit the

20  subpoenas.

21  Dated: December 27, 2019              Respectfully submitted,

22                                        ILLUMINA CAMBRIDGE LTD.

23                                        By its attorneys:

24

25                                        /s/ Brian J. Dunne
                                          Brian J. Dunne (CA Bar No. 275689)
26                                        PIERCE BAINBRIDGE BECK
                                          PRICE & HECHT LLP
27                                        355 S. Grand Ave., 44th Floor
                                          Los Angeles, CA 90071
28                                        (213) 262-9333

25

bdunne@piercebainbridge.com

Theodore J. Folkman (*pro hac vice*)
PIERCE BAINBRIDGE BECK
PRICE & HECHT LLP
One Liberty Square, 13th Flr.
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

Minyao Wang (*pro hac vice*)
PIERCE BAINBRIDGE BECK
PRICE & HECHT LLP
277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

Edward R. Reines (CA Bar No. 135960)
Derek C. Walter (CA Bar No. 246322)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

**Opposition to Motion to Quash**

## **CERTIFICATE OF SERVICE**

1

2          I hereby certify that on December 27, 2019, a copy of the foregoing was filed and

3   served electronically. Notice of this filing will be sent by e-mail to all parties by operation of

4   the court's electronic filing system or by mail to anyone unable to accept electronic filing as

5   indicated on the notice of electronic filing. Parties may access this filing through the court's

6   CM/ECF System.

7

8

9                                          /s/ Brian J. Dunne
                                            Brian J. Dunne
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Opposition to Motion to Quash**