Katie J.L. Scott (Cal. Bar No. 233171)
Email address: katie.scott@arnoldporter.com
Joshua Seitz (Cal. Bar No. 325236)
Email address: joshua.seitz@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Building 5, Suite 500
Palo Alto, California 94306
Telephone: (650) 319-4500
Facsimile: (650) 319-4700

Jennifer Sklenar* (Cal. Bar. No. 200434)
jennifer.sklenar@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave, NW
Washington, DC 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
*Admitted in NY and CA only; practice limited to matters before federal courts and federal agencies


Attorneys for Respondents
BGI AMERICAS CORP., MGI AMERICAS, INC.,
and COMPLETE GENOMICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE APPLICATION OF ILLUMINA CAMBRIDGE LTD. | Case No. 3:19-mc-80215-WHO (TSH) <br><br> **RESPONDENTS' REPLY IN SUPPORT OF MOTION TO VACATE 28 U.S.C. § 1782 APPLICATION AND QUASH OR LIMIT SUBPOENAS PURSUANT TO § 1782** <br><br> Date: January 30, 2020 <br> Time: 10:00am <br> Location: Courtroom A <br> 15th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND .......................................................................................... 1

III. ARGUMENT .................................................................................................................... 1

    A. Respondents Do Not Have Possession of or Control Over The Sale and Financial Documents Illumina Requests in Its Subpoenas. ........................................ 1

        1. Respondents do not have legal control over the documents or information of their European or Chinese affiliates. ........................................ 2

        2. Respondents do not have possession of, or access to, documents or information regarding the manufacture, distribution, importation, use, offer for sale, or sale of any BGI sequencers or sequencing reagent kits in Denmark, Switzerland, Germany, or Turkey. ........................ 7

        3. Respondents should not be forced to produce documents located outside the United States that respondents are not in possession of or have legal control over. ............................................................................... 8

        4. CGI's filing of IPR petitions does not disprove its claim that it lacks the relevant information and documents. ................................................ 8

    B. Respondents Do Not Control or Maintain the Limited Technical Documents and Information They Do Possess, and Illumina's Requests Are Unduly Burdensome as to These Documents and Information. .......................... 9

    C. Respondent CGI Should Not Be Forced to Designate a Witness to Testify Regarding Subjects on Which It Does Not Have Access or Control. ....................... 10

    D. MGI Tech Co., Ltd. is a Party to the German Litigation, so Under the First *Intel* Factor, it is Inappropriate for Illumina to Seek Discovery Under Section 1782, and the Information and Documents Illumina Requests are Readily Available From the Defendants in the Foreign Tribunals. .......................... 12

    E. Illumina is Using Section 1782 to Circumvent Discovery Restrictions in the Foreign Tribunals. ................................................................................................ 13

    F. The Foreign Tribunals Cannot Guarantee the Confidentiality of Respondents' Proprietary and Confidential Information. ......................................... 14

IV. CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Andover Healthcare, Inc. v. 3M Co.*,
  817 F.3d 621 (2016) ........................................................................................................... 15

*Baxalta Incorporated v. Genentech, Inc.*,
  No. 16-MC-80087-EDL, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016) .............................. 10, 12

*Camden Iron & Metal, Inc. v. Marubeni America Corp.*,
  138 F.R.D. 438 (D.N.J. 1991) .................................................................................................. 3

*Genentech, Inc. v. Trustees of University of Pennsylvania*,
  No. C 10-2037 PSG, 2011 WL 5373759 (N.D. Cal. Nov. 7, 2011) ........................................... 5

*Gerling Int'l Ins. Co. v. IRS*,
  839 F.2d 131 (3d Cir. 1988) ..................................................................................................... 2

*Glenz v. Sharp Electronic Corp.*,
  2010 WL 2758729 (D.N.J. Jul. 12, 2010) ................................................................................. 7

*In re Application of Gilead Pharmasset LLC*,
  No. CV-14-MC-243 (GMS), 2015 WL 1903957 (D. Del. Apr. 14, 2015) ............................... 14

*In re Bankers Trust Co.*,
  61 F.3d 465 (6th Cir. 1995) ...................................................................................................... 2

*In re Bernal*,
  No. 18-21951-MC, 2018 WL 6620085 (S.D. Fla. Dec. 18, 2018) ........................................... 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944-SC, 2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ............................................ 14

*In re Citric Acid Litig.*,
  191 F.3d 1090 (9th Cir. 1999) .......................................................................................... 2, 5, 6

*In re Ex Parte Apple, Inc.*,
  No. 15CV1780 BAS RBB, 2015 WL 5838606 (S.D. Cal. Oct. 7, 2015) ................................. 13

*In re Legato Sys., Inc.*,
  204 F.R.D. 167 (N.D. Cal. 2001) .............................................................................................. 2

*In re Pioneer Corp.*,
  2018 WL 2146412 (C.D. Cal. May 9, 2018) ........................................................................... 15

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
  No. 16-MC-80048-MEJ, 2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ................................ 13

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................................................ 12

*Micron Technology, Inc. v. Tessera, Inc.*,
  2006 WL 1646133 (N.D. Cal. June 14, 2006) .......................................................................... 6

