UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ILLUMINA CAMBRIDGE LTD,

Applicant,

v.

COMPLETE GENOMICS, INC., et al.,

Respondents.

Case No. 19-mc-80215-WHO (TSH)

**ORDER RE: MOTION TO VACATE 28 U.S.C. § 1782 APPLICATION AND QUASH OR LIMIT SUBPOENAS PURSUANT TO § 1782**

Re: Dkt. No. 17

## I.     INTRODUCTION

On September 6, 2019, Applicant Illumina Cambridge, Ltd. ("IC") filed an ex parte application pursuant to 28 U.S.C. § 1782 for an order granting leave to obtain discovery from Respondents in connection with four separate patent infringement proceedings pending in four foreign jurisdictions. ECF No. 1. The Court granted the application on November 7, 2019. ECF No. 16. On December 2, 2019, Respondents moved to vacate the § 1782 application and quash or limit the subpoenas issued pursuant to the Court's order. ECF No. 17. IC filed an Opposition (ECF No. 30) and Respondents filed a Reply (ECF No. 35). IC filed a Surreply with leave from the Court. ECF No. 39. For the reasons set forth below, the Court **DENIES** Respondents' motion to quash, but limits the subpoena served on BGI Americas.

## II.     BACKGROUND

IC is a United Kingdom subsidiary of California-based Illumina Inc. ("Illumina"). Mem. of Law in Supp. of Ex Parte Appl. ("Appl.") 1, ECF No. 2. Illumina is a developer, manufacturer, and marketer of DNA sequencing devices. *Id.* Its proprietary DNA sequencing technology involves the use of modified nucleotides with an azidomethyl blocking group and a detection buffer containing ascorbic acid. *Id.*

IC owns the following relevant patents:

> 1. European Patent No. EP 1 530 578 B1 (the "'578 Patent"), Danish Patent DK/EP 3 002 289 T3 (the "'289 Patent"), which is the Danish designation of a divisional of the '578 Patent, and Turkish Patent No. TR 2018 04580 (the "'4580 Patent"), which is the Turkish validation of the '289 Patent, all of which are titled "Modified nucleotides for polynucleotide sequencing." These patents cover modified nucleotides with an azidomethyl blocking group, which are used in a method of DNA sequencing known as "sequencing-by-synthesis" or "SBS." Mem. of Law in Supp. of Ex Parte Appl. 1 ("Appl."), ECF No. 2.

> 2. European Patent No. EP 1 828 412 B2 (the "'412 Patent"), which is titled "Improved method of nucleotide detection." This patent covers the use of a detection buffer containing ascorbic acid that may be used in SBS.

*Id.* Respondents are affiliates of BGI Group ("BGI"), a Chinese biotech conglomerate. Appl. 2; Mot. to Vacate ("Mot.") 2-3, ECF No. 17. CGI is a developer of DNA sequencing instruments, chemistry, and software. Mot. 2. It was acquired by BGI in 2013 and performs sequencing-related R&D as part of BGI. *Id.* The technologies developed by CGI have been developed and commercialized outside the United States by MGI Tech Co., Ltd ("MGI Tech"), another BGI affiliate. *Id.* BGI Americas is an indirect subsidiary of BGI Genomics, which are both part of the services arm of BGI. *Id.* BGI Americas offers a variety of biotechnology services to customers in North and South America, including genomic sequencing, proteomics, mass spectrometry, and bioinformatics services. *Id.* MGI Americas, also an affiliate of BGI, is responsible for sales and marketing of systems and reagent kits in North and South America. *Id.*

IC has brought several actions outside the United States, against other affiliates of BGI, asserting infringement of its various patents:

> 1. An action asserting infringement of the '578 Patent in the Regional Court of Düsseldorf, Germany against Latvia MGI Tech SIA ("Latvia MGI");

> 2. An action asserting infringement of the '578 and '412 Patents in the Federal Patent Court of Switzerland against Latvia MGI;

> 3. An action asserting infringement of the '4580 Patent in the Istanbul Civil Court for Intellectual and Industrial Rights against Genoks Teknoloji Saglik Bilisim Turizm Hiz. Endustriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti. ("Genoks"); and

> 4. An action asserting infringement of the '289 Patent in the Maritime

and Commercial Court of Denmark against BGI Europe A/S.

Appl. 2. Latvia MGI, the defendant in the German and Swiss Actions, is a subsidiary of MGI Tech. *Id.* at 2-3. Genoks, the defendant in the Turkish Action, is a distributor for BGI in Turkey. *Id.* at 3. BGI Europe, located in Denmark and the defendant in the Danish Action, serves as BGI's European headquarters. *Id.* BGI Europe provides laboratory services in the area of DNA sequencing primarily under the BGI brand. *Id.*

IC and Respondents also have between them two patent infringement suits in United States district courts:

> 1. *Illumina, Inc., et al. v. BGI Genomics Co., LTD.*, No. 3:19-CV-03770-WHO in this District
>
> 2. *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-CV-00970-MN in the United States District Court for the District of Delaware

IC sought leave to serve subpoenas on Respondents to obtain documents and testimony for use in the foreign patent infringement actions. Respondents did not oppose IC's Application and the Court granted IC leave to serve its subpoenas. After being served with the subpoenas, Respondents moved to quash or limit them.

