**Pierce Bainbridge Beck Price & Hecht LLP**
Theodore J. Folkman (*pro hac vice*)
One Liberty Square
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**
Minyao Wang (*pro hac vice*)
277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

**Weil, Gotshal & Manges LLP**
Edward R. Reines (SBN 135960)
edward.reines@weil.com
Derek C. Walter (SBN 246322)
derek.walter@weil.com
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

*Attorneys for Applicant Illumina Cambridge Ltd.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re APPLICATION OF ILLUMINA CAMBRIDGE LTD. for issuance of subpoenas under 28 U.S.C. § 1782 | Civ. A. No.: 3:19-mc-80215-WHO (TSH) **Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge** Hearing Date: April 8, 2020 Time: 2:00 PM Location: Courtroom 2 17th Floor |

1

2                              <u>TABLE OF CONTENTS</u>

3 INTRODUCTION ...................................................................................................1

4 FACTS...............................................................................................................2

5

6 ARGUMENT .......................................................................................................4

7        A.    STANDARD OF REVIEW ...........................................................................4

8        B.    THE INTEL FRAMEWORK. ........................................................................5

9        C.    THE RESPONDENTS ARE NOT PARTIES TO THE FOREIGN ACTIONS, AND THE
10              EVIDENCE SOUGHT CANNOT BE OBTAINED IN THE FOREIGN ACTIONS. ..................6

11       D.    ILLUMINA CAMBRIDGE IS NOT CIRCUMVENTING FOREIGN PROOF-GATHERING
12              RESTRICTIONS. ......................................................................................9

13       E.    THE DISCOVERY IS NOT BURDENSOME. ....................................................13

14              1.     CGI Controls MGI Tech's Documents....................................13

15              2.     The Respondents' Confidentiality Argument Is Meritless. .......16

16       F.    THE COURT SHOULD ORDER IMMEDIATE PRODUCTION OF THE RESPONSIVE
17              DOCUMENTS. ......................................................................................18

18 CONCLUSION ....................................................................................................19

19

20

21

22

23

24

25

26                                        i

27 _____

28 **Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter
   Referred to Magistrate Judge**

**Cases**

*Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*,
2017 WL 4647753 (N.D. Cal. Nov. 16, 2017) .................................................................4, 6, 7

*Matter of a Petition for Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*,
2015 WL 7258483 (D. Nev. Nov. 17, 2015) ....................................................................5

*In re Accent Delight Int'l*,
2019 U.S. App. LEXIS 33785 (2d Cir. Nov. 13, 2019) ...................................................9

*In re Accent Delight International Ltd.*,
2018 WL 2849724 (S.D.N.Y. June 11, 2018) ..................................................................9

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
793 F.3d 1108 (9th Cir. 2015) .......................................................................................16

*In re Ex Parte Apple, Inc.*,
2012 WL 1570043 (N.D. Cal. May 2, 2012) ..................................................................16

*In re Ex Parte Application of Ambercroft Trading Ltd.*,
2018 WL 2867744 (N.D. Cal. June 11, 2018) ................................................................11

*In re Ex Parte Application of Jommi*,
2013 WL 6058201 (W.D.N.C. Nov. 15, 2013) ...............................................................10

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ...............................................................13

*Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*,
171 F.R.D. 135 (S.D.N.Y. 1997) ..............................................................................15, 16

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992) .........................................................................................18

*In re Broadcom Corp.*,
2019 WL 4978849 (W.D. Wash. Oct. 8, 2019) ..............................................................11

*In re Cal. State Teachers' Ret. Sys.*,
2017 WL 1246349 (D.N.J. Apr. 3, 2017) .........................................................................7

ii

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  2013 WL 183944 (N.D. Cal. Jan. 17, 2013)............................................................12, 13

*Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*,
  2008 WL 1995305 (W.D. Pa. May 6, 2008) ..................................................14

*Euromepa S.A. v. R. Esmerian*, Inc.,
  51 F.3d 1095 (2d Cir. 1995) ...............................................................11

*In re Gilead Pharmasset LLC*,
  2015 WL 1903957 (D. Del. Apr. 14, 2015) ..................................12, 16, 17

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
  881 F. 3d 550 (7th Cir. 2018) ..............................................................17

*In re Int'l Judicial Assistance from the Fourth Civil Court for Intellectual and
  Industrial Property Rights In Istanbul*,
  2015 U.S. Dist. LEXIS 81550 (N.D. Cal. Oct. 16, 2017) ....................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ............................................................*passim*

*In re IPCom GmbH*,
  2014 WL 12772090 (N.D. Cal. Apr. 10, 2014)................................................8, 9

*In re JSC Raiffeinsenbank*,
  2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ...............................................10

*In re Khrapunov*,
  2018 WL 3609045 (N.D. Cal. July 27, 2018) ...........................................4

*In re Mahltig Management- und Beteiligungsgesellschaft mbH*,
  2018 WL 2770894 (N.D. Cal. July 11, 2018) ...........................................4

*In re Macquarie Bank Ltd.*,
  2014 WL 7706908 (D. Nev. June 4, 2014) ...........................................11

*In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*,
  686 F.3d 1115 (9th Cir. 2012) ...........................................................18

*In re NTL, Inc. Secs. Litig.*,
  244 F.R.D. 179 (S.D.N.Y. 2007)...........................................................14

*In re O'Keeffe*,
  2015 WL 1308546 (D. Nev. Mar. 24, 2015) ...........................................11

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter
Referred to Magistrate Judge**

