Pages 1 - 17

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE THOMAS S. HIXSON MAGISTRATE

IN RE APPLICATION OF        )
ILLUMINA CAMBRIDGE LTD.      ) No. 19-MC-80215
                            )
                            )  San Francisco, California
                            )  Friday
                            )  May 1, 2020
_____)  2:00 p.m.


**TRANSCRIPT OF REMOTE AT&T TELECONFERENCE PROCEEDINGS**

**APPEARANCES**:

**For Plaintiff:**          FOLKMAN LLC
                           PO Box 116
                           Boston, Massachusetts 02131
                    BY:  **THEODORE JOEL FOLKMAN, ESQ.**


                           HECHT PARTNERS LLP
                           20 West 23rd Street
                           Fifth Floor
                           New York, New York 10010
                    BY:  **MINYAO WANG, ESQ.**



                           WEIL GOTSHAL & MANGES LLP
                           700 Louisana
                           Suite 1700
                           Houston, Texas 77002
                    BY:  **DOUG MCCLELLAN, ESQ.**



          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                 *Official Reporter - US District Court*
                 *Computerized Transcription By Eclipse*

1    **APPEARANCES:    (CONTINUED)**

2    **For Respondents:**          ARNOLD & PORTER KAYE SCHOLER LLP
                                    5 Palo Alto Square.
3                                   Suite 500
                                    3000 El Camino Real
4                                   Palo Alto, California 94306
                              **BY: KATIE JEANNINE LEWIS SCOTT, ESQ.**
5                                 **JING WANG, ESQ.**

6                                        —   —   —

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | <u>**FRIDAY - MAY 1, 2020**</u>                                    <u>**2:03 P.M.**</u> |
| 2 | <u>**P R O C E E D I N G S**</u> |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Good afternoon, everyone.  This is the |
| 5 | Courtroom Deputy.  We're here in Civil Action 19-80215, In Re |
| 6 | the Application of Illumina Cambridge Ltd. |
| 7 | Will counsel please state their appearances.  Let's start |
| 8 | with the plaintiff and move through them.  The Honorable Thomas |
| 9 | S. Hixson presiding. |
| 10 | **MR. FOLKMAN:**  Good afternoon, Your Honor.  This is |
| 11 | Ted Folkman of Folkman LLC.  I am counsel for Illumina. |
| 12 | My colleague, Minyao Wang of Hecht Partners is on the |
| 13 | line, and Doug McClellan, who is with Weil and represents |
| 14 | Illumina in the main infringement cases in this Court, is on |
| 15 | the line as well. |
| 16 | I just heard someone join.  It may have been Will Noone, |
| 17 | who is in-house patent litigation counsel for Illumina.  If |
| 18 | that wasn't him, I do think he intends to join at some point. |
| 19 | **THE COURT:**  Good afternoon. |
| 20 | For the respondents. |
| 21 | **MS. SCOTT:**  Yes.  Good afternoon, Your Honor.  This |
| 22 | is Katie Scott from Arnold and Porter, and with me on the line |
| 23 | is Jing Wang. |
| 24 | **THE COURT:**  All right.  Good afternoon. |
| 25 | Is there anybody else who hasn't been announced? |

```
 1          (No response.)

 2          I will take that as a "no."

 3          I have read the parties' joint discovery letter and the

 4    administrative motion.  I have on my list of issues to be

 5    decided basically four things.

 6          First, what needs to be produced right away for the Swiss

 7    action.

 8          Second, when should that production happen.  I think

 9    Illumina wants May 4th, and respondents have offered May 6th,

10    I think.

11          Then there is the question of MGI tax documents.

12          And then whether I need to set a deadline for the

13    remainder of the production that doesn't concern the Swiss

14    actions.

15          Mr. Folkman, do you agree those are the issues for today?

16    Is there anything you would like to add to this list?

17          MR. FOLKMAN:  I think everything you've said is

18    correct, Your Honor.

19          We do have sort of a backdrop request for relief, which is

20    to set a date for a deposition of the gentleman that we

21    identified in our papers just in case the response, assuming

22    that the Court were to order a response, was something along

23    the lines of:  None of the respondents have any of the

24    information you need urgently in their possession, custody or

25    control.
```

1          **THE COURT:**  Okay.  I did see that.