*Nikon Corp. v. ASML US Inc.*,
  No. MC-17-00035-PHX-JJT, 2017 WL 4024645 (D. Ariz. Sept. 12, 2017) ............................. 8

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
  706 F. App'x 350 (9th Cir. 2017) ............................................................................................. 8

*Phillips v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ................................................................................................ 11

*Pitney Bowes, Inc. v. Kern International, Inc.*,
  239 F.R.D. 62 (D. Conn. 2006) ................................................................................................ 7

| | |
|---|---|
| *Price v. Kawasaki Motors Corp. USA*, No. SACV101074JVSRNBX, 2011 WL 13225091 (C.D. Cal. Aug. 11, 2011) | 4 |
| *Rosie D. v. Romney*, 256 F. Supp. 2d 115 (D. Mass. 2003) | 2 |
| *Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984) | 2 |
| *Seattle Times Co. v. Rhinehart,* 467 U.S. 20 (1984) | 11 |
| *Tessera, Inc. v. Micron Tech., Inc.*, No. C06-80024MISC-JW(PVT, 2006 WL 733498 (N.D. Cal. Mar. 22, 2006) | 5 |
| *U.S. v. Int'l Union of Petroleum & Indust. Workers*, 870 F.2d 1450 (9th Cir. 1989) | 2, 3, 4 |
| *United States v. King*, 1997 WL 582882 (S.D.N.Y. Sept. 19, 1997) | 6 |
| *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC.*, No. 09-126-SLR, 2010 WL 181088 (D. Del. Jan 19, 2010) | 10 |

**Statutes**

| | |
|---|---|
| 28 U.S.C. § 1782 | passim |

**Other Authorities**

| | |
|---|---|
| 7 JAMES Wm. Moore, Moore's FEDERAL PRACTICE § 30.25[3] (3d ed. 2006) | 11 |

**Rules**

| | |
|---|---|
| Fed. R. Civ. P. 26(a)(1)(A)(ii), 45(a)(1)(A)(iii) | 2 |
| Fed. R. Civ. P. 30(b)(6) | 11, 12 |
| Fed. R. Civ. P. 34(a)(1) | 2, 4 |
| Fed. R. Civ. P. 37 | 2 |
| Fed. R. Civ. P. 45(a) | 3, 5 |

# I. INTRODUCTION

Illumina Cambridge Ltd., ("Illumina"), in its Opposition to Respondents' Motion to Vacate 28 U.S.C. § 1782 Application, fails to appreciate two facts: first, Respondents simply do not possess the sales and financial documents and information Illumina requests, and second, that the limited technical documents and information that Respondents do possess are likely inaccurate, unresponsive, and irrelevant to the Foreign Actions. Illumina tries to argue, unsuccessfully, that Respondents must have control over documents and information possessed by their European and Chinese affiliates. However, as the facts plainly demonstrate, any suggestion that Respondents have any ability to control or legally demand the production of relevant documents from the other entities is entirely baseless. Indeed, because the answer to the fundamental question at issue—whether Respondents are in control of documents in a third-party's possession such that it may be compelled to produce them—is demonstrably negative, Illumina's motion must be denied. This Court should quash Illumina's subpoenas because the subpoenas are overbroad and constitute an unduly burdensome fishing expedition that attempts to circumvent well-established restrictions on discovery in the Foreign Tribunals.

# II. FACTUAL BACKGROUND

The procedural and factual background have been described in detail in prior Court filings and, in the interest of efficiency, will not be repeated except as necessary.

On October 14, 2019, MGI Tech Co., Ltd., through a share purchase agreement, became the sole shareholder of CGI Hong Kong Co., Limited. Respondent CGI is a wholly-owned subsidiary of BGI-Hong Kong Co., Limited, which is in turn a wholly-owned subsidiary of CGI Hong Kong Co., Limited. Respondent MGI Americas is a wholly-owned subsidiary of BGI Complete Genomics Hong Kong Co., Limited, which is a wholly-owned subsidiary of CGI. Thus, as of October 14, 2019, both MGI Americas and CGI are wholly-owned subsidiaries of MGI Tech Co., Ltd.

# III. ARGUMENT

### A. Respondents Do Not Have Possession of or Control Over The Sale and Financial Documents Illumina Requests in Its Subpoenas.

Section 1782 explicitly incorporates the Federal Rules of Civil Procedure, and thereby requires a respondent only to produce documents in its possession, custody, or control. *See* Fed. R.

1

Civ. P. 26(a)(1)(A)(ii), Fed. R. Civ. P. 45(a)(1)(A)(iii). Despite extensive argument in its Opposition, Illumina fails to address the fundamental issue with its application: the sales and financial documents and information that Illumina seeks in its subpoenas are not under Respondents' possession, custody, or control, because Respondents do not do business in Europe and have no control of their European affiliates such that Respondents could legally demand the requested documents from these affiliates.