## III.   LEGAL STANDARD

### A.   Discovery Pursuant to 28 U.S.C. § 1782

Section 1782 provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced . . . .

28 U.S.C. § 1782(a). That language "has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (quoting § 1782(a)).

Once those three statutory requirements are met, a district court has wide discretion to grant discovery under § 1782. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260-61 (2004); *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079 (9th Cir. 2002) ("But the magistrate judge in granting some of the relief requested . . . and denying the rest, was exercising the broad discretion traditionally conferred upon the trial courts in such discovery matters."). In exercising its discretion, a district court should be guided by the following factors: (1) whether the "person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65. However, a district court need not explicitly address every factor, nor is it confined to the four *Intel* factors in deciding whether to exercise its broad discretion. *See Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) ("The district court was not required to address explicitly every factor or argument, nor was it required to issue a written order.") (citing *United States v. Sealed 1*, 235 F.3d 1200, 1206 (9th Cir. 2000) (noting the broad discretion afforded the district courts under § 1782). A district court's discretion is to be exercised in view of the twin aims of § 1782, "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Intel*, 542 U.S. at 252 (citation and quotation marks omitted).

**B.      Motion to Quash**

On timely motion, a court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). Additionally, a court must limit discovery if it is duplicative or could

4

be obtained from a more convenient or less burdensome source. *See Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309, at *3 (N.D. Cal. Dec. 8, 2017). The moving party bears the burden of persuasion under Rule 45(d)(3), but the party issuing the subpoena must demonstrate the discovery sought is relevant. *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quoting *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)).

## IV. DISCUSSION

### A. Statutory Requirements

IC's request satisfies the minimum requirements of § 1782. First, Respondents can be found in this District. A business entity is "found" in the judicial district where it is incorporated or headquartered. *See In re Ex Parte Appl. of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (defendants headquartered in the Northern District of California and thus found here); *In re Ex Parte Appl. of Ontario Principals' Council*, 2013 WL 6073517, at *2 (N.D. Cal. Nov. 8, 2013) (Delaware corporation headquartered in Palo Alto was found in this district). Complete Genomics, Inc. ("CGI") and MGI Americas are both Delaware corporations with headquarters in San Jose, California. Decl. of Minyao Wang in Supp. of Application of IC for Leave to Serve Subpoenas ("Wang Decl."), ¶¶ 18-19, Exs. O, P, ECF No. 3. Additionally, the found-in test is also satisfied if the target of discovery has a presence in a district. *In re Super Vitaminas, S.A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (having an office in this District is sufficient); *In re Ex Parte Application of TPK Touch Sols. (Xiamen) Inc.*, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (finding subpoenaed party was found within this District for purposes of § 1782 because it maintained an office in it). BGI Americas is a Delaware corporation which holds itself out as having a research facility in San Jose, California. Wang Decl. ¶ 20, Ex. Q. Thus, it is also found in this District.

Second, the patent infringement proceedings in the foreign jurisdictions, which are already pending, clearly meet the statutory requirement of a proceeding in a foreign tribunal. *See, e.g.*, *AIS GmbHAachen Innovative Sols. v. Thoratec LLC*, 762 F. App'x 447, 448 (9th Cir. 2019) (German court in which a patent infringement case was pending was a foreign tribunal for

5

purposes of § 1782); *IPCom GmbH v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (German patent infringement action qualified); *In re Int'l Judicial Assistance from the Fourth Civil Court for Intell. and Indus. Property Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (N.D. Cal. June 22, 2015) (Turkish trademark infringement proceeding); *In re Request for Int'l Judicial Assistance from the Dist. Ct. of Kolding, Denmark*, 2015 WL 13827074, at *1 (W.D.N.C. May 4, 2015) (Danish district court proceeding); *In re Ex Parte Appl. of Jommi*, 2013 WL6058201, at *3 (N.D. Cal. Nov. 15, 2013) (Swiss court proceeding).

Third, a litigant in such foreign proceeding is an "interested person" for purposes of § 1782. *Intel*, 542 U.S. at 256-57. Illumina Cambridge is a plaintiff in all the foreign actions. It is an interested person.

Finally, in moving to quash, Respondents do not challenge that the statutory requirements of § 1782 are met. Those standards having been met, the Court now considers the discretionary factors.

## B.     Discretionary *Intel* Factors

Respondents' objections to IC's discovery mostly fall under the third and fourth *Intel* factors. They argue that IC's request for discovery is an attempt to circumvent foreign proof-gathering restrictions, and an attempt to skirt an unfavorable discovery ruling in the related case before this Court and the discovery timeline in the related Delaware matter. They argue that IC's discovery requests are unduly burdensome, and that the foreign tribunals will not be able to protect their confidential, proprietary information once IC gets a hold of it. They argue that the documents or information IC seeks through the subpoenas are not within their control, and thus the subpoenas should be quashed.