*In re O'Keeffe*,
  2015 WL 5039723 (D.N.J. Aug. 26, 2015) .................................................................16

*Palantir Techs., Inc. v. Abramowitz*,
  2019 WL 6251338 (N.D. Cal. Nov. 22, 2019) ...........................................................17

*In re Pioneer Corp.*,
  2018 WL 2146412 (C.D. Cal. May 9, 2018) .........................................................17, 18

*In re PJSC Uralkali*,
  2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ...........................................................11

*In re Procter & Gamble Co.*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) ........................................................................9

*In re Qualcomm Inc.*,
  2018 WL 3845882 ....................................................................................................8, 12

*In re JSC Raiffeinsenbank*,
  2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ...........................................................8, 12

*In re Samsung Electronics Co.*,
  2013 WL 12335833 (N.D. Cal. Jan. 23, 2013) .............................................................12

*San Jose Mercury News, Inc. v. United States Dist. Court*,
  187 F.3d 1096 (9th Cir. 1999) ....................................................................................18

*Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC*,
  2016 U.S. Dist. LEXIS 129176 (N.D. Cal. September 21, 2016) ..................................6

*In re Veiga*,
  746 F. Supp. 2d 8 (D.D.C. 2010) ................................................................................11

**Statutes**

28 U.S.C. § 1782 ...........................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 72(a) ........................................................................................................4

Fed. R. Civ. P. 72(b) ........................................................................................................5

Local Rule 3-15 ..............................................................................................................13

iv

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter
Referred to Magistrate Judge**

**INTRODUCTION**

This is a straightforward application for discovery in aid of foreign proceedings under 28 U.S.C. § 1782 ("the Application"). The Applicant, Illumina Cambridge Ltd. ("Illumina Cambridge"), the UK-based affiliate of Illumina, Inc., a California corporation, brought the proceedings against Complete Genomics, Inc., ("Complete Genomics"), BGI Americas Corp. ("BGI Americas") and MGI Americas, Inc. ("MGI Americas" and together with Complete Genomics and BGI Americas, "the Respondents") to obtain evidence to use in patent infringement actions pending in Germany, Denmark, Switzerland and Turkey (the "Foreign Actions"). The Respondents are part of the BGI Group, a Chinese conglomerate. After full briefing and argument, Magistrate Judge Thomas Hixson issued a 21-page decision denying the Respondents' motion to quash the subpoenas. After entry of the order, the parties negotiated and agreed to a protective order which the Court then entered. Rather than produce documents— including documents that they or their affiliates likely *already* produced in the parallel US patent infringement cases pending before this Court (Case Nos. 20-cv-01465 and 19-cv-03770)—or attend depositions, the Respondents chose further delay, jeopardizing Illumina Cambridge's ability to submit evidence in two of the Foreign Actions.

This motion for review, filed for the transparent purpose of delaying discovery, should fail. It misconstrues § 1782. The Respondents claim that Illumina Cambridge must use foreign discovery procedures before turning to § 1782. But all that the statute requires is that Illumina Cambridge must not circumvent foreign restrictions. And all that Illumina Cambridge needs to show is that that the foreign jurisdictions have not said or done anything to suggest that Illumina Cambridge should not or cannot seek discovery in the United States.

1

The Respondents double down on an unconventional theory that Magistrate Judge Hixson rightly rejected (ECF 42 at 13:15-16:4). A U.S. parent with a Chinese subsidiary should not be permitted to modify its corporate structure to divest control of documents sought by an adversary *after* having notice of a subpoena. Holding otherwise would flout judicial authority.

The Respondents also claim that the foreign courts will not protect confidential information. Magistrate Judge Hixson rejected this argument (ECF 42 at 19:6-20:19) because it contradicts the foreign lawyers' declarations submitted by the parties and contradicts other decisions holding that the protections in the relevant countries are adequate. The Respondents' position is particularly unjustified because they negotiated and agreed to a protective order, which the parties jointly proposed to the Court and which Magistrate Judge Hixson adopted.

The Respondents further rehash an unorthodox argument that Magistrate Judge Hixson correctly rejected. They argue, against basic rules of American discovery, that they can withhold responsive documents simply because such documents may be—in their self-serving judgment—out of date or otherwise inaccurate.

The Court should therefore affirm Magistrate Judge Hixson's order without delay and order the Respondents to produce documents and attend depositions.

## <u>FACTS</u>

We have explained the details and procedural posture of the Foreign Actions elsewhere. (ECF 30 at 4-7). All are patent infringement actions in which Illumina Cambridge asserts, in summary and in general terms, that affiliates of BGI infringe its patents by importing, offering, or selling products that contain nucleotides covered by its patents or that use buffers containing ascorbic acid in a way that is covered by its patents. There are two important deadlines

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

approaching in the Foreign Actions. First, in the Swiss action, Illumina Cambridge's deadline to file its statement of reply is April 24, 2002 (Third Hess Decl. ¶ 2, filed herewith). Except with the consent of the defendant or unexpected and exceptional reasons, Illumina Cambridge must submit new facts and evidence by that date. (*Id*.). After that date, Illumina Cambridge will be able to submit new evidence only if it came into existence after that date, or if it could not have been submitted despite Illumina Cambridge's reasonable diligence. (*Id*. ¶ 3). There is apparently no decision by the Swiss Federal Supreme Court on the criteria for judging reasonable diligence in the context of § 1782 proceedings in aid of Swiss litigation. (*Id*.).