2      Ms. Scott, are there any other issues that you would like

3  to add to the list?

4          **MS. SCOTT:**  No.  I think that's all.

5      The one thing I would -- I would say, though, is that with

6  respect to MGI Tech's documents that that, I think, partially

7  feeds into the first question of what needs to be produced and

8  when.

9      So, you know, depending on where you stand right now, it

10  may make sense to take that up first.

11          **THE COURT:**  Okay.  Well, fair enough.  That's a good

12  point.  I guess we should get our arms around it.

13      So what I ruled and what Judge Orrick ruled is that

14  because CGI had legal control over MGI Tech at the time that

15  you all became aware of the 1782 application, then CGI is

16  obligated to produce everything that was in MGI Tech's

17  possession, custody or control, I guess, prior to October 2019.

18      And it looks like from the letter brief, Ms. Scott, that

19  you guys are taking issue with that.

20          **MS. SCOTT:**  Yes, Your Honor.

21      So first of all, I would say that I think there is sort of

22  two issues.

23      First, one is in the original -- in your original order,

24  Your Honor, I think there was some misunderstanding in the

25  sense that there was a reference to after CGI having been

1    acquired by BGI Shenzhen, certain documents were transferred to

2    affiliates in the BGI group in China.

3        I also just wanted to first point out that that was

4    actually something that happened long ago in 2012, when

5    Complete Genomics was originally -- originally they became part

6    of the BGI group.

7        So just to be clear, during the restructuring that

8    happened in October, there was no shipping of documents

9    anywhere, or disconnecting of hard drives, or deleting of

10   anything.

11       So I just want to clarify that that did not happen.

12       **THE COURT:**  Okay.   Thank you.

13       **MS. SCOTT:**  But what our position has been is that as

14   of -- even as of the time of that restructuring, CGI or MGI --

15   well, CGI I guess, they did not have what we would say is

16   actual control, and they certainly didn't have access to

17   many -- I would say almost all of the documents that -- or at

18   least essential sources for the documents that Illumina is

19   requesting.

20       So, for example, they did not have access to the current

21   financial database.   They don't have access to the sort of

22   version controlled records of technical products.

23       So the kinds of things that normally for these sorts of

24   requests you would go to a central source and you would -- you

25   know, you would collect them, here that wasn't -- you know, the

1    respondents in the U.S. did not have access to those things and

2    they were restricted from having access to those things.

3         So, you know, in our view that they did not have actual

4    control of those documents.  So --

5              THE COURT:  How can you say that a parent company did

6    not have legal control over those documents?

7              MS. SCOTT:  Well, they -- I mean, I think it was

8    really a function of the way that the companies saw them.  I

9    mean, the way that the companies saw themselves prior to this

10   restructuring is really the same as it is now, which is MGI

11   Tech has always -- in terms of the leadership and the

12   organization has always essentially seen CGI as a subsidiary,

13   as if sort of almost like -- in a way like an R & D arm of the

14   MGI organization.

15        So there was -- you know, the databases themselves are

16   restricted.  You know, they don't -- they just simply don't

17   have access to those things.

18        And my understanding from -- you know, in terms of trying

19   to get arms around what we could collect from CGI was that

20   there were times when they would ask for documents and

21   sometimes they wouldn't get things or sometimes they would get

22   old information.

23        So it was not a free-flowing, you know.  CGI would go to

24   MGI Tech and say, like:  We control you.  Give us your

25   documents.  This is just not how the organizations worked.

1     So I understand the point about sort of legal control in

2 terms of the parent/subsidiary relationship, but in terms of

3 actual controls, it just wasn't there.  And that's really a

4 concern.