### 1. Respondents do not have legal control over the documents or information of their European or Chinese affiliates.

Illumina has failed to meet its burden of proof to establish that Respondents have "control" of the requested documents such that it may be compelled to produce them. "Where a party has neither possession nor custody of documents, whether it may be compelled to produce them hinges on whether it has "control" of the documents. Here, Respondents do not have possession of the sales and financial documents of their European affiliates. Jiang Decl., ¶¶ 6-7; Hansen Decl., ¶¶ 8-10. As a result, "[c]ontrol must be firmly placed in reality . . . " *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1453-54 (9th Cir. 1989). "As used in Rule 34 [of the Federal Rules of Civil Procedure], the concept of 'control' exists where a party has a legal right to obtain documents." *In re Legato Sys., Inc. Sec. Litig.*, 204 F.R.D. 167, 170 (N.D. Cal. 2001) (citations omitted); *Rosie D. v. Romney*, 256 F. Supp. 2d 115, 119 (D. Mass. 2003); *See also In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("Moreover, federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." (emphasis omitted)); *Gerling Int'l Ins. Co. v. IRS*, 839 F.2d 131, 140 (3d Cir. 1988) ("[C]ontrol . . . is defined not only as possession, but as the legal right to obtain the documents requested on demand.") (quoting *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984)); *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452 ("Control is defined as the legal right to obtain documents upon demand."). Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents. *In re Citric Acid Litig.*, 191 F.3d 1090, 1108 (9th Cir. 1999).

Where the relationship concerns whether a subsidiary has the requisite control over a parent corporation to obtain information from the parent for discovery, courts consider "the degree of ownership and control exercised by the parent over the subsidiary, a showing that the two entities operate[ ] as one, demonstrated access to documents in the ordinary course of business, and an agency relationship." *Camden Iron & Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 442 (D.N.J. 1991). For example, in *International Union,* the Department of Labor had served a subpoena on the International Union of Petroleum and Industrial Workers ("IUPIW"), seeking records from local unions affiliated with IUPIW. *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1451. The Ninth Circuit concluded that IUPIW lacked the legal control over documents in the possession of local unions because IUPIW and each local union were separate entities under the law and because the contract governing the union relationship did not expressly give IUPIW the right to obtain the records of local unions upon demand. *See id.* at 1452–53. Although there was a theoretical possibility that IUPIW could dissolve a local union and thereby gain access to the documents of the dissolved union, the court deemed this remote possibility insufficient to give IUPIW "control" for purposes of Federal Rule 45(a). The court emphasized that ***proof of theoretical control is insufficient; a showing of actual control is required.*** *See* 870 F.2d at 1453–54. "The party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." *Id.* at 1452 (emphasis added).

Nothing Illumina argues in its Opposition can change the simple fact that Respondents simply do not have possession or control of any information or documents regarding the manufacture, distribution, importation, use, offer for sale, or sale of any BGI sequencers or sequencing reagent kits in Denmark, Switzerland, Germany, or Turkey. The entities do not operate as one and Respondents do not have access to the requested documents in the ordinary course of business. While courts have used various different words to characterize the test to determine whether a party is in "control" of documents for the purposes of Fed. R. Civ. P. 34(a)(1), the underlying inquiry is the same: Does the party have the documents, and if not, can the party get the documents? The purpose of the inquiry is to ensure that parties do not "game" the discovery process by storing documents in the possession of third parties, while at the same time protecting those

parties from sanctions when compelled to produce documents that they cannot access and protecting the rights of third parties who have no voice in the litigation. Control is defined as the legal right to obtain documents on demand, a right which is Illumina's burden to prove, but which Illumina has utterly failed to demonstrate.

Illumina only argues that "Respondent CGI is the parent company of China-based MGI Tech Co., Ltd." Opp. at 2. However, this argument is based on outdated and inaccurate information. Since October 14, 2019, CGI has been a wholly-owned subsidiary of MGI Tech Co., Ltd. and not the other way around. *See* First Amended Certification of Interested Entities or Persons and Corporate Disclosure Statement of Defendant Complete Genomics, Inc., *Illumina, Inc., et al. v. BGI Genomics, Co., Ltd., et al.*, No. 3:19-cv-03770-WHO (N.D. Cal. Dec. 31, 2019), ECF No. 73. As MGI Tech Co., Ltd.'s subsidiary, CGI does not have the legal right to obtain the documents or information that Illumina is requesting, and is not able to obtain documents from MGI Tech Co., Ltd. on demand. *See* Hansen Decl., ¶¶ 8-9. In fact, while the Ninth Circuit has observed that a corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls, *Int'l Union of Petroleum & Indus. Workers*, 870 F.2d at 1452, "it does not follow from that observation that a wholly owned subsidiary must produce documents possessed by its parent." *Price v. Kawasaki Motors Corp. USA*, No. SACV 10-1074-JVS (RNBX), 2011 WL 13225091, at *1 (C.D. Cal. Aug. 11, 2011).