### 1.     Respondents are not participants in the foreign actions.

The fact that Respondents are not parties to any of the foreign actions favors approval of IC's application. "[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel*, 542 U.S. at 264. Additionally, in each of the four foreign jurisdictions there is no right to pretrial discovery comparable to that in the United States.

*Id.* at 261 n.12. ("Most civil-law systems lack procedures analogous to the pretrial discovery regime operative under the Federal Rules of Civil Procedure. Disclosure and exchange of evidence under the civil-law systems are generally more restricted, or nonexistent.") (citations and internal quotations omitted). Thus, even if Respondents were participants, the discovery IC seeks might not be available in any event. This also weighs in favor of § 1782 discovery. *See, e.g.*, *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (D.N.J. Apr. 3, 2017) (finding the first factor weighed in favor of granting application because "even if the documents [and German defendant] are located in Germany, the German court will not order the documents to be produced if the applicant does not provide detailed information on the documents"); *id.* ("just because documents are located in Germany does not mean that the documents are accessible through German discovery").

### 2. The foreign courts are receptive to U.S. judicial assistance.

Under the second *Intel* factor, courts consider the nature of the foreign tribunal, the character of the proceedings abroad, and the receptivity of the foreign government or tribunal to U.S. federal-court judicial assistance. *Intel Corp.*, 542 U.S. at 264. The Supreme Court has noted that the absence of permissible discovery in a foreign jurisdiction—none of the four jurisdictions here allows discovery comparable to the United States—does not necessarily signal objection to aid from U.S. courts. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions--reasons that do not necessarily signal objection to the aid from United States federal courts.") (citing *Bayer*, 146 F.3d at 194 ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).

IC has submitted declarations from its foreign counsel, who are attorneys admitted to practice in each of the four foreign jurisdictions, which all assert that courts in each of those jurisdictions are or would be receptive to evidence obtained through § 1782. *E.g.*, Decl. of Anders Valentin ("Valentin Decl.") ¶ 21 ("Danish courts are receptive to evidence obtained through section 1782"), ECF No. 6; Decl. of Max Von Rospatt ("Rospatt Decl.") ¶ 21 ("German courts are receptive"), ECF No. 4; Rebuttal Decl. of Andri Hess ("Hess Rebuttal Decl.") ¶ 3 ("[T]he

discovery, if obtained in the U.S., would be fully allowable in the Swiss action and would not in any way offend a Swiss court."), ECF No. 32; Decl. of Özge Atilgan ("Atilgan Decl.") ¶ 25 ("Turkey courts should be receptive to evidence obtained through 28 U.S.C. § 1782 . . . . [A]ny order by this Court . . . would not, in my professional opinion, constitute an affront to the dignity of the Turkish legal system."), ECF No. 7.  Respondents' foreign attorneys, through their declarations, do not dispute those assertions.  And the Court is not aware of any clear directive from any of the foreign jurisdictions against the use of § 1782 evidence.  *See In re Appl. of Jt. Stock Co. Raiffeinsenbank*, 2016 WL 6474224, at *5 (N.D. Cal. Nov. 2, 2016) ("Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects.'") (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)); *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5 (S.D.N.Y. Nov. 8, 2013) ("[W]hen the district court has no evidence suggesting opposition from the foreign tribunal, the second *Intel* prong should count as 'neutral or slightly favoring' the petitioner.") (quoting *In re Application of OOO Promnefstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009)).  Lastly, federal courts have on other occasions found these same jurisdictions receptive to evidence obtained through § 1782.  *See, e.g.*, *In re Dist. Ct. of Kolding*, 2015 WL 13827074, at *1 (Danish court sought evidence for use in judicial proceeding); *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) ("Heraeus cannot obtain even remotely comparable discovery by utilizing German procedures and there is nothing to suggest that the German court would be affronted by Heraeus's recourse to U.S. discovery or would refuse to admit any evidence, or at least any probative evidence (German judges can disregard evidence that would waste the court's time), that the discovery produced."); *In re Jommi*, 2013 WL 6058201, at *4 (Switzerland); *In re Fourth Civil Ct. for Intell. & Indus. Prop. Rights in Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (Turkey).

The Court is satisfied that the tribunals in each of the foreign proceedings would be receptive to discovery obtained through § 1782, and so this factor weighs in favor of upholding the

subpoenas.