Second, in the Turkish Action, the preliminary examination hearing is scheduled for June 29, 2020. (Third Karakulak Decl. ¶ 2, filed herewith). The parties can freely submit evidence before that date. They can also submit evidence for a two-week period following the hearing, if they referred to the evidence in their submissions. (*Id*.). But thereafter, a party cannot submit additional evidence as of right. Instead, evidence can be submitted only if the judge determines that the evidence is admissible under Article 145 of the Code of Civil Procedure, which allows new evidence only if it is not submitted with the intention of delaying the proceedings or if the unavailability of the evidence earlier did not result from the fault of the party seeking to offer it. (*Id*. ¶ 3).

There are also three lawsuits in the United States between Illumina Cambridge or its parent, Illumina, Inc., and one or more of the Respondents, including (as noted above) two patent infringement cases before this Court and a case in the District of Delaware (Case No. 19-cv-00970).

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

Illumina Cambridge filed its Application more than six months ago. The Respondents had notice of the Application since early September 2019, and had two months to oppose it, but they did not do so. Magistrate Judge Hixson granted the Application on November 7, 2019, and the subpoenas were served on the Respondents the next day. Approximately a month later, on December 2, the Respondents moved to quash.

Magistrate Judge Hixson held a hearing on February 13, 2020. On February 19, 2020, he entered a comprehensive, 21-page order denying the motion to quash (the decision did limit on document subpoena in a minor way, and Illumina Cambridge has not sought review of that aspect of the decision). The parties submitted a jointly agreed upon protective order on March 2, 2020. Two days later, the Respondents filed this motion seeking review of Judge Hixson's order.

## **ARGUMENT**

A.    Standard Of Review

The prevailing rule in this District and nationwide is that a magistrate judge's order on a motion to vacate or to compel in a § 1782 case should be reviewed under the highly deferential "clear error" standard. *In re Khrapunov*, 2018 WL 3609045, at * (N.D. Cal. July 27, 2018) ("There is a consensus among district courts that the clear error standard is appropriate."); *In re Mahltig Management- und Beteiligungsgesellschaft mbH*, 2018 WL 2770894, at *2 (N.D. Cal. July 11, 2018) (applying clear error standard); *Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *2 (N.D. Cal. Nov. 16, 2017) ("GlobalFoundries has not cited, and this Court has not discovered, a single case within the Ninth Circuit holding that a magistrate judge's order on a § 1782 application is a dispositive ruling subject to *de novo* review"). Because section 1782 applications are "ancillary by their

nature" and do not "dispose of … underlying claims or defenses," they are not dispositive for review purposes. *Matter of a Petition for Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, 2015 WL 7258483, at *3 (D. Nev. Nov. 17, 2015). Magistrate Judge Hixson treated this as a non-dispositive matter. He issued a decision rather than a report and recommendation. *See* Fed. R. Civ. P. 72(a) (magistrate judge issues "a written order stating the decision" in non-dispositive matters); Fed. R. Civ. P. 72(b) (magistrate judge issues a "recommended disposition, including, if appropriate, proposed findings of fact" in dispositive matters).

Because the Respondents take the position that this Court should review Magistrate Judge Hixson's decision *de novo,* Illumina Cambridge respectfully requests that the Court decide *both* that there was no clear error *and* that on *de novo* review, Magistrate Judge Hixson's decision is correct. The decision below should be affirmed on either standard, and Illumina Cambridge wants to avoid a needless battle about the standard of review that cannot affect the outcome.

   B.    The *Intel* Framework.

There is no question that all the statutory prerequisites for a § 1782 application are met in this case. The question, therefore, is whether the Court should exercise its discretion to order discovery under the statute. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

In exercising its discretion, the Court should consider four factors: (1) whether the person or entity from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, and the character of the proceedings underway abroad and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

(3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Id*. at 264. The Respondents unsuccessfully argued the third and fourth factors before Magistrate Judge Hixson. Now they argue the *first,* third and fourth factors. Their argument is meritless.

C. <u>The Respondents Are Not Parties To The Foreign Actions, And The Evidence Sought Cannot Be Obtained In the Foreign Actions.</u>

Complete Genomics, BGI Americas and MGI Americas are not parties to any of the Foreign Actions. The undisputed fact that Respondents are not parties to the foreign proceedings favors approval of the Application. *In re Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753 at *4.

When they were before Magistrate Judge Hixson, the Respondents conceded that this *Intel* factor favored discovery. *See* Docket No. 17 (failing to argue this *Intel* factor). The Court should not consider arguments to the contrary now. *See Shenzhenshi Haitiecheng Sci. & Tech. Co. v. Rearden LLC,* 2016 U.S. Dist. LEXIS 129176, at *7-8 (N.D. Cal. September 21, 2016) ("the ordinary attitude should be to refuse to entertain objections based on legal arguments that were not presented to the magistrate judge.").