5     And then I think when you compound that with the

6 extraterritorial impact of this -- you know, expanding this

7 into a collection, into, you know, a Chinese company who, I

8 think in their view, had control of CGI, instead of the other

9 way around, then that's where we really, you know, take issue

10 with the Court's order ordering CGI to, you know, necessarily

11 produce anything that was in the hands of MGI Tech.

12     **THE COURT:**  I see.  I understand what you're saying,

13 but you've lost on this twice, so it's done.  You have to do

14 it.

15     **MS. SCOTT:**  Your Honor, in terms of the

16 extraterritorial effect, I would ask that if Your Honor would

17 consider staying that order, for the MGI Tech documents, to be

18 able to give us the opportunity to appeal.

19     **THE COURT:**  You already appealed and you lost.

20     **MS. SCOTT:**  My understanding, Your Honor, is that we

21 would have the option of appealing to the Ninth Circuit for

22 this issue.

23     **THE COURT:**  Let me see.

24     You could, but you didn't act promptly.  I mean, Judge

25 Orrick issued his order on April 7th, and it's now May 1st.  If

1   you're waiting until the last minute once I've told you that

2   I'm going to order you to produce something and now you're

3   asking for a stay, that's just dilatory.

4        You have been under an order since April 7th to collect

5   documents and produce them in a time frame that they could be

6   used in the Swiss action, and you knew what that deadline was.

7        If you're waiting right until the edge of that deadline

8   and ask for a stay, no, I won't give you a stay.  That's just

9   irresponsible and dilatory.

10        **MS. SCOTT:**  Your Honor, I'm sorry.  That is certainly

11   not the intention.  In fact, and I think opposing counsel would

12   even agree with that.

13        At least our understanding, not opposing counsel's

14   understanding, but our understanding was that in looking at

15   Judge Orrick's order, that it was making clear that we only had

16   to produce documents that were in the respondent's possession.

17   And in our letter brief we cited a number of quotes where it

18   seems like it does that.  It makes that clear, at least to us.

19   That's how we understood this order.

20        So it was only in the process of the meet-and-confer that

21   it came to light that we were not on the same page on this

22   issue.

23        **THE COURT:**  That's totally ridiculous.  I'm not

24   buying any of that.

25        **MS. SCOTT:**  Understood, Your Honor.

1          **THE COURT:**  All right.

2      Now, let's go to Mr. Folkman.  What needs to be produced

3   right away for the Swiss action?

4          **MR. FOLKMAN:**  Yeah.  There is a few things, Your

5   Honor.  We need to know who is selling, supplying,

6   supporting BGI -- can you hear me?

7          **THE COURT:**  I can hear you.  I'm sorry.  The phone is

8   sometimes awkward because you don't have body language to

9   indicate when I want to jump in in the middle of your speaking.

10     I want to write an order saying what respondents have to

11  produce.

12         **MR. FOLKMAN:**  Yes.  So item No. 1, Your Honor, we

13  need the identity of entities that are selling, offering for

14  sale, importing, supplying, servicing or supporting BGI

15  products in Switzerland.

16     So number one is who are the people who are actually doing

17  activities in Switzerland that we would say infringe.

18     Number two --

19         **THE COURT:**  Wait.  Stop.  I want to phrase this in

20  terms of topics in the subpoena.  Like, in terms of what you've

21  requested.

22         **MR. FOLKMAN:**  Oh, sure.

23     Topics number one through three, Your Honor, in the

24  document subpoena.  And for right now, because we're only

25  talking about things that we're asking for on an emergency

1    basis, if you were to order the production of all -- you know,

2    of documents sufficient to show the topics listed in requests

3    one through three with respect to Switzerland on or before May

4    4th, that would be satisfactory.

5              **THE COURT:**  Okay.  So documents responsive to topics

6    one, two and three with respect to Switzerland is what you

7    want.

8              **MR. FOLKMAN:**  Yes, yes.

9              **THE COURT:**  Okay.  Go on.