Illumina makes no attempt to meet its burden but rather appears to be arguing that because of the relationship between CGI and MGI Tech Co., Ltd., CGI would have the practical ability to obtain the requested documents. Illumina ignores the fact that the Ninth Circuit has expressly rejected this test:

> Varni urges this court . . . to define "control" in a manner that focuses on the party's practical ability to obtain the requested documents and argues that *International Union* does not foreclose the application of this practical-ability-to-obtain-documents test, because *International Union*'s decision to apply the legal control test rather than the practical-ability-to-obtain-documents test is purportedly "an unexamined assumption," which *stare decisis* does not compel the present court to follow.
>
> Even if *International Union* does not conclusively settle the question, we conclude—consistently with all of our sister circuits who have addressed the issue—that the legal control test is the proper standard under Rule 45.

4

*In re Citric Acid Litig.*, 191 F.3d at 1107.

There is no mechanism for Respondents to compel MGI Tech Co., Ltd. to produce the requested documents, and it is not clear how Illumina wants Respondents to go about getting the requested documents, since MGI Tech Co., Ltd. could legally refuse to turn over such documents. Because Respondents do not have legal control over MGI Tech Co., Ltd.'s documents, Respondents cannot compel MGI Tech Co., Ltd. to produce those documents. Accordingly, Respondents are not obligated to produce documents that are not in its control. *See Genentech, Inc. v. Trustees of Univ. of Pa.*, No. C 10-2037 PSG, 2011 WL 5373759, at *3 (N.D. Cal. Nov. 7, 2011) (denying motion to compel production where subsidiary defendant failed to demonstrate the plaintiff subsidiary had legal right to demand documents from parent company); *Tessera, Inc. v. Micron Tech., Inc.*, No. C06-80024MISC-JW (PVT), 2006 WL 733498, at *4 (N.D. Cal. Mar. 22, 2006) (finding that a U.S. subsidiary was not obligated to produce documents from its Korean parent company outside those already in subsidiary's possession, where "there is no specific showing that [the subsidiary] had the legal right to obtain any of the documents set forth in the document requests upon demand.").

Illumina also argues that because Respondents share some officers in common between them and with their Chinese affiliates, they must have control over the requested documents and information. These arguments are unavailing, or based on inaccurate information. Illumina argues that MGI Americas' General Manager Roy Tan once spoke about MGI's commercial plans for Europe in an interview. The fact that Mr. Tan was provided with limited information about MGI Tech's activities in Europe for an interview is not relevant to whether MGI Americas has legal control over that information. *In re Citric Acid Litig.*, 191 F.3d at 1107-08 (rejecting argument that just because respondents' Swiss affiliate entity once voluntarily provided respondent with responsive documents and information in the past, respondent now had legal control over, and obligation to produce, said documents). Illumina also argues that Mr. Tan "held himself out recently in a conference as a representative of **both** MGI Americas and CGI." Opp. at 13 (emphasis in original). This is irrelevant, as Illumina is seeking documents and information from Respondents that are under the legal control of their European and Chinese affiliates, and **neither** MGI Americas

nor CGI have legal control of the requested documents or information.[1]

Indeed, the fact that Respondents share some officers with their Chinese affiliates alone is insufficient to demonstrate that the Respondents have legal control over documents and information of their Chinese parent companies. The Ninth Circuit's opinion in *Micron Tech., Inc. v. Tessera, Inc.*, No. C06-80096 MISC JW (HRL), 2006 WL 1646133, at *2 (N.D. Cal. June 14, 2006) is instructive in this regard:

> Micron states that SUI is 100% owned by SPIL, and argues that SUI would in the ordinary course of business have access to the documents Micron is seeking. Micron cites the fact that SPIL created SUI to engage as SPIL's sales agent in North America, and the fact that SUI and SPIL have overlapping management teams. Micron has not shown the court that SUI has any legal right to obtain upon demand responsive documents from SPIL. Micron has mistakenly relied on the "practical ability" test, but that test was rejected by the Ninth Circuit in *In re Citric Acid Litigation*.
>
> SUI and SPIL are separate legal entities. There is no evidence of any contract between the two companies that gives SUI the right to demand documents from SPIL. Nor has Micron pointed to any statute or binding principle of law that grants SUI this right. . . .

Even complete overlap in ownership is not enough to support such a finding. And courts have found insufficient "interlocking structure" to imply control between sister or parent/child companies in situations where significantly more factors were present than those presented here. *See United States v. King*, No. 94 CR. 455 (LMM), 1997 WL 582882 (S.D.N.Y. Sept. 19, 1997) (finding insufficient interlocking structure between sister corporations where parent wholly owned both sisters, all three companies shared one common director, and the parent and one of the sisters shared a second common director); *Playboy Entm't Grp., Inc. v. United States*, No. Civ. A. 96-94-JJF, 1997 WL 873550, at *4 (D. Del. Dec. 11, 1997) (finding insufficient interlocking structure where "[party] is the wholly-owned subsidiary of [non-party], [party's] president is an executive vice president of [non-party], and [non-party's] Chief Executive Officer approves significant decisions regarding the operation of [party's] business"); *Heraeus Electro-Nite Co. v.*

---

[1] Similarly, the fact that Jia Sophie Liu has been connected to all three Respondents by third party publications is irrelevant to issues of legal control. At best Ms. Liu was employed by all the Respondents, but none of their European or Chinese affiliates. As such, her role has no bearing on whether the Respondents have possession or control over documents or information belonging to their European or Chinese affiliates.