### 3. There is no circumvention of foreign discovery procedures.

The third *Intel* factor concerns whether the applicant is attempting to circumvent a foreign jurisdiction's proof-gathering restrictions. *Intel*, 542 U.S. at 244-45. A petitioner seeks to circumvent foreign discovery restrictions when it seeks discovery "that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents." *In re Accent Delight Int'l*, 2019 U.S. App. LEXIS 33785, at *8 (2d Cir.) ("[T]here is a difference between a § 1782(a) request that seeks documents that cannot be obtained . . . because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents.") (citing *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015)). The fact that more evidence may be obtained via a § 1782 application than via the foreign discovery procedures does not amount to circumvention and does not militate against approval of the application. *In re Nikon Corp.*, 2017 WL 4647753, at *4 (N.D. Cal. Oct. 16, 2017); *In re Raiffeinsenbank*, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016); *see also Appls. of Heraeus Kulzer, GmbHv. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (that an applicant "cannot obtain even remotely comparable discovery by utilizing German procedures" was not circumvention and was not a basis to deny an application under § 1782). There is no evidence that courts in any of the four foreign jurisdictions prohibit the discovery sought here. *See, e.g., In re IPCom GMBH & Co.*, 2014 WL 12772090, at *3 (N.D. Cal. Apr. 10, 2014) (noting there is no circumvention because "U.S. courts have routinely granted applications under Section 1782 for discovery of evidence to be used in German proceedings."); *In re Jommi*, 2013 WL 6058201, at *4 (no circumvention of Swiss law); *In re Dist. Ct. of Kolding*, 2015 WL 13827074, at *1 (W.D.N.C. May 4, 2015) (request for assistance from District Court of Kolding, Denmark); *In re Fourth Civil Ct. for Intell. & Indus. Prop. Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550, at *4 (N.D. Cal. June 22, 2015) (no circumvention of Turkish discovery law).

Respondents counter by pointing to various discovery procedures that are available in each of the foreign jurisdictions. Mot. 11-13. They argue that IC is side-stepping those procedures by resorting to discovery through § 1782. However, the fact remains that none of those jurisdictions

allows discovery commensurate to that in the United States.  For example, while the parties agree that German civil procedure allows for limited discovery of documents and for inspection of a potentially infringing device, they both also acknowledge that German law requires that a party identify with heightened particularity the documents a party seeks before a court will grant an order.  *See* Rospatt Decl. ¶¶ 16-17; Decl. of Joachim Fledges ¶ 16, ECF No. 21.  The same is true of Turkish and Swiss law.  Atilgan Decl. ¶ 20; Hess Decl. ¶ 17.  Several of IC's foreign counsel assert that IC would not be able to identify with the required particularity documents that could be beneficial for its case.  Rospatt Decl ¶ 17 (Germany); Hess Decl ¶ 18 (Switzerland); Atilgan Decl. ¶ 20 (Turkey).  Also, and particularly importantly here, the foreign discovery procedures generally reach only information and documents located in those jurisdictions.  Rospatt Decl. ¶¶ 14-18; Hess Decl. ¶ 19; Atilgan Decl. ¶ 21; Valentin Decl. ¶ 19 (Denmark).  And non-compliance by a party with a court order to provide documents does not trigger sanctions in Germany, Denmark, or Switzerland.  Rospatt Decl. ¶ 15; Hess Decl. ¶ 17; *see also* Decl. of Nicolaj Bording in Supp. of Mot. to Quash ("Bording Decl.") ¶ 13 ("There is no general right to pre-trial discovery under Danish law."), ECF No. 18; *id.* ¶ 18 ("[T]he counterparty is not obligated to follow the Court's order" to disclose documents, "and the Court cannot compel the counterparty to produce the documents.").  Finally, neither Danish, German, Swiss, nor Turkish civil procedure allows the taking of pre-trial depositions.  Hess Decl. ¶ 15; Valentin Decl. ¶ 20; Atilgan Decl. ¶ 23; Rospatt Decl. ¶ 19.

Additionally, whether or not those jurisdictions allow comparable discovery—which they do not—"[c]ourts need not determine that an applicant has exhausted its discovery attempts abroad."  *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (citing *Euromepa*, 51 F.3d at 1098 (2d Cir.) ("Relying on the plain language of the statute, this Court has also refused to engraft a quasi-exhaustion requirement onto section 1782 that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court.") (citations omitted)); *Intel*, 542 U.S. at 263 ("Section 1782 is a provision for assistance to tribunals abroad.  It does not direct United States courts to engage in comparative analysis to determine whether analogous proceedings exist here.").

Therefore, even though IC came to this Court before going down those jurisdictions' more limited discovery pathways, that doesn't necessarily weigh against IC. Respondents' complaints about the foreign proceedings being at a very early stage are noted, but they are without gravity.

This factor is at least neutral regarding IC's application.

### 4. The requests do not conflict with discovery in the U.S. cases.

Respondents argue at length that IC is also attempting to circumvent the discovery timeline in the matter before the District of Delaware, and circumvent an unfavorable discovery ruling by Judge William H. Orrick in the related case before this Court.

Regarding the case in the District of Delaware, Respondents argue that IC is trying to gain early access to documents that it agreed would not be produced until February 5, 2020. Even if that were true, it would have no weight, since that date has passed, and Respondents would not be unfairly impacted by this Court allowing the subpoenas to stand.