In any event, the Respondents' belated argument under the first *Intel* factor has no merit. It appears that Latvia MGI Tech SIA (defendant in the German and Swiss Actions), MGI Tech Co., Ltd.("MGI China") (defendant in the German action), BGI Europe A/S (defendant in the Danish Action), and the three Respondents are ultimately owned by a single Chinese corporate parent and thus may be affiliates, and that Genoks Teknoloji Saglik Bili§im Turizm Hiz. Endustriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti (defendant in the

Turkish Action) is a distributor in Turkey for the Chinese parent, BGI. Courts sometimes ask whether the target of the discovery application is related to a party in the underlying foreign proceeding on the assumption that the foreign court could compel discovery from the subsidiaries and affiliates of a party. But that expectation does not apply to foreign jurisdictions that do not have effective pretrial discovery procedures. As Magistrate Judge Hixson found, in the German, Swiss, Turkish and Danish litigation systems, "there is no right to pretrial discovery comparable to that in the United States." (ECF 42 at 6-7 (citing *Intel*, 542 U.S. at 261 n. 12)). This conclusion is buttressed by the declarations submitted by the foreign lawyers on both sides of the case. There is no disagreement on this point. For example:

- German discovery procedures are of limited utility to Illumina Cambridge, Rospatt Rebuttal Decl., ECF 31, ¶¶3-8. The Respondents' own German expert does not claim that Illumina Cambridge is in a position now to provide the level of specificity about the documents sought in order to be entitled to discovery, Feldges Decl., ECF 21, ¶16.

- In Turkey, the parties agree that compliance with a Turkish discovery order is optional and Illumina Cambridge has no recourse if the target of discovery refuses to produce information. Atilgan Rebuttal Decl., ECF 34, ¶¶3-4; Can Decl., ECF 20, ¶8.

- In Denmark, there is no dispute that compliance with a discovery order is voluntary. Valentin Rebuttal Decl., ECF 33, ¶¶3-4; Bording Decl., ECF 18, ¶18.

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

- In Switzerland, there is no dispute that Illumina Cambridge cannot currently meet the standard for discovery. Hess Rebuttal Decl., ECF 32, ¶¶3-4; Calame Decl., ECF 19, ¶¶13-16.

The key issue under this prong is whether the "evidence, available in the United States, may be unobtainable absent" an order by this court under Section 1782. *In re Application Pursuant to 28 U.S.C. § 1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *4 (quoting *Intel*, 542 U.S. at 264); *In re Cal. State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (D.N.J. Apr. 3, 2017) (finding the first factor weighed in favor of granting application because "even if the documents [and German defendant] are located in Germany, the German court will not order the documents to be produced if the applicant does not provide detailed information on the documents"). Here, as Magistrate Judge Hixson has determined, the evidence Illumina Cambridge seeks is not available to Illumina Cambridge except via discovery in the United States. This is just a consequence of the unavailability of practical discovery in the foreign jurisdictions. As Magistrate Judge Hixson found, the first *Intel* factor would not weigh against discovery even if the target of the subpoena were itself a party to a Foreign Action due to the lack of effective foreign discovery procedures. (ECF 42 at 7:4-5) ("Thus, even if Respondents were participants, the discovery IC seeks might not be available in any event."); *see also In re IPCom GmbH*, 2014 WL 12772090, at *2 (N.D. Cal. Apr. 10, 2014) (factor neutral because of lack of discovery procedures in Germany, even though Apple, the target of the subpoena, was a defendant in the German action); *In re Qualcomm Inc.*, 2018 WL 3845882, at *3 (noting that courts have found this to be a neutral factor in German cases in light of German discovery law).

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

1   The first *Intel* factor therefore favors discovery —or is at least neutral—when the target of the

2   subpoena is an affiliate of (or arguably under the control of) the party to a Foreign Action.

3       D.      <u>Illumina Cambridge Is Not Circumventing Foreign Proof-gathering Restrictions.</u>

4       A bad faith attempt "to circumvent foreign proof-gathering restrictions or other policies

5   of a foreign country or the United States" weighs against approval of an application under §

6
7   1782. *Intel*, 542 U.S. at 264-65. The Respondents argue that the circumvention factor weighs

8   against the subpoenas, but their argument distorts the meaning of circumvention. Circumvention

9   does not depend on the discoverability of the evidence under foreign law or the extent to which

10  the applicant has resorted first to foreign discovery tools. Circumvention exists only when an

11  applicant seeks discovery "that cannot be obtained because the foreign jurisdiction prohibits the

12  discovery of those documents." *In re Accent Delight Int'l*, 2019 U.S. App. LEXIS 33785, at *8

13
14  (2d Cir. Nov. 13, 2019). In other words, the circumvention factor weighs against the subpoenas

15  only if sustaining them would "undermine a specific policy of a foreign country or the United

16  States." *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004). *In re*

17  *Procter & Gamble Co.* is on point. That court gave an example of what would constitute

18  circumvention: a specific request by the German government that the court deny an application

19  under § 1782 to avoid compromising an ongoing German criminal investigation. *Id.* at 1116 n.3.

20  None of the relevant foreign governments have taken such a position here. And the foreign

21  expert declarations Illumina Cambridge has submitted to Magistrate Judge Hixson show that

22
23  none of the foreign jurisdictions prohibits the introduction of evidence obtained from a 1782

24  proceeding. *See* Van Rospatt Decl., ECF 4, ¶ 25; Hess Decl., ECF 5, ¶22; Valentin Decl., ECF 6,

25

26

27                                                          **9**

1    ¶ 22; Karakulak Decl., ECF 7, ¶25. The Respondents' foreign attorney declarations fail to rebut

2    this point.

3         Moreover, Illumina Cambridge's position is consistent with caselaw on circumvention.

4    *See*, *e.g.*, *In re IPCom GMBH & Co.*, 2014 WL 12772090, at *3 (use of § 1782 does not

5    circumvent German restrictions because "U.S. courts have routinely granted applications under

6    Section 1782 for discovery of evidence to be used in German proceedings."); *In re Ex Parte*

7    *Application* of *Jommi*, 2013 WL 6058201, at *4 (W.D.N.C. Nov. 15, 2013) (no circumvention of

8    Swiss law); *In re Accent Delight International Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11,

9    2018) (no circumvention of Swiss law); *In re Int'l Judicial Assistance from the Fourth Civil*

10   *Court for Industrial and Intellectual Property Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550,

11   at *4 (N.D. Cal. Oct. 16, 2017) (no circumvention of Turkish discovery law). Illumina

12   Cambridge's unrebutted declarations and prior decisions should be the end of the Court's

13   circumvention inquiry.