10             **MR. FOLKMAN:**  I would also like, Your Honor, an order

11   that says that if -- and it could be the 4th.  It could be the

12   6th.  I'm not going to quibble about two days.

13        If by the date that you set we don't have those documents

14   in hand, I would like to have the right to take a deposition

15   of -- and I'm going to get the fellow's name to make sure that

16   I have it exactly right.  It is Mr. Chaturvedi,

17   C-H-A-T-U-R-V-E-D-I, who is the gentleman that we identified in

18   the papers that were filed a few days ago, limited to the

19   topics -- and this would be the analogous topics in the

20   deposition subpoena.  And I'm just going to confirm this, but I

21   believe it's topics one, two and three of the deposition

22   subpoena.  Similarly limited to Switzerland.

23        And I would like it to be clear, just because I think

24   there may be some dispute about this later, that if that's what

25   ends up happening, that's not our only chance at a 30(b)(6)

```
1    deposition.  It doesn't mean that we can't pursue the documents
2    also.
3         You know, I don't -- I don't want there to be any -- any
4    later dispute.  We're just trying to deal with this really
5    urgent need, and I don't want to prejudice other rights that we
6    have later in discovery to take a 30(b)(6) deposition pursuant
7    to the subpoena on other issues.
8         THE COURT:  Okay.  So this would be -- your subpoena
9    asks for certain topics, and you would just want part of that
10   deposition now and not all of it.
11        MR. FOLKMAN:  Correct.  Because the only emergency --
12   you know, the reason why we asked you for this expedited
13   hearing, and I'm grateful that you were able to do it, is
14   Switzerland is the emergent need.  We are still in the process
15   of meeting-and-conferring with counsel on the larger issues,
16   but we really felt that we needed to have this resolved
17   immediately.
18        THE COURT:  Okay.  Got it.  So the depo was
19   contingent on them not producing documents?
20        MR. FOLKMAN:  Well, no.  I mean -- you know, I'm not
21   saying that it's contingent.  We won't -- if we get the
22   documents that say this is who the folks in Switzerland are who
23   distribute, you know, sell, whatever, the products, we're not
24   going to take a deposition just to take a deposition.
25        I just am concerned that the response that we're going to
```

1    get back is going to say something like:  These documents are

2    not in the possession, custody or control of any of the

3    respondents or, you know, of MGI Tech, or MGI Tech is refusing

4    to produce them citing, you know, concerns about

5    extraterritoriality that you've just heard a little bit about.

6    I just want to have that as a backup because I am concerned

7    about what the response is going to be.

8              **THE COURT:**  I see.  Contingent orders, I don't know.

9    I'm not wild about them.  I would rather just order something.

10       Are you --

11             **MR. FOLKMAN:**  If you -- that's fine.  I -- you know,

12   if you're willing just to order it.  We may agree with counsel

13   not to take it after seeing what they produce.  But if you want

14   to order it and then we'll work that out amongst ourselves,

15   that's perfectly okay.

16             **THE COURT:**  All right.  Let me -- so when would the

17   depo -- say the deadline to produce is May 6th.  When would you

18   want the depo?

19             **MR. FOLKMAN:**  Well, it would have to be either the

20   7th or the 8th, Your Honor, because, you know, it would be

21   tight anyway to deal with Swiss counsel, but -- you know, we

22   would need to have the transcripts done on a rush basis to

23   overnight -- you know, to email it over there so that they

24   would be in a position to use it on the 11th.

25       I mean, that's going to put an exceptional burden on them,

1  you know, because their briefing is already well underway.

2  But, you know, I think it's the best we can do.

3          **THE COURT:**  If you don't mind waiting one sec, I want

4  to pull up your original subpoena just to make sure I know --

5          **MR. FOLKMAN:**  Sure.  If you look at ECF 1, Your

6  Honor, it's Page 12 of 137 and 13 of 137.

7          **THE COURT:**  Okay.  Hold on.

8      (Brief pause.)