*Midwest Instrument Co., Inc.*, Civ. No. 06-355, 2006 WL 3004877 (E.D. Pa. Oct. 18, 2006) (finding insufficient interlocking structure where CEO of non-party was on the board of parent company, parent's website said that it "united six companies" including party and non-party, party and non-party had linked websites including party's link to non-party's contact page, and parent bought a separate company and merged it with party); *Pitney Bowes, Inc. v. Kern Int'l, Inc*., 239 F.R.D. 62 (D. Conn. 2006) (finding insufficient interlocking structure where sister companies shared common executive and party was exclusive distributor of the non-party's products in the U.S.); *Glenz v. Sharp Elec. Corp*., Civ. No. 08-3652 (FSH) (MAS), 2010 WL 2758729 (D.N.J. Jul. 12, 2010).

Thus, even under this loosened definition of "control", Illumina has failed to prove that Respondents have the ability to obtain the subject documents. It was Illumina's burden to do so, and this shortcoming is fatal to the motion.

### 2. Respondents do not have possession of, or access to, documents or information regarding the manufacture, distribution, importation, use, offer for sale, or sale of any BGI sequencers or sequencing reagent kits in Denmark, Switzerland, Germany, or Turkey.

Illumina cannot dispute the fact that none of the Respondents sell or distribute BGI sequencers or sequencing reagent kits in Europe. Jimena Decl., ¶ 10. BGI Americas only sells sequencing services and even then, its U.S.-based laboratory only performs sample preparation and sample transport. Bao Decl., ¶ 5; Zhang Decl., ¶ 3. No one in BGI Americas has access to sales or financial information of its European affiliates, and such information is strictly controlled and beyond the scope of any BGI Americas employee. Jiang Decl., ¶¶ 6-7. MGI Americas has not sold any BGI sequencers or reagent kits, much less to any customers in Europe. Jimena Decl., ¶¶ 10.

CGI is a research and development entity, and does not sell BGI sequencers or sequencing reagent kits. Xu Decl., ¶ 5; Hansen Decl., ¶ 3, Jimena Decl., ¶ 3. No one at CGI or MGI has access to the sales or financial information of BGI's European entities, as such information is beyond the scope of CGI or MGI Americas' business activities. Hansen Decl., ¶¶ 8-10. The simple fact is that none of the Respondent entities has any role in the BGI Group's business activities in Europe, and as a result, do not have access to any information related to the BGI Group's business activities in Europe. Thus, at least with regards to Requests 1-3, Illumina's subpoenas should be quashed because Respondents do not have access to any responsive documents or information.

7

### 3. Respondents should not be forced to produce documents located outside the United States that Respondents are not in possession of or have legal control over.

Illumina's subpoenas request documents that are maintained by Respondents' European and Chinese affiliates, and are located outside of the United States. Illumina should not be able to use Section 1782 as a vehicle to force Respondents to obtain documents that are not in their possession, not in the United States, and not under their legal control. The Ninth Circuit has left open the question as to whether to read a territoriality restriction into Section 1782, and courts in this circuit have considered the location of the documents requested in determining whether to grant a Section 1782 application. *See Nikon Corp. v. GlobalFoundries U.S., Inc.*, 706 F. App'x 350, 351 (9th Cir. 2017) (concluding that district court did not abuse "its 'broad discretion' in ordering discovery limited to documents physically located within the United States."); *see also Nikon Corp. v. ASML US Inc.*, No. MC-17-00035-PHX-JJT, 2017 WL 4024645, at *1 (D. Ariz. Sept. 12, 2017) (finding that the location of the document is a factor to be considered). Here, the documents requested are not only located outside of the United States, but are outside the Respondents' possession and control. Accordingly, this Court should exercise its discretion, and quash Illumina's subpoenas.

### 4. CGI's filing of IPR petitions does not disprove its claim that it lacks the relevant information and documents.

Illumina's arguments that Respondents' U.S. activities prove they have control over the requested documents and information is unpersuasive. Illumina seems to suggest that, because CGI filed petitions for *inter partes* review to the U.S. counterpart to some of the asserted patents in Europe, CGI must be conducting the same business activities as its European affiliates, and must have information regarding those European affiliates' business activities. But CGI filed its IPR petitions because of the current and future business interests of itself and its affiliates in the United States, and these reasons have nothing to do with what CGI's European affiliates are doing in Europe. It simply belies common sense for Illumina to argue that just because CGI challenged Illumina's U.S. Patents, which cover some of the same technologies as its European patents, that CGI must also have access to the sales and financial information of its European affiliates.

8
REPLY ISO MOTION TO VACATE AND QUASH 28 U.S.C. § 1782 APPLICATION        Case No. 3:19-mc-80215-WHO (TSH)

### B. Respondents Do Not Control or Maintain the Limited Technical Documents and Information They Do Possess, and Illumina's Requests Are Unduly Burdensome as to These Documents and Information.