Regarding the related matter before this Court, Respondents argue that IC is trying to undermine an unfavorable discovery ruling. As a preliminary note, Respondents contend that in that matter, IC and Illumina "raced to this Court . . . with a motion for expedited discovery to support its barebone allegations. [Its] motion for expedited discovery was for the purpose of filing the gaps in its prefiling investigation so that it could augment what would otherwise undoubtably be a deficient infringement contention." Mot. 16. However, in the minute order addressing IC's motion for expedited discovery, Judge Orrick denied Respondents' motion to dismiss the indirect infringement claims, finding there was "sufficient, plausible allegations regarding defendants' sale or transfer of technology." Dkt. No. 42. He also stated at the motion hearing that, "it seems to me that the plaintiffs' claims are plausible with respect to indirect infringement." Dkt. No. 46. So, Respondents' characterization of what happened in that case is not entirely correct.

Second, Judge Orrick granted in limited respect IC and Illumina's motion, based on the "parties' agreement to provide limited technical documents within 30 days," and requiring that the defendants provided IC and Illumina "sixty days written notice before any phased or general commercial rollout begins in the United States." *Id.* Neither in the minute order nor at the motion hearing did Judge Orrick express any strong reservations about IC and Illumina's motion. He

United States District Court
Northern District of California

explained at the hearing:

> And then, finally, with respect to the expedited discovery regarding the rollout, *I would grant that motion*. . . . This discovery should be pretty limited. I think interrogatories and document production should probably do it, maybe a 30(b)(6) if some additional explanation is necessary; *but I also think that the defendants could solve this problem just by saying what their intent is in a way that the plaintiff could rely on*. But what I'm going to require is that at the end of this you go upstairs . . . and talk for an hour and then come back here and tell me how you've agreed to solve the discovery issue. Okay?

*Id.* (emphasis added). Judge Orrick ruled based on an agreement the parties worked out themselves that day. So, to the extent Judge Orrick limited the scope of discovery, that limiting was partially a result of the parties' own agreement. The undersigned sees no reason why allowing the § 1782 subpoenas would necessarily circumvent Judge Orrick's ruling. And to the extent Respondents have concern about being unfairly prejudiced in that matter, IC has indicated that it is willing to enter into an appropriate protective order limiting the use of discovery obtained through § 1782 in the related U.S. matter. *See* Opp'n 23. This should alleviate Respondents' concerns (and could potentially have sooner, had Respondents engaged with IC in its earlier attempts to work out a protective order).

### 5. The requests are not unduly burdensome.

Once a court has determined that discovery through § 1782 is not being used to circumvent discovery restrictions in a foreign jurisdiction, "the ordinary tools of discovery management, including Federal Rule of Civil Procedure 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out." *Husayn v. Mitchell*, 938 F.3d 1123, 1128 n. 9 (9th Cir. 2019). "In other words . . . the ordinary rules of civil procedure relating to discovery shift into place." *Id.*; 28 U.S.C. § 1782(a) ("The order may prescribe the practice and procedure . . . for taking the testimony or statement or producing the document or other thing. To the extent that [it] does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.").

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery "is permitted if reasonably calculated to lead to the discovery of admissible evidence." *Franklin v. Madden*, 586 Fed. Appx. 431, 432 (9th Cir. 2014). A subpoena must "command each person to whom it is directed to do the following at a specified time and place: attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises[.]" Fed. R. Civ. P. 45(a)(1)(A)(iii).

### a.  IC's Subpoenas for Documents

Respondents' argument that IC's subpoena requests are unduly burdensome really boils down to an assertion that they don't have possession or control over relevant documents and cannot designate someone from CGI to testify. That assertion belies the record.

First, Respondents assert that they lack legal control over many of the documents. They base this assertion on the fact that while CGI was the parent company of MGI Tech before October 14, 2019 (and thus had legal control over MGI Tech), since then the role has been reversed and CGI is now a wholly owned subsidiary of MGI Tech. It is true that the Ninth Circuit has defined "control" as "legal control," or the "legal right to obtain documents upon demand," rather than the "practical-ability-to-obtain-documents." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107-08 (9th Cir. 1999) (citations omitted). Under that standard, a subsidiary generally would not have legal control over documents that a parent possesses. But that test applies only when deciding whether a party has documents or information in its "control." The phrase "possession, custody or control" in Rule 45 "'is in the disjunctive and only one of the numerated requirements need be met.'" *Soto v. City of Concord*, 162 F.R.D. 603, 619 (N.D. Cal. 1995) (quoting *Cumis Ins. Society, Inc. v. South-Coast Bank*, 610 F. Supp. 193, 196 (N.D. Ind. 1985)); *see also In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if