14        The Respondents misconstrue the law on circumvention. There is no requirement under §

15   1782 that the evidence be discoverable under foreign law. *Intel*, 542 U.S. at 261-63. An applicant

16   is not guilty of circumvention merely because it seeks more discovery under U.S. law than the

17   foreign law would permit, *see In re JSC Raiffeinsenbank*, 2016 WL 6474224, at *6 (N.D. Cal.

18   Nov. 2, 2016). As Magistrate Judge Hixson explained, if that were not the rule, then § 1782

19   would be of limited value in connection with the great majority of countries—including the

20   countries at issue here—that do not allow much, if any, pre-trial discovery. (ECF 55 at 17:25-

21   18:4) ("I don't mean to be glib, but given that the rest of the world has a very different view on

22   discovery than the United States does, if the standard were discoverability, I'd have to deny

10

Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge

1    ¶ 22; Karakulak Decl., ECF 7, ¶25. The Respondents' foreign attorney declarations fail to rebut

2    this point.

3         Moreover, Illumina Cambridge's position is consistent with caselaw on circumvention.

4    *See*, *e.g.*, *In re IPCom GMBH & Co.*, 2014 WL 12772090, at *3 (use of § 1782 does not

5,6  circumvent German restrictions because "U.S. courts have routinely granted applications under

     Section 1782 for discovery of evidence to be used in German proceedings."); *In re Ex Parte*

7,8  *Application* of *Jommi*, 2013 WL 6058201, at *4 (W.D.N.C. Nov. 15, 2013) (no circumvention of

9    Swiss law); *In re Accent Delight International Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11,

10   2018) (no circumvention of Swiss law); *In re Int'l Judicial Assistance from the Fourth Civil*

11   *Court for Industrial and Intellectual Property Rights In Istanbul*, 2015 U.S. Dist. LEXIS 81550,

12   at *4 (N.D. Cal. Oct. 16, 2017) (no circumvention of Turkish discovery law). Illumina

13   Cambridge's unrebutted declarations and prior decisions should be the end of the Court's

14,15 circumvention inquiry.

16        The Respondents misconstrue the law on circumvention. There is no requirement under §

17   1782 that the evidence be discoverable under foreign law. *Intel*, 542 U.S. at 261-63. An applicant

18   is not guilty of circumvention merely because it seeks more discovery under U.S. law than the

19   foreign law would permit, *see In re JSC Raiffeinsenbank*, 2016 WL 6474224, at *6 (N.D. Cal.

20   Nov. 2, 2016). As Magistrate Judge Hixson explained, if that were not the rule, then § 1782

21,22 would be of limited value in connection with the great majority of countries—including the

23   countries at issue here—that do not allow much, if any, pre-trial discovery. (ECF 55 at 17:25-

24   18:4) ("I don't mean to be glib, but given that the rest of the world has a very different view on

25   discovery than the United States does, if the standard were discoverability, I'd have to deny

26

27                                          **10**

28   **Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter**
          **Referred to Magistrate Judge**

every 1782 application"). The countries with limited discovery are precisely the countries where § 1782 is useful. "Where foreign countries have adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782, [the circumvention factor] militates *in favor* of granting § 1782 relief." *In re Macquarie Bank Ltd.*, 2014 WL 7706908, at *7–8 (D. Nev. June 4, 2014) (emphasis supplied).

Nor does the law support the Respondent's argument about the timing of discovery in the Foreign Actions. The Respondents claim that Illumina Cambridge's § 1782 application comes too early. But it is well settled that there is *no* requirement of exhaustion of efforts to obtain the evidence in the foreign case before resorting to § 1782. *In re Broadcom Corp.*, 2019 WL 4978849, at *3 (W.D. Wash. Oct. 8, 2019) ("While it is possible that Applicants could have requested some of this information in the German courts, they were not obligated to do so"); *In re PJSC Uralkali*, 2019 WL 291673, at *5 (W.D. Wash. Jan. 23, 2019) ("[T]he court emphasizes that an applicant need not exhaust, or even commence, its discovery efforts in the foreign proceeding before resorting to § 1782."); *In re O'Keeffe*, 2015 WL 1308546, at *4 (D. Nev. Mar. 24, 2015) (collecting cases); *see also Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1098 (2d Cir. 1995) ("Relying on the plain language of the statute, this Court has also refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that would force litigants to" seek discovery outside the United States first); *In re Veiga*, 746 F. Supp. 2d 8, 24 (D.D.C. 2010) ("[T]he assertion that Applicants have not previously attempted to obtain comparable discovery" in the foreign tribunal "is simply irrelevant to the Court's analysis" because "Section 1782(a) does not incorporate an exhaustion requirement, and an applicant is not required to first seek discovery from the foreign tribunal.").