9          **THE COURT:**  Oh.  It's topics one, two and three?

10         **MR. FOLKMAN:**  Correct.

11         **THE COURT:**  Okay.  Topics one, two and three.

12         **MR. FOLKMAN:**  As it relates to Switzerland.

13         **THE COURT:**  Yeah, as it relates to Switzerland.  And

14  then -- okay.  On Page 45, topics one, two and three as they

15  relate to Switzerland.

16     So the thing with the 30(b)(6) depo is I can specify the

17  topics, but I can't specify the deponent.  That's just the

18  nature --

19         **MR. FOLKMAN:**  Well, yeah.  I -- I understand what

20  you're saying, Your Honor.

21     I think in these circumstances I would submit that you do

22  have the power under Rule 30 to -- to require that this

23  particular person be deposed.  I think that Illumina has a very

24  good reason to believe that he does know the answer to these

25  questions.

```
 1          I think that -- and this is not directed in any way at
 2    counsel.  I think that BGI's approach to this case has been
 3    exceptionally wrong-headed and has merely delayed things to the
 4    last minute, and I think that it's appropriate in the
 5    circumstances.
 6          THE COURT:  Okay.  I hear what you're saying.  No.
 7    In theory under Rule 30(b)(6) a company can hire a paid actor
 8    and provided that the preparation is good enough, that person
 9    can be their designee.
10          So I -- I hope counsel will live up to their obligation to
11    prepare the witness.  But you either can specify the person or
12    the topics, and you've chosen the topics.
13          MR. FOLKMAN:  Understood, Your Honor.
14          THE COURT:  All right.
15          Now, let me hear, Ms. Scott, from you.  I'm going to order
16    respondents to produce documents responsive to topics one, two
17    and three with respect to Switzerland, and that's going to
18    include everything that MGI Tech had when it was still a
19    subsidiary of CGI.  And I'm thinking the date that you offered,
20    May 6th.
21          Do you have any issues with that?
22          MS. SCOTT:  I do not, Your Honor.
23          THE COURT:  Okay.  And I'm thinking ordering that the
24    30(b)(6) depo on topics one, two and three with respect to
25    Switzerland to take place no later than May 8th.  Is that
```

1    workable on your end?

2          **MS. SCOTT:**  I believe so, Your Honor.  With the

3    understanding that you're not ordering it to be a particular

4    individual, I think that we should be able to make that work.

5          **THE COURT:**  Okay.

6       Okay.  And then it sounds to me like with respect to the

7    remainder of the discovery that doesn't relate to Switzerland,

8    neither side thinks I need to set a deadline right now, so I'm

9    inclined not to.

10       How is that, Mr. Folkman?

11         **MS. SCOTT:**  Your Honor, we're scheduled to talk

12   immediately after this call.  We had a meet-and-confer

13   scheduled that sort of got preempted by the notice everybody

14   received from the Court this afternoon.

15       I'm comfortable, given sort of what's happened in this

16   hearing, continuing the discussion to arrive at a -- at a sort

17   of an agreed date.  I think that if we need to come back to the

18   Court, we will do it very promptly.  I hope that won't be

19   necessary.

20         **THE COURT:**  Okay.  And, Ms. Scott, can we just go

21   with that approach; that I don't specify deadlines for the

22   remainder of the production?

23         **MS. SCOTT:**  That's fine with us, Your Honor.

24         **THE COURT:**  Okay.  All right.  I will get out a

25   written order this afternoon.

```
 1         Mr. Folkman, is there anything further you want me to

 2    address?

 3              MR. FOLKMAN:  No.  Thank you, Your Honor.

 4              THE COURT:  And how about Ms. Scott?

 5              MS. SCOTT:  That's all, Your Honor.  Thank you.

 6              THE COURT:  All right.  Thank you, counsel.

 7         (Proceedings adjourned.)

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## <u>CERTIFICATE OF OFFICIAL REPORTER</u>

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Wednesday, May 6, 2020