Moreover, Respondents do not maintain or control the limited documents they do possess, and thus cannot determine which, if any, of them, are responsive to Request Nos. 4-13 of Illumina's Section 1782 subpoenas. Illumina argues that "[s]urely when CGI transferred documents to its Chinese purchaser (its ultimate parent), it did not destroy all its documents." Opp. at 12. Illumina makes much of this argument that Respondent CGI must still have technical documents regarding its old sequencers and sequencing technology. While true, this argument misses the point. Illumina's subpoenas do not ask for information or documents relating to CGI's old sequencing technology from 2014, but rather about the sequencers and reagent kits that are manufactured, distributed, imported, used, offered for sale, or sold by any BGI entity in Denmark, Germany, Switzerland, or Turkey. *See e.g.,* D.N. 1 at pp. 12, 44, 77, 110 (defining a BGI sequencer as "any sequencer manufactured, distributed, used, offered for sale, or sold by any BGI entity in Denmark, Germany, Switzerland, or Turkey" and Sequencing Reagent Kit as "a kit manufactured, distributed, imported, used, offered for sale, or sold by any BGI entity in Denmark, Germany, Switzerland, or Turkey.").

None of the Respondents sell sequencers or kits in Denmark, Germany, Switzerland, or Turkey. Jimena Decl., ¶¶3, 10; Bao Decl., ¶ 5. Moreover, Respondents do not control or maintain the limited technical documentation that they do possess. Xu Decl., ¶¶ 8-11. Furthermore, many of the documents that Illumina argues that Respondents "surely" must have are likely not responsive to the very same requests that Illumina drafted in its subpoenas, because that information is almost six years old. In order to respond to Illumina's subpoenas, Respondents would have to bear the burden of searching numerous individual custodian's files for potentially responsive documents — essentially looking for a needle in a haystack — in order to determine whether they might have something that relates to their European affiliates' activities. This is not even considering the fact that Respondents do not have possession or control over the information that is necessary to make the determination as to what technical documents may be responsive to Illumina's requests, *i.e.*, which (if any) sequencers and reagent kits are manufactured, distributed, imported, used, offered for sale, or sold in Denmark, Germany, Switzerland, or Turkey.

9

Illumina brushes off Respondents' objections by arguing that "this is discovery" and that Respondents should just produce everything and then place the burden upon the defendants in the Foreign Actions to "explain them away if they can." Opp. at 2. This argument reveals Illumina's true intent; put another way, Illumina wants Respondents to produce all documents and information relating to any sequencer or sequencing reagent kit, irrespective of whether or not they are relevant to the Foreign Actions. This sort of vastly overbroad approach is unduly burdensome to the Respondents, and has routinely been quashed by courts in this district and others as an impermissible fishing expedition. *See Baxalta Inc. v. Genentech, Inc.*, No. 16-MC-80087-EDL, 2016 WL 11529803, at *4 (N.D. Cal. Aug. 9, 2016) (quashing Section 1782 subpoena as overbroad where requests were not limited to "kernels" of relevant information, and where the relevant information could be directly obtained in the foreign tribunals); *In re: King.com Limited*, No. 16-MC-80070-JCS, 2016 WL 4364286, at *8 (N.D. Cal. Aug. 16, 2016) (quashing Section 1782 subpoena as an impermissible fishing expedition, where that applicant's opposition reflected the fact that the it sought evidence on matters other than those at issue in the foreign litigation); *In re Bernal*, No. 18-21951-MC, 2018 WL 6620085, at *9 (S.D. Fla. Dec. 18, 2018) (quashing subpoena "requesting every communication involving these entities or persons whether or not they are relevant to the underlying claims in the foreign proceeding."). This Court should not permit Illumina to abuse Section 1782's discovery procedures to obtain carte-blanche access to all of Respondents' confidential technical information, regardless of whether they are relevant to the Foreign Actions.

### C. Respondent CGI Should Not Be Forced to Designate a Witness to Testify Regarding Subjects on Which It Does Not Have Access or Control.

Respondents should also not be obligated to produce a witness to testify about information that is clearly within the possession, custody, or control of a third party. *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC.*, Misc. No. 09-126-SLR, 2010 WL 181088, at *3 (D. Del. Jan 19, 2010). This Court may, upon a showing of good cause, order that Respondent need not designate a witness under Rule 30(b)(6) to testify as to the subjects identified in Illumina's deposition notice. Federal Rule of Civil Procedure 26(c) provides that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending … The court may, for good cause,

> issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense …

Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips v. Gen. Motors Corp.,* 307 F.3d 1206, 1210-11 (9th Cir. 2002) (citation omitted). Rule 26(c) "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). If a corporation does not possess knowledge of matters listed in a notice of Rule 30(b)(6) deposition and therefore cannot prepare a designee, "it has no duty to make a designation under Rule 30(b)(6), because the rule requires testimony only as to 'matters known or reasonably available to the organization'" 7 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 30.25[3], at 30-56.3 (3d ed. 2006) (citation omitted). As discussed above, CGI has no knowledge regarding the sales or financial information of its European affiliates, because CGI does not do business in Denmark, Switzerland, Germany, or Turkey. As such, CGI cannot designate a witness to testify as to those topics, as they are not "matters known or reasonably available" to CGI.