13

the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand. Thus, legal ownership of the document is not determinative.") (citations omitted). The Ninth Circuit implicitly confirmed as much in *In re Citric Acid Litig.*, writing, "[t]he documents in question are neither in the possession nor custody of C&L-US. Thus, the only question before us is whether C&L-US has 'control' over documents in the possession of [its association co-member]." 191 F.3d at 1107. In other words, it is sufficient for Respondents to have possession or custody of documents or information for Respondents to have a duty to produce them.[1]

As late as September 30, 2019, Respondents along with their co-defendants in the related matter before this Court represented in their initial disclosures that they were "in possession of the following categories of documents" (quoting from the disclosures):

- Information relating to the structure, characteristics, and operation of Defendants' [Respondents'] products accused by Plaintiff [IC] of infringement. Such information may be located in one or more of the following locations: CGI and MGI Tech's local servers, OneDrive cloud storage, Sharepoint sites, Wikis, and MGI Tech's product lifecycle management (PLM) system.

- Information relating to the invalidity and unenforceability of Plaintiffs' asserted patents. At this time, Defendants believe this information is publicly available, within Illumina's custody, or within the custody of Illumina's attorneys.

- Information relating to marketing of Defendants' products and services. Such information may be located in one or more of the following locations: CGI's local servers, OneDrive cloud storage, Sharepoint sites, and BGI Cloud storage.

- Information relating to revenues, profits, and costs (if any) associated with Defendants' products accused by Plaintiff of infringement. With respect to MGI Tech, MGI Americas, and CGI, such information would be located in Oracle databases to the extent it exists. With respect to BGI Americas, to the extent such information exists, it is located in SAP databases or spreadsheets.

- Information relating to sales and potential sales of Defendants' products accused by Plaintiff of infringement. Such information

---

[1] Respondents make the peculiar argument that they "do not control or maintain the limited technical documents and information they do possess." Reply 9. Possession is sufficient, and Respondents do not support with case law the notion that a party is not in 'legal possession' of documents it possesses because it no longer has legal control over a related entity.

is located in Salesforce databases.

- Information relating to the structure, characteristics, and operation of Plaintiffs' products accused by Defendant-Counterclaim Plaintiff CGI of infringement. Defendants believe this information is within Illumina's custody.

- Information relating to the validity and enforceability of CGI's asserted patent. Such information may be publicly available or located in one or more of the following locations: CGI local servers and hard copy document storage in San Jose, California.

- Information relating to marketing of Illumina's products and services. Aside from limited publicly available information, Defendants believe this information is within Illumina's custody.

- Information relating to sales, revenues, profits, and costs associated with Illumina's products accused by CGI of infringement. Aside from limited publicly available information, Defendants believe this information is within Illumina's custody.

- Hard copy files, including laboratory notebooks stored at 2904 Orchard Way, San Jose, California 95134.

Decl. of Minyao Wang in Supp. of Opp'n ("Wang Opp'n Decl.") ¶ 12, Ex. E at 10-11, ECF No. 30-6. According to the disclosures, as late as September 2019, multiple BGI entities including Respondents had access to shared servers, databases, or drives having documents or information potentially responsive to IC's subpoenas. There were also apparently documents in hard copy located within this District. And it bears repeating that, according to Respondents' disclosures, before October 2019, MGI Tech was a wholly-owned subsidiary of BGI Complete Genomics Hong Kong, which was a wholly-owned subsidiary of CGI, meaning that CGI had legal control over both those entities and the documents and information they possessed. Respondents contend that "[a]fter CGI was acquired by BGI Shenzhen," certain documents were transferred to affiliates of the BGI Group in China. But Respondents are in litigation and have been aware of IC's § 1782 application since September 2019, Wang Opp'n Decl. ¶ 5 Ex. A, so they were under an obligation to preserve those documents and cannot escape their duty to produce them by shipping them overseas or wiping them from their drives. *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998) ("This obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation--most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as

for example when a party should have known that the evidence may be relevant to future litigation."); *Bank of New York v. Meridien Biao Bank Tanz.*, 171 F.R.D. 135, 149 (a party "cannot be permitted to circumvent the rules of discovery by engaging in conduct during the litigation that eliminates its responsibility to produce responsive documents to an opposing party").