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

There are upcoming deadlines for submission of evidence in at least two of the Foreign Actions, but even if the actions were all still at a very early stage, that fact would not weigh against the use of § 1782. Given the time it can take to obtain evidence under § 1782, particularly where, as here, the Respondents are clearly interested in withholding or delaying the actual production of evidence, bringing an application at an early stage of the foreign litigation is not just prudent but potentially critical. Indeed, it is not necessary even to wait until an foreign action has commenced: under § 1782 a party can seek leave to take discovery in the U.S. even before filing the foreign action. *Intel,* 542 U.S. at 259 (Section 1782 can be invoked as long as a foreign proceeding is "within reasonable contemplation"); *In re Ex Parte Application of Ambercroft Trading Ltd.*, 2018 WL 2867744, at *3 (N.D. Cal. June 11, 2018) (granting § 1782 application for contemplated proceeding where parties had only exchanged correspondence about a potential proceeding).

The cases the Respondents cite for the proposition that Illumina Cambridge is required to obtain evidence using foreign discovery procedures first are inapposite. In *In re Samsung Electronics Co.*, 2013 WL 12335833, at *4 (N.D. Cal. Jan. 23, 2013), the applicant had already asked the foreign court for discovery, and the U.S. court was concerned about the possibility that the foreign court would deny the request, which would of course raise classic circumvention concerns if the U.S. judge were to grant the same request. In another case they cite, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013), the court held that a special master who took the view the respondents put forward here had not clearly erred. If the *CRT* decision stands for anything more than the holding that the special master's error was not sufficiently clear to be overturned by the district court, then it was

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

wrongly decided. One judge in this district applied *CRT* with approval only in an exceptional case where allowing U.S. discovery might have interfered with a Korean antitrust investigation and the foreign government expressly opposed the request—which, of course, is the kind of concern at the heart of the circumvention analysis. *See In re Qualcomm Inc.*,162 Supp. F.3d 1029, 1034, 1041 (N.D. Cal. 2016) (noting that the Korean government, as *amicus curiae*, opposed the § 1782 application). Another case relied by the Respondents, *In re Gilead Pharmasset LLC,* 2015 WL 1903957, at *4 (D. Del. Apr. 14, 2015), cited *CRT* for the proposition that "a perception that an applicant has 'side-stepped' less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis." This reasoning is wrong for the same reason it was wrong in *CRT.* But more to the point, it assumes that there were in fact available means to obtain the discovery in the Foreign Actions—an assumption that the declarations show to be false. Indeed, courts in this District have rejected the *very* case-law cited by the Respondents and declined to find circumvention when—as is here—discovery under § 1782 would not violate specific restrictions of a foreign forum. *See*, *e.g.*, *In re: Ex Parte Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *5 (N.D. Cal. Mar. 24, 2016) (rejecting *Gilead* and *CRT* and finding no circumvention due to lack German prohibitions on § 1782 discovery).

       E.      <u>The Discovery Is Not Burdensome.</u>

           1.     <u>CGI Controls MGI Tech's Documents.</u>

       The Respondents argue that CGI does not have possession, custody, or control of the documents in the possession of MGI Tech, a Chinese corporation. But CGI was the parent of MGI Tech until October 2019, about *a month after* the Respondents had notice of the subpoenas

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

in this Application. At that time, while on notice of the Application and the contents of the

subpoenas, CGI apparently engaged in a corporate restructuring transaction that allegedly

reversed the parent-subsidiary relationship such that MGI Tech is now the alleged parent of CGI.

The Respondents did not disclose the curiously timed transaction, in violation of Local Rule 3-

15, until Illumina Cambridge argued that as the parent entity, CGI had control of MGI Tech's

documents, under long-settled law interpreting the meaning of "control."[1] And after the belated

disclosure, the Respondents never submitted any evidence of the purported transaction or its

purpose, or of the supposed loss of control of MGI Tech's documents.

It is undisputed that the Respondents received notice of the proposed subpoenas in early

September 2019, more than a month before the supposed corporate reorganization took place.

(First Wang Decl., ECF 3 ¶ 4 & Ex. A; Second Wang Decl., ECF 30-1 ¶¶ 4-5 & Ex. A). But the

Respondents do not explain what steps they took to ensure that the documents which they knew

were the subject of this proceeding would remain in CGI's control, or indeed, whether they took

any steps. The Respondents had a duty to preserve the relevant documents when they were on

notice of litigation. *See In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195-98 (S.D.N.Y. 2007)

(where bankruptcy resulted in two new entities, one of which was the defendant's successor in

interest and the other received the assets and the relevant documents, and where the second entity

later destroyed the documents, the court held that the defendant should have retained copies of

the documents); *Centimark Corp. v. Pegnato & Pegnato Roof Management, Inc.*, 2008 WL

---

[1] The Respondents never submitted corporate disclosure statements in this action in violation of local court rules. On December 27, 2019, Illumina Cambridge filed an opposition that relied in part on the disclosure statements submitted by the Respondents in Case No. 19-cv-03770, ECF Nos. 21 to 25. Four days later, during the holiday period, the Respondents hastily filed amended disclosure statements in that case showing that the corporate relationship in question was purportedly reversed.

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

1995305, at *4-8 (W.D. Pa. May 6, 2008) (holding that a seller had relevant documents in its control even though it transferred them during litigation to a buyer which then allegedly lost or destroyed them); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 149 (S.D.N.Y. 1997) (a party "cannot be permitted to circumvent the rules of discovery by engaging in conduct during the litigation that eliminates its responsibility to produce responsive documents to an opposing party"). They acknowledged that duty to Magistrate Judge Hixson. (ECF 55 at 38:6-18). If the Respondents failed to preserve documents in their possession, custody, or control, their misconduct would be sanctionable. *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. at 197 (a litigant must ensure continued access to documents by negotiating an appropriate clause in the asset purchase agreement or be deemed guilty of spoliation).