CGI, as a research entity, does have technical information regarding the sequencers and reagent kits that it has worked on, but cannot verify whether this information is accurate, or reflects, the sequencers or reagent kits, if any, that are manufactured, distributed, imported, used, offered for sale, or sold by any BGI entity in Denmark, Germany, Switzerland, or Turkey. In essence, Illumina is asking CGI to designate and teach one of its research scientists on the manufacturing specifications of products manufactured by an affiliate in China and (allegedly) sold by an affiliate or distributor in Europe.

Illumina's argument that Dr. Drmanac and Handong Li are knowledgeable to testify as corporate representatives for Respondents is meritless. Dr. Drmanac is not, as Illumina alleges, the Senior VP of BGI Genomics Co., Ltd., but rather the Senior VP of BGI Shenzhen, an entirely different entity. While Dr. Drmanac may have technical information regarding the sequencers and reagent kits CGI does research on, he, like the rest of CGI, does not maintain the documents needed to determine if this information reflects the sequencers and reagent kits that are sold or manufactured

11

in Denmark, Switzerland, Germany, or Turkey (if any). Mr. Li is currently employed by BGI Research USA, and no longer an employee of CGI.[2] Illumina served its deposition subpoena on CGI, not BGI Research USA, and under Rule 30(b)(6), any corporate representative must testify as to what information CGI possesses, not what that representative knows in a personal capacity or in their capacity as an employee of a wholly separate entity. Mr. Li is not employed by CGI, and CGI is not under any obligation to designate a witness employed by a wholly separate entity.

### D. MGI Tech Co., Ltd. Is a Party to the German Litigation, so Under the First *Intel* Factor, It Is Inappropriate for Illumina to Seek Discovery Under Section 1782, and the Information and Documents Illumina Requests Are Readily Available From the Defendants in the Foreign Tribunals.

To the extent that Illumina is seeking documents under the control of MGI Tech Co., Ltd., Section 1782 is the wrong vehicle for Illumina to request such documents. Under the first *Intel* factor, "when the person from whom discovery is sought is a participant in the foreign proceeding (as Intel is here), the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). MGI Tech Co., Ltd. is a defendant in the German Action, and this court should not allow Illumina to use Section 1782 to obtain documents from a foreign defendant that the German court has jurisdiction over.

Moreover, although Respondents are not parties to the Foreign Actions *per se*, the first factor here still weighs in favor of quashing the subpoena. The information and documents sought by Illumina all relate to the business activities of the defendants in the Foreign Tribunals. The foreign defendants likely have access to *all* of the information that Illumina requests. Even if there is no requirement to exhaust foreign discovery avenues, as Illumina now argues, this factor still weighs in favor of quashing the subpoenas. *See Baxalta*, 2016 WL 11529803, at *5-6 (finding first *Intel* factor weighed against § 1782 applicant even though respondent was not a party to the foreign litigation, because the foreign defendant was likely to have "much if not all of the *relevant* information that

---

[2] Handong Li is the Sr. Director, Chemistry of BGI Research USA, as described in CGI's initial disclosures in the related case (though he was previously an employee of Complete Genomics). *See* Wang Decl., Ex. E at 2. Thus, this Court should not rely upon Mr. Li's personal LinkedIn page over the disclosures made on behalf of CGI in the related U.S. Action.

12

[applicant] seeks." (emphasis in original)); *In re Ex Parte Apple, Inc.*, No. 15CV1780 BAS (RBB), 2015 WL 5838606, at *4 (S.D. Cal. Oct. 7, 2015) (finding first *Intel* factor weighed in favor of quashing subpoena, because the foreign defendant likely possessed the required information and "[a]pplicant has not shown that it cannot obtain this information from [the foreign defendant]."); *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, No. 16-MC-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) ("[T]he first *Intel* factor 'militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity.'" (internal citations omitted)); *see also MetaLab Design Ltd. v. Zozi Int'l, Inc.*, No. 17-MC-80153-MEJ, 2018 WL 368766, at *3 (N.D. Cal. Jan. 11, 2018).

### E. Illumina is Using Section 1782 to Circumvent Discovery Restrictions in the Foreign Tribunals.

Illumina is clearly using Section 1782 to avoid the well-established discovery restrictions of the Foreign Tribunals. Illumina admitted, and still does not dispute, that discovery procedures are readily available in the Foreign Tribunals, which permit plaintiffs in those tribunals to obtain relevant documents.[3] For example, Illumina's own German counsel admits that the requested information and documents could readily be obtained via the Inspection Procedure of sections 140c (1) of the German Patent Act and 485 et seq. of the German Code of Civil Procedure. Von Rosplatt Rebuttal Decl., ¶ 7. Illumina merely chooses not to pursue such available methods because it is "commercially unfeasible," and instead burdens Respondents and this Court with subpoenas that are overbroad and unlikely to produce responsive information. *Id.* Similarly, Illumina could just as easily obtain the technical information through analysis of reagent kits it obtains, but chooses not to do so in favor of burdening Respondents to embark on a fishing expedition for information that may be entirely inaccurate. Von Rosplatt Rebuttal Decl., ¶ 8. Finally, although Swiss Courts cannot compel disclosure, failure to cooperate in discovery is viewed negatively and will be taken into account when appraising the evidence. *See* App'x (Swiss Civ. Proc. Code § 2, Article 164).