Additionally, Chongjun Xu, CGI's Senior Director of Biochemistry stated that he has in his possession the Bill of Materials for certain of BGI's sequencing reagent kits; "certain documents that describe the chemical structures of the nucleotides used in CGI's sequencing reagent kits around the time of 2013-2014;" "some versions of the 'recipe' files used in certain of the MGI and BGI sequencers;" and "some documents . . . that describe the development of polymerases (and their amino acid sequences) for use in the BGI and MGI sequencing reagent kits since 2014." Xu Decl. ¶¶ 8-11. He asserts that he cannot be certain the documents he has are the most up-to-date, and that he has no way of knowing which polymerases were used in kits sold in Denmark, Germany, Switzerland, or Turkey. *Id.* But the documents seem likely responsive to the subpoenas; Xu essentially can't be sure whether they would ultimately be admissible (or at least he claims he can't), but that's not the benchmark of discoverability. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Also, Maria Hansen, Senior Manager, Financial Analyst and Costing for both CGI and MGI Americas stated, "with respect to the documents identified in Request Nos. 1-2 in the subpoenas to CGI and MGI Americas," that she has "access to MGI Tech financial data from June 2, 2016 to July 31, 2018 because MGI Tech shared the [CGI] Oracle database during this timeframe." Decl. of Maria Hansen in Supp. of Mot. to Quash ¶ 10, ECF No. 23. Requests numbers 1 and 2 relate to the "sales of BGI Sequencers and Sequencing Reagent Kits in Denmark, Germany, Switzerland and Turkey," and "the models of BGI Sequencers and Sequencing Reagent Kits" offered for sale in those countries. ECF No. 1. Hansen similarly asserts that she "could not attest to its accuracy or completeness" of that information, *id.*, but again, that is not the standard for discovery.

Also, looking again to Respondents' initial disclosures, they listed among "individuals likely to have or discoverable information," Avanindra Chaturvedi, "Chief Financial Officer, MGI

Tech, MGI Americas, and Complete Genomics," as having knowledge of "financial information for MGI Tech, MGI Americas, and CGI." ECF No. 30-6; *see also* Wang Decl. ¶¶ 18-19, Exs. O, P (Statements of Information filed with Secretary of State of California listing Chaturvedi as the Secretary and Chief Financial Officer for both CGI and MGI Americas). Respondents also listed Radoje Drmanan, Chief Scientific Officer, MGI Tech and CGI, who evidently invented one of Respondents' patents, and who has knowledge on "research and development for MGI/BGI sequencers and reagent kits" and "technology claimed in Illumina's asserted patents." ECF No. 30-6. And Roy Tan, who Respondents listed as General Manager for MGI Americas, said in an interview with GenomeWeb sometime in early 2019 that the company was "assembling commercialization teams in North America and Europe and [was aiming] to be ready to sell sequencing instrumentation in [those] markets" by the end of 2019. ECF No. 30-10.

Respondents' concerns about producing documents located outside the United States is largely anachronistic, as Respondents themselves disclosed that documents and information are often located in electronic storage, which can be accessed with equal effort from any location. Also, Respondents contend that much of the information IC seeks is maintained by "European entities," Mot. 17, so the burden concern is not pressing: if documents are maintained by different entities and Respondents don't have control over those entities, Respondents don't need to produce them. But for documents that are in Respondents' possession, custody or control, the Court declines to limit production to documents physically located within the United States. *See In re del Valle Ruiz*, 939 F.3d 520, 523 (2d Cir. 2019) ("We hold that there is no per se bar to the extraterritorial application of § 1782, and the district court may exercise its discretion as to whether to allow such discovery."); *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (because § 1782 says that discovery is to be produced pursuant to the Federal Rules of Civil Procedure, and those rules allow for extraterritorial document productions, it follows that section 1782 allows for that too).[2]

---

[2] So far as the undersigned is aware, the Ninth Circuit has not ruled on whether a § 1782 application may require extraterritorial document productions. *See Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1079-80 (9th Cir. 2002) (noting the issue but not deciding it).

To summarize, it may very well be true that Respondents do not have possession of, or access to, all documents or information IC seeks.  But Respondents' own disclosures and declarations, along with other evidence, suggest they have some of them.  Their responsibility to produce documents and information in their possession didn't end just because CGI and MGI Tech swapped places after this § 1782 application was filed and Respondents were on notice of it.

Notwithstanding, declarations of BGI Americas employees, which Respondents have filed, *see* ECF Nos. 23-25, raise significant doubt that BGI Americas has documents or access to information responsive to Requests 1 through 3.[3]  BGI Americas was never a parent company of MGI Tech and is apparently just the U.S.-based counterpart of its European sister entities.  The story is slightly different for CGI and MGI Americas: Hansen is employed by CGI and MGI Americas, and stated she has access to MGI Tech financial data for at least June 2, 2016 to July 31, 2018, which she asserts is relevant to Requests 1 and 2; and Chaturvedi, CFO of MGI Tech, MGI Americas, and CGI is, according to Respondents' disclosures, likely to have financial information for MGI Tech and CGI.  The Court will limit the BGI Americas subpoena and quash Requests 1 through 3.