Allowing a corporate reorganization to insulate documents from the reach of a federal court when the target of the subpoena is on notice of the subpoena flouts the courts' authority, respect for the rule of law, and fair play in the litigation process that is central to impartial administration of justice. Magistrate Judge Hixson properly recognized this imperative to instill respect for the law when he noted that "[a]s late as September 30, 2019, Respondents … in the related matter before this Court represented in their initial disclosures that they were 'in possession of]" categories of documents that are clearly within the scope of the subpoenas issued in this Application, including for example "information relating to the structure, characteristics, and operation of [their accused] products …" (ECF 42 at 14:9-13). The Magistrate Judge noted that "multiple BGI entities including Respondents had access to shared servers, databases, or drives having documents or information potentially responsive" to Illumina Cambridge's subpoenas. (*Id*. at 14-16). "It bears repeating," according to Magistrate Judge Hixson, that

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

"before October 2019, MGI Tech was" ultimately controlled by CGI, "meaning that CGI had legal control over [it] and the documents and information [it] possessed." (*Id*. at 15:17-20). "But Respondents are in litigation and have been aware of [Illumina Cambridge's] § 1782 application since September 2019, so they were under an obligation to preserve those documents and cannot escape their duty to produce them by shipping them overseas or wiping them from their drives." (*Id*. at 15:22-25) (citation omitted).

In sum, a party on notice of a subpoena has an obligation to preserve evidence. It cannot take steps to divest itself of the right or ability to produce the evidence through corporate shell games and then complain that the evidence cannot be produced. *Bank of N.Y.,* 171 F.R.D. at 149. The Court should affirm Magistrate Judge Hixson's firm rejection of the Respondents' argument.[2]

2.     <u>The Respondents' Confidentiality Argument Is Meritless.</u>

The Respondents argued below that the subpoenas are unduly burdensome because the foreign jurisdictions do not provide adequate protection for confidential information. Magistrate Judge Hixson rejected their argument. (ECF 42 at 19:7-20:19). Thereafter, the parties negotiated a protective order that will provide reasonable protection for the Respondents' alleged trade

---

[2] The Respondents also rehash a meritless burden argument that Magistrate Judge Hixson rejected out of hand. They claim that it is unduly burdensome to require them to produce otherwise responsive documents because the Respondents are unsure whether the documents are accurate or current. But as Magistrate Judge Hixson pointed out, this is not the proper test for discovery. (ECF 42 at 16). It is basic discovery law that a litigant cannot evade discovery by asserting that the information in its possession, custody, or control may be inaccurate or out of date. As Judge Hixson noted, "I hear a lot of discovery motions. This is the first time I've heard [this] argument." (ECF 55 at 9:23-10:5). Magistrate Judge Hixson likewise properly rejected the Respondents' belated efforts to retract statements made in their disclosure in the patent action before this Court admitting or implying that they do have responsive documents in their possession, custody, or control. (ECF 42 at 14-18). These efforts are too late and too cynical. Finally, as the Magistrate Judge concluded, deposition testimony is not burdensome because the Chief Scientific Officer and Chief Financial Officer for MGI Tech (who also have concurrent positions in Respondent CGI) are in this District. (ECF 42 at 18-19). The Respondents' argument that these witnesses may not have accurate or current knowledge was properly rejected by Magistrate Judge Hixson and should be rejected again here. *Id*.

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

1 secrets and confidential information. The Respondents assented to the order and jointly

2 submitted it with Illumina Cambridge to Magistrate Judge Hixson for his approval. Yet the

3 Respondents now rehash the meritless argument they made and lost before.[3]

4      The declarations of foreign counsel submitted to Magistrate Judge Hixson show that the

5 courts of Germany, Denmark, Switzerland, and Turkey have reasonable safeguards to protect the

6 confidentiality of information submitted to them. *See* Rospatt Rebuttal Decl., ECF 31, ¶ 9

7

8 (Germany courts will likely protect trade secrets upon request of one party); Atilgan Rebuttal

9 Decl., ECF 34,¶ 5 (same for Turkey); Valentin Rebuttal Decl., ECF 33, ¶ 3 (Danish courts highly

10 likely to grant confidentiality protection upon a joint request by the parties); Hess Rebuttal Decl.,

11 ECF 32, ¶¶ 6-7 (courts are required by Swiss law to protect the confidentiality of business secrets

12 and will almost certainly honor a joint request by the parties to do). Moreover, this Court and

13 other courts have routinely approved subpoenas issued under § 1782 for use in the countries

14

15 where the Foreign Actions are pending over the objection that those countries cannot guarantee

16 the confidentiality of sensitive documents. The cases recognize that protective orders and

17 applicable foreign procedures can and do provide reasonable safeguards. *See, e.g., Palantir*

18 *Techs., Inc. v. Abramowitz*, 2019 WL 6251338, at *8 (N.D. Cal. Nov. 22, 2019) (Germany);

19 *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F. 3d 550, 566 (7th Cir. 2018) (Denmark); *In re*

20

21

22

---

23 [3] The Respondents' argument improperly assumes that concerns about confidentiality are a factor that the Court should consider in a burden analysis. But in *In re Ex Parte Apple, Inc.*, 2012 WL 1570043, at *3 (N.D. Cal. May 2,

24 2012), this Court held that concerns about preservation of confidentiality "do not pertain to the intrusiveness or burdensomeness" of the subpoena. Any confidentiality concern should be (and here *have been*) addressed through a negotiated protective order. *Id.* at *3 n.9; *accord Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112

25 (9th Cir. 2015) (recognizing a tailored protective order as the appropriate way to protect highly confidential information); *Gilead Pharmasset*, 2015 WL 1903957, at *5; *In re O'Keeffe*, 2015 WL 5039723, at *3 (D.N.J. Aug.