---

[3] In his rebuttal declaration, Illumina's Danish counsel Anders Valentin offers his own opinion that a stay will most likely not be granted. Valentin Rebuttal Decl., ¶5. Mr. Valentin cites no specific facts or case law to support this conclusory opinion, and this Court should not give it any credit.

13

While it is true that courts have not interpreted Section 1782 to require exhaustion of foreign discovery, here Illumina has not made any attempt to, and has deliberately chosen not to, avail itself of foreign discovery options. Such a complete failure to pursue foreign discovery, especially when the documents and information that Illumina requests are all under the possession and control of the foreign defendants, weighs in favor of quashing the subpoenas. *In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. C-07-5944-SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) ("[a] perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis" (internal citations omitted)); *see also In re Application of Gilead Pharmasset LLC*, No. CV-14-MC-243 (GMS), 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) (noting that while there is no requirement of exhaustion, the applicant's failure to make any attempt to obtain discovery in foreign tribunals was "telling," and indicated an attempt to circumvent the discovery rules of those jurisdictions.) Similarly, Illumina's lack of interest in the foreign discovery methods — which are far more likely to produce relevant and reliable information — weighs strongly in favor of quashing the subpoenas.

### F. The Foreign Tribunals Cannot Guarantee the Confidentiality of Respondents' Proprietary and Confidential Information.

Despite Illumina's assurances, as it stands there is no reasonable guarantee of confidentiality in the Foreign Tribunals. Illumina asks Respondents to trust it to seek adequate protective measures in the Foreign Tribunals, but this does not change the fact that such protective measures are discretionary. Thus, absent some pre-existing protection that are binding upon those Foreign Tribunals, Respondents' confidential trade secret information would be at the mercy of those Tribunals and their unfamiliar rules. This is especially problematic in the case of the Turkish Action. As stated in the declaration of Okan Çan, and not rebutted by Illumina's reply declarations, Turkish courts *may* grant confidentiality protections over materials in litigation upon the requests of parties to that litigation. Çan Decl., ¶13. None of the Respondents or their European affiliates are parties to the Turkish Action; as such, there is little guarantee that any party in the Turkish Action will even pursue a protective order, much less that the Turkish courts will grant such a request. *Id.* Even if the Turkish courts did grant such a request, Respondents' information would at minimum would have to be provided to Genoks, the Turkish defendant, which would give Genoks access to

14
REPLY ISO MOTION TO VACATE AND QUASH 28 U.S.C. § 1782 APPLICATION  Case No. 3:19-mc-80215-WHO (TSH)

Respondents' confidential information that they would otherwise not have access to. Similarly, Illumina offers to redact the written judgment in the Swiss Action, but this redaction will not prevent disclosure of Respondents' confidential information in the public hearing. Hess Rebuttal Decl., ¶7. There is no reason to believe that a hearing would be waived, and even if it could be, Illumina is essentially asking that Respondents' European affiliates waive their right to oral argument so that Illumina may obtain and use confidential information from Respondents. Thus, if the Court were to uphold Illumina's subpoenas, Respondents would have to provide their primary competitor with large amounts of its trade secret information, some of which may be entirely irrelevant to the Foreign Actions, and hope that Illumina makes good on its promises and the Foreign Tribunals applies their discretion in Respondents' favor.

Illumina's offer to negotiate a protective order[4] in this Court is of no comfort, because there is no reason to believe that any of the Foreign Tribunals would hold themselves to a protective order in this Court. *In re Application of Pioneer Corp.*, No. MC 18-0037 UA (SS), 2018 WL 2146412 (C.D. Cal. May 9, 2018); *see also*, *Andover Healthcare, Inc. v. 3M Co.*, 817 F.3d 621, 623-24 (8th Cir. 2016) (finding that a protective order would be insufficient to protect confidentiality because "any order would have to permit disclosure to the German court at minimum, thus leaving [respondent]'s trade secrets at the mercy of German procedures that are unfamiliar to this court."). At the very least, if Illumina is truly serious about protecting the confidentiality of Respondents' trade secrets, Illumina should be required to pre-emptively seek confidentiality protections from the Foreign Tribunals, *before* Respondents are required to produce any information or documents. If, as Illumina alleges, the Foreign Tribunals have adequate and reasonable protections for such trade secret information, Illumina should have no trouble seeking such protections.

### IV.    CONCLUSION

For the foregoing reasons, this Court should quash Illumina's subpoenas to Respondents, or at the very least, enter an order requiring Illumina to seek protective orders in each of the Foreign Tribunals before Respondents will respond to the subpoenas.

---

[4] Illumina also points to Respondents' unwillingness to negotiate, as if it were a defect in their objections. However, this was because they were occupied with determining whether Respondents had responsive information.

15

Dated: January 14, 2020

ARNOLD & PORTER KAYE SCHOLER LLP

By:    */s/ Katie J.L. Scott*
       Katie J.L. Scott

Attorney for Respondents
BGI AMERICAS CORP., MGI AMERICAS, INC., AND COMPLETE GENOMICS INC.