### b.    IC's Subpoena to CGI for Testimony

IC also seeks to take a deposition of CGI under Rule 30(b)(6).  As a general matter, depositions of corporate officers are standard practice in U.S. civil litigation and are not burdensome.  The Rules of Civil Procedure ensure that the length, time and place of the deposition do not impose an undue burden. *See* Fed. R. Civ. P. 45(d)(1).  Respondents argue that they should not have to designate a CGI witness to testify as to the sales or financial information of its European affiliates because that information is beyond its control.  However, Respondents also acknowledge that CGI "does have technical information regarding the sequences and reagent kits it has worked on . . . ."  Reply at 11.  They assert that they "cannot verify whether this information is accurate, or reflects the sequencers or reagents kits" manufactured or sold in Denmark, Germany, Switzerland, or Turkey, *id.*, but again, that is not the standard for discovery; the

---

[3] The Requests are the same across the subpoenas.

question is whether the discovery is "reasonably calculated to lead to the discovery of admissible evidence." Also, Drmanac is or was Chief Scientific Officer of MGI Tech and CGI before MGI Tech and CGI swapped places, and Chaturvedi is or was Chief Financial Officer of both. CGI has failed to explain why it cannot designate those two as witnesses, other than to again assert that Drmanac can't be sure if the information he has is accurate. Reply at 11.

### c. Respondents' Confidential Information

Finally, Respondents object that the courts in the foreign jurisdictions are unable to protect their trade secrets and other confidential, proprietary information. Those jurisdictions are not without procedures for protecting confidential information. For example, Danish courts have discretion to grant a party's request for in camera proceedings in order to address confidentiality concerns, including in relation to business secrets. Rebuttal Decl. of Anders Valentin ("Valentin Rebuttal Decl.") ¶ 2, ECF No. 33. IC's Danish counsel opined that, while there is not total certainty that a court will grant such a request, Danish courts are likely to grant a request made jointly when all parties agree. *Id.* ¶ 3. In Germany, court files are kept confidential and there is no general public right of access. Rospatt Decl. ¶ 27. A third party can request an inspection of records, *id.*, but a German infringement court will not grant to third parties access to trade secrets if at least one party objects to the request, identifies a trade secret, and shows probable cause that there is a trade secret, Rebuttal Decl. of Max V. Rospatt ¶ 9, ECF No. 31. If all parties to an action oppose the inspection request, a court will only grant it if the third party has a "justified legal interest in knowing the contents of the file." Rospatt Decl. ¶ 27. The Swiss Code of Civil Procedure provides that a court "shall take appropriate measures to ensure that taking evidence does not infringe the legitimate interests of any parties or third party, such as business secrets." Decl. of Thierry Calame ("Calame Decl.") ¶ 18, ECF No. 19 (Switzerland); Hess Rebuttal Decl. ¶¶ 6-7. IC's Swiss counsel, who is an elected associate judge on the Swiss Federal Patent Court, Hess Decl. ¶ 1, opined that the language "shall take" means "a court must order appropriate measures if the legitimate interests of a party so require[,]" Hess Rebuttal Decl. ¶ 6. Also, while a Swiss court has some discretion to decide on requests for protective measures and measures are not guaranteed, Calame Decl. ¶ 18, if the parties agree on certain measures, the Federal Patent

Court "would in all likelihood adopt those measures." Hess Rebuttal Decl. ¶ 7. And a Turkish court has discretion to grant confidentiality protections upon the request of parties to the litigation. Decl. of Okan Çan ¶ 13, ECF No. 20; Rebuttal Decl. of Ozge Atilgan ("Atilgan Rebuttal Decl.") ¶ 5 ("a Turkish court is likely to grant confidentiality protection upon a joint request by the parties"), ECF No. 34.

IC's foreign counsel have all represented to this Court a willingness to cooperate in the foreign proceedings in requesting measures to ensure the confidentiality of information obtained through its § 1782 application. Valentin Rebuttal Decl. ¶ 3; Hess Rebuttal Decl. ¶ 7; Rospatt Rebuttal Decl. ¶ 9; Atilgan Rebuttal Decl ¶ 5. The Court orders IC to do so. The Court understands that it cannot guarantee the full protection of Respondents' trade secrets and other confidential proprietary information. But the nature of § 1782 is that evidence produced by it invariably ends up before a foreign proceeding; denying discovery because a foreign court does not have identical protections to a U.S. court would frequently defeat the purpose of § 1782. *See Intel*, 542 U.S. at 263 ("Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in comparative analysis . . . . Comparisons of that order can be fraught with danger."); *id.* at 263 n. 15 ("[C]omparisons of [different legal] systems is slippery business . . . ."). Finally, this Court presumes that courts in these foreign jurisdictions also regard with importance the proprietary interests of parties appearing before them and the integrity of the confidentiality of evidence submitted to them.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Respondents' motion to quash the § 1782 subpoenas. However, the Court limits the subpoena to BGI Americas to Requests 4 through 13.

The Court orders IC to cooperate in making requests to the foreign tribunals, including, if necessary, requests for protective orders or for confidential proceedings, to ensure the confidentiality of information obtained through this application.

Finally, the Court orders the parties to meet and confer concerning an appropriate protective order that will prevent IC from using in U.S. civil litigation the documents and information it obtains through this § 1782 application. Within seven days the parties shall submit

20

a jointly agreed proposed protective order or competing proposed protective orders and a five-page joint discovery letter brief setting forth each side's arguments.

**IT IS SO ORDERED.**

Dated: February 19, 2020

THOMAS S. HIXSON
United States Magistrate Judge