26 26, 2015). This is yet another reason the Court should affirm Magistrate Judge Hixson's decision.

27

28 **Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter
Referred to Magistrate Judge**

*Gilead Pharmasset LLC*, 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015) (Germany and Switzerland).[4]

The Respondents argue that the subpoenas should be quashed because there is no *absolute* guarantee of confidentiality in the relevant countries. But absolute assurances are not and cannot be the test.[5] Even a U.S. court cannot provide such absolute assurance in domestic litigation. In the United States, court files are presumptively public as a matter of constitutional law, but when a court has ordered protection, its orders are always subject to later modification by the court on the motion of a non-party or appellate reversal. *See, e.g.*, *San Jose Mercury News, Inc. v. United States Dist. Court*, 187 F.3d 1096, 1103 (9th Cir. 1999) (protective orders "are inherently subject to challenge and modification"). This is true of materials exchanged in discovery but not filed, *see, e.g. Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992), and of documents that are on file under seal, *see, e.g., In re Midland Nat'l Life Ins. Co. Annuity Sales Practices Litig.*, 686 F.3d 1115, 1120 (9th Cir. 2012). The mere possibility that confidentiality protection may be modified later is not a basis to resist discovery.

F.     The Court Should Order Immediate Production of the Responsive Documents.

---

[4] As Magistrate Judge Hixson noted in his decision, U.S. courts should "presume[] courts in these foreign jurisdictions also regard with importance the proprietary interests of parties appearing before them and the integrity of the confidentiality of evidence submitted to them." (ECF 42 at 20:17-19). It would turn international comity on its head to accept the Respondents' contention that the courts where the Foreign Actions are pending could not be trusted to accord appropriate protection to sensitive business information.

[5] In *In re Pioneer Corp.*, 2018 WL 2146412 (C.D. Cal. May 9, 2018), cited by the Respondents, the court did credit a respondent's supposed concern about the protection a German court would provide for confidential material. It reasoned that "even if [it] entered a protective order, there is no evidence that a German court would obey such an order." *Id.* at *9. But the question is not whether the foreign court will obey a U.S. court's protective order, but rather, as the declarations Illumina Cambridge has submitted show, whether the foreign court's own procedures provide reasonably adequate protection. The *Pioneer* court's comments on the issue were dicta in any case, as the court concluded that the application did not satisfy one of the statutory requirements of § 1782, and its discussion of undue burden and the other *Intel* factors was an alternative basis for its decision. *See id.* at *5. Therefore, *Pioneer* has no persuasive value and Magistrate Judge Hixson properly disregarded it.

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

Illumina Cambridge filed the Application in September 2019. It served the subpoenas immediately after the Court granted the Application, in early November 2019. It has a pressing need to receive documents in Switzerland; the deadline for submitting evidence, without leave of the Swiss court, is April 24, 2020. *See* Third Declaration of Andri Hess. And the deadline in Turkey for submission of evidence without leave of court is June 29, 2020. (Third Karakulak Decl. ¶ 2).

Because discovery has been ongoing in the U.S. patent infringement cases pending in this court and the District of Delaware, and because the Respondents have had months and months to gather and review their responsive documents, Illumina Cambridge respectfully submits that the Court should order production of documents forthwith. One simple and burden-free step the Court could take is simply to order the production of the documents that the Respondents' counsel have already reviewed for responsiveness and privilege and produced in the US litigation, subject to the agreed protective order. But whether or not the Court takes that step, in light of the long time that has passed and the reasonable need for very prompt production, the Court should order the Respondents to produce responsive documents within a very short period of time, for example, ten days.

## CONCLUSION

For these reasons, the Court should deny the motion for review and order the Respondents to produce the responsive documents forthwith.

Dated: March 18, 2020                         Respectfully submitted,

                                             ILLUMINA CAMBRIDGE LTD.

---

**19**

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter Referred to Magistrate Judge**

By its attorneys:

/s/ Minyao Wang
Theodore J. Folkman (*pro hac vice*)
PIERCE BAINBRIDGE BECK
PRICE & HECHT LLP
One Liberty Square, 13th Flr.
Boston, MA 02109
(617) 313-7401
tfolkman@piercebainbridge.com

Minyao Wang (*pro hac vice*)
PIERCE BAINBRIDGE BECK
PRICE & HECHT LLP
277 Park Ave., 45th Floor
New York, NY 10172
(212) 484-9866
mwang@piercebainbridge.com

Edward R. Reines (CA Bar No. 135960)
Derek C. Walter (CA Bar No. 246322)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
edward.reines@weil.com
derek.walter@weil.com

**Opposition to Motion to Vacate and for De Novo Determination of Dispositive Matter
Referred to Magistrate Judge**

## <u>**CERTIFICATE OF SERVICE**</u>

2      I hereby certify that on March 18, 2020, a copy of the foregoing was filed and served

3  electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's

4  electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the

5  notice of electronic filing. Parties may access this filing through the court's CM/ECF System.

6

7

8                                    /s/ Minyao Wang
                                     Minyao Wang